UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,

            -against-                             90-cr-00446 (FB)

VITTORIO AMUSO,

                Defendant.

-------------------------------------------------------X

## MOTION FOR SENTENCE REDUCTION
### PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Anthony DiPietro, Esq.
Law Offices of Anthony DiPietro, P.C.
15 Chester Avenue
White Plains, NY 10601
(914) 948-3242

James R. Frocarro, Esq.
20 Vanderventer Avenue, Suite 103W
Port Washington, NY
(516) 965-9180

Mathew J. Mari, Esq.
30 Wall Street, 8th Fl.
New York, NY 10005
(917) 923-8200

*Counsel for Defendant*
*Vittorio Amuso*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   The District Court Has Broad Authority to Grant Mr. Amuso's Application for
Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ................................... 2

II.   Mr. Amuso Has Met the Statutory "Exhaustion" Requirement ...................................... 5

III.   There Exist Extraordinary and Compelling Reasons to Reduce Mr. Amuso's Sentence  6

A.   Mr. Amuso's Non-Medical Circumstances Qualify as An Extraordinary and
Compelling Reason for Compassionate Release .................................................... 6

B.   Mr. Amuso's Medical Circumstances Qualify as an Extraordinary and Compelling
Reason for Compassionate Release ........................................................................ 9

IV.   The Section 3553(a) Sentencing Factors Militate in Favor of Compassionate Relief ... 16

CONCLUSION ................................................................................................................. 25

## INTRODUCTION

Defendant Vittorio Amuso, by and through his undersigned counsel, respectfully submits this memorandum of law and the attached exhibits in support of his motion, pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking entry of an Order reducing his life sentence (of which he has already served more than 31-plus years) to time-served. As explained more fully below, the Court should grant Mr. Amuso compassionate release, because Mr. Amuso's advanced age and severe chronic medical conditions, along with his long imprisonment and perfect institutional record, provide an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A) and otherwise satisfy the criteria set forth by the BOP concerning the early release of elderly inmates.

As of this filing, Mr. Amuso is eighty-eight (88) years of age. He has served over thirty-one (31) consecutive calendar years of imprisonment and currently suffers from serious medical ailments that have largely rendered him immobile. Mr. Amuso's life expectancy is grim, and his advanced age and deteriorating health render his remaining quality of life negligible. Indeed, Mr. Amuso's advanced age and medical ailments have substantially diminished his ability to provide self-care within a prison setting, and conventional treatment promises no substantial improvement.

Furthermore, while not discounting the seriousness of the underlying offense,[1] the Section 3553(a) sentencing factors *currently* militate in favor of Mr. Amuso's compassionate release because the aims of sentencing have been achieved by Mr. Amuso's service of 31-plus years of imprisonment and there is truly no penological interest to be further achieved by the continued confinement of an elderly and sick inmate that Mr. Amuso now presents.

---

[1] In 1992, Mr. Amuso was sentenced to life in prison as a result of being convicted after a jury trial of a fifty-four-count indictment that alleged crimes of racketeering, extortion, fraud, bribery, and murder. Mr. Amuso was charged with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), as well as tax fraud and substantive and conspiracy violations constituting the RICO predicate acts. *United States v. Amuso*, 21 F.3d 1251, 1253 (2d Cir. 1994)

1

## ARGUMENT

I. **The District Court Has Broad Authority to Grant Mr. Amuso's Application for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)**

The First Step Act ("FSA") has empowered district courts to act as the final adjudicator of compassionate release motions, providing broad authority to determine whether extraordinary and compelling reasons exist in a particular case to compel such relief. Specifically, since the passage of the FSA, it is well settled that the "district court's discretion in this area—as in all sentencing matters—is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *United States v. Anderson*, Case No. 18-CR-71 (RJA), 2021 WL 776975, at *2 (W.D.N.Y. Mar. 1, 2021) ("[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction"); *United States v. Rich*, 471 F. Supp. 3d 441, 444 (D.N.H. 2020) (district courts have "broad discretion" in deciding whether to grant or deny an 18 U.S.C. § 3582(c)(1)(A) compassionate release motion). Pursuant to 18 U.S.C. § 3582(c)(1)(A), the district court,

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

When adjudicating a prisoner's motion under § 3582(c)(1)(A), the district court is free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d at 237. Indeed, determining what "constitutes extraordinary and compelling reasons warranting a reduction is committed to the sound discretion of the district court."[2] *See United States v. Roney*, 833 Fed. App'x 850, 852 (2d Cir. 2020) (summary order). In this regard, the FSA achieves Congress's intent that § 3582(c)(1)(A) act as a "safety valve" which allows the district court to reduce a prisoner's sentence to address a prisoner's changing circumstances and to maintain "sentencing power in the judiciary where it belongs." *United States v. Eric Millan*, No. 91 Cr. 685 (LAP), ECF Dkt. 1060 at 15-16 (S.D.N.Y. Apr. 6, 2020) (quoting S. Rep. No. 98-225, at 56 (1983)).

The district court's range of considerations in determining whether an "extraordinary and compelling" reason exists in a particular case is not limited to the policy statement applicable to compassionate release motions filed by the Director of the Bureau of Prisons ("BOP"), as set forth by the Sentencing Commission under U.S.S.G. § 1B1.13, Application Note 1(A)-(D). Instead, the policy statement applicable to motions filed by the BOP only provides "guidance for district courts in assessing a defendant's eligibility for compassionate release, but it does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. McCalla*, Case No. 11-CR-452 (DLW), 2020 WL 3604120 (D.N.J. July 2, 2020); *see also* Beck, 425 F. Supp. 3d at 579-80 ("Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old

---

[2] The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason.

policy statement"); *Brooker*, 976 F.3d 228; *United States v. Austin*, No. 06 Cr. 991, Dkt. No. 72 at 7 (JSR) (S.D.N.Y., June 23, 2020); *United States v. Pinto-Thomaz*, No. 18 Cr. 579 (JSR), 2020 WL 1845875, at * 2 (S.D.N.Y. Apr. 13, 2020).

Nonetheless, in its recently proposed amendments to the Sentencing Guidelines (which, absent action of Congress to the contrary, will be effective on November 1, 2023), the Sentencing Commission made applicable the policy statement (U.S.S.G. § 1B1.13, Application Note 1(A)-(D)) to prisoner-based motions under § 3582(c)(1)(A) and it expanded the list of extraordinary and compelling reasons and retained the existing "other reasons" catchall (*See* Exhibit 1, at 1-13 (United States Sentencing Commission, Excerpt of Adopted Amendments to the Sentencing Guidelines (April 27, 2023)). [3]  The Sentencing Commission further confirmed that district courts should retain broad authority in deciding prisoner-based motions, which includes the district court's independent power to decide "other reasons" that may compel a sentence reduction beyond those enumerated explicitly by policy or otherwise. *Id.* at 5.  The Sentencing Commission explained that district courts are "in a unique position to determine whether the circumstances warrant a reduction" and "[g]uidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts, rather than through an effort by the Commission to predict and specify in advance all of the grounds on which relief may be appropriate." *Id.* at 5.

The recently proposed amendments by the Sentencing Commission further add two new subcategories to the "Medical Circumstances of the Defendant" ground for relief, which apply

---

[3] https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf

when a defendant is (1) "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and without that care, "is at risk of serious deterioration in health or death"; and/or (2) "is at increased risk of suffering severe medical complications or death as a result of exposure to an ongoing outbreak of infectious disease or public health emergency." *Id.* at p. 3, 8-9.

## II. Mr. Amuso Has Met the Statutory "Exhaustion" Requirement

To petition the Court directly for a sentence reduction under § 3582(c)(1)(A), a defendant must wait until "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." The statute permits a defendant to bring a motion directly to a court "after either exhausting administrative review of a BOP denial of his request or after 30 days had passed since he made his request, whichever was earlier." *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020).

On January 4, 2023, Mr. Amuso applied for a sentence reduction with Warden C. Carter of FCI Cumberland (*See* Exhibit 2, Application for Compassionate Release). That application was later transferred to Warden L.B. Kelly of FCI Butner II, because Mr. Amuso was transferred to FCI Butner II after his initial application was filed at FCI Cumberland. On March 14, 2023, Warden L.B. Kelly of FCI Butner II denied Mr. Amuso's application for a sentence reduction (*See* Exhibit 3, Denial Letter).

Accordingly, Mr. Amuso has sufficiently exhausted administrative remedies to permit the district court's adjudication of the instant motion for compassionate release under § 3582(c)(1)(A). *See United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) ("[T]he statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the

5

BOP) before bringing his petition to court. Rather, it requires the defendant *either* to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court"); *United States v. Gonzalez*, Case No. 11-CR-718 (PGG), 2021 WL 535809, at *2 (S.D.N.Y. Feb. 11, 2021) ("Gonzalez submitted a request for compassionate release to the CI Rivers Facility Administrator on July 22, 2021. His application was denied on August 7, 2020. The Government concedes that Gonzalez has exhausted his administrative remedies. The Court concludes that Gonzalez has satisfied the exhaustion requirement").

## III.   There Exist Extraordinary and Compelling Reasons to Reduce Mr. Amuso's Sentence

Mr. Amuso's current circumstances satisfy the criteria for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and BOP PS 5050.50 because, when considered collectively, his advanced age, chronic medical conditions, time served, and rehabilitation, provide a compelling reason to warrant compassionate release and otherwise satisfy the criteria set forth by the BOP concerning the early release of elderly inmates.

### A.   Mr. Amuso's Non-Medical Circumstances Qualify as An Extraordinary and Compelling Reason for Compassionate Release

The Court should find as an extraordinary and compelling reason to warrant Mr. Amuso's compassionate release, Mr. Amuso's satisfaction of non-medical criteria enumerated by the BOP for determining an elderly prisoner's eligibility for early release, which, although less demanding, overlaps in materials respects with the criteria provided by 18 U.S.C 3582(c)(1)(a)(ii). Specifically, pursuant to Section 4(a) of the Federal Bureau of Prisons ("BOP") Policy Statement ("PS") 5050.50, prisoners, like Mr. Amuso, are eligible for early release on the basis that they (1) have been "sentenced for an offense that occurred on or after November 1, 1987," (2) are "age 70

years or older" and (3) have "served 30 years or more of their term of imprisonment" (*See* Exhibit 4, at p. 6 (BOP PS 5050.50 § 4(a)). Such qualifying criteria is "different from those provided in 18 U.S.C § 3582(c)(1)(A)(ii), which states that a court, upon motion of the BOP Director, may reduce a sentence term if it finds that 'the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g).'" *Id.* at 6, fn. 1.

Here, Mr. Amuso is 88 years of age, and he has served 31-plus years of imprisonment for an offense that occurred on or after November 1, 1987. Specifically, Mr. Amuso has been continuously imprisoned since July 28, 1991, due to his arrest and prosecution in the instant matter (*See* Exhibit 5, Sentencing Monitoring Computation Data, at p. 2). Accordingly, Mr. Amuso's current non-medical circumstances are an extraordinary and compelling reason to warrant early release under BOP PS 5050.50 § 4(a). *See, e.g., United States v. Grecco*, No. 89-00250, 2022 U.S. Dist. LEXIS 209668, at *10-11 (D.N.J. Nov. 18, 2022); *United States v. Perez*, 2020 U.S. Dist. LEXIS 45635 (D. Kan., March 11, 2020); *United States v. Riggins*, No. 06-700-1, 2022 U.S. Dist. LEXIS 41444, at *6 (E.D. Pa. Mar. 9, 2022).

Furthermore, Mr. Amuso's non-medical circumstances resolve favorably even when considering the more demanding criteria set forth under 18 U.S.C § 3582(c)(1)(a)(ii), which requires a determination by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.[4] In this regard, the BOP has already determined

---

[4] While 18 U.S.C § 3582(c)(1)(a)(ii) notes that the challenged sentence be pursuant to 3559(c), the defendant's satisfaction of all other criteria (*i.e.,* that the defendant is at least seventy (70) years of age, has served at least thirty (30) years in prison for the offenses for which he is

that Mr. Amuso's current risk of recidivism is minimum based upon, among other things, Mr. Amuso's age, offense conduct, criminal history, incident reports, and institutional record (*See* Exhibit 6, FSA Recidivism Risk Assessment Form; *see also* Exhibit 7, at 2 (Current FSA Assignments: "Low Risk Recidivism Level").

Moreover, the minimal risk of recidivism here is further established by Mr. Amuso's advanced age, poor health, exemplary institutional record, and strong family ties that he has maintained during the 31-plus years of his imprisonment. *See United States v. Piggott*, No. 94 Cr. 417, 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) ("[Defendant's] strong family support and good job prospects make recidivism unlikely."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing the Sentencing Commission's guidelines to support the unlikelihood of the defendant's recidivism given his advanced age and noting the defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community"); *United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) (It is "impossible to deny" the "positive correlation between age and recidivism.").

Indeed, Mr. Amuso's perfect intuitional record for the past 31-plus years of his imprisonment alone is compelling evidence of his complete rehabilitation. *See United States v. Russo*, No. 92-CR-351, 2022 U.S. Dist. LEXIS 213643, at *11 (E.D.N.Y. Nov. 28, 2022) ("In the

---

currently imprisoned, and the BOP has determined that he is no longer a danger to the safety of any other person or the community) satisfies the criteria of both 18 U.S.C. § 3582(c)(1)(A)(ii) and BOP PS 5050.50 § 4(a) and may otherwise establish a compelling basis for a sentence reduction under the "other reasons" catchall of § 3582(c)(1)(A)(i). *See, e.g., Grecco*, No. 89-00250, 2022 U.S. Dist. LEXIS 209668.

past 21 of his 29 years served, Russo has not committed a single disciplinary infraction. Given the realities of incarceration in a federal penitentiary, particularly under the specter of a life sentence, this record can only be viewed as exemplary."); *id.* at *27 ("Moore, like Russo, also has an exemplary behavioral record in prison, with no disciplinary infractions in the past 18 years, and only 4 infractions prior to that, all of which were non-violent. Given the hopeless reality of a life sentence, this disciplinary history should not be understated."). More significantly, as discussed *infra* (*see also* Exhibit 13, Support Letters), numerous family members and others have submitted letters advising the Court as to Mr. Amuso's rehabilitation and good character, along with proclaiming their commitment to providing Mr. Amuso care and support upon his release. Indeed, these numerous testaments demonstrate that Mr. Amuso has remained guided by his religious faith during the past 31-plus years of imprisonment and has engaged in numerous acts of goodwill, including positively influencing others within the prison and beyond.

Accordingly, the Court's reduction of Mr. Amuso's sentence based on his non-medical circumstances, *i.e.,* his advanced age (88), long imprisonment (31-plus years), and BOP findings against potential recidivism, would be consistent with the policy statements outlined in BOP PS 5050.50 § 4(a) and 18 U.S.C. § 3582(c)(1)(A)(ii).

**B. Mr. Amuso's Medical Circumstances Qualify as an Extraordinary and Compelling Reason for Compassionate Release**

The Court should further find as an extraordinary and compelling reason to warrant Mr. Amuso's compassionate release, Mr. Amuso's advanced age and failing health, along with his long imprisonment and exceptional institutional record, which collectively satisfies the criteria for early release under 18 U.S.C. § 3582(c)(1)(A)(i) and Section 3(b) of the Federal Bureau of Prisons ("BOP") Policy Statement ("PS") 5050.50.

As of this filing, Mr. Amuso suffers from many debilitating illnesses from which he will not recover. The BOP has recently assigned Mr. Amuso as a "CARE3" inmate and has described his condition as "unstable" to require "complex chronic care" (*See* Exhibit 7, Individualized Needs Plan – Program Review (Current Care Assignments)). The BOP has further noted that Mr. Amuso "requires [a] wheelchair," and it has imposed limitations on his housing (*see id.* (Current Medical Duty Status Assignments)).

According to medical records provided by the BOP, Mr. Amuso has long suffered from a litany of medical ailments and is a candidate for complex continuing care. Specifically, Mr. Amuso's medical conditions include: Nuclear Sclerosis, Hypertension; Coronary Atheros; Benign Hypertrophy of Prostate; Anemia; Hyperlipidemia; Disorder of the eyelid; Unspecified disorder of conjunctiva; Cardiac Arrhythmia; Complete loss of teeth; Osteoarthritis of the hip; Osteoarthritis of the knee; Enthesopathy; and Hematuria (*See* Exhibit 8, BOP Health Services Inmate Intra-system Transfer). To treat such illnesses, Mr. Amuso is prescribed many daily medications (*See* Exhibit 9, BOP Health Services Clinical Encounter - Administrative Note).

The medical records provided by the BOP also abundantly demonstrate that Mr. Amuso's health has rapidly declined in recent years due to the progression of his chronic arthritis. Since at least 2021, Mr. Amuso has greatly suffered due to "severe" degenerative joint space narrowing of his right and left hip (*See* Exhibit 10, Compilation of Medical Records, at p. *1-2). In March 2023, x-rays confirmed an abnormality of "severe arthritis of both [Mr. Amuso's] hips." *id*. at p. *3.

Notably, Mr. Amuso's chronic condition has essentially rendered him immobile and drastically reduced his quality of life. While Mr. Amuso was once able to navigate prison with a cane (*See* Exhibit 10, at p. *15, 18), he has since surpassed the use of a walker and is now relinquished to a wheelchair for long distances. His rapid decline has been evident to both inmates

and BOP staff. As documented by the BOP's December 21, 2022 request to designate Mr. Amuso's medical care level to "Care 3", Mr. Amuso has increasingly suffered from "decreased mobility," and there have been "numerous reports by staff that the inmate is not coming out of his cell very often anymore" (*See* Exhibit 11, BOP Health Services Re-Designation Referral Request). Mr. Amuso has also "been noted to be declining compared to what he was approx. 6 months ago" and, at times, he has appeared uncharacteristically "disheveled." *Id.*; see Exhibit 10, at *13 (March 6, 2023) (Patient "needs someone to pick up meals"); *id.* ("ICP need to have someone help him make [the] bed, get tray").

Perhaps most evidencing of the severity of Mr. Amuso's declining health is his calls of distress to BOP staff that have become more frequent and alarming (*See* Exhibit 12, Compilation of Inmate Requests to BOP Health System). While Mr. Amuso's repeated calls for "help" and pain assistance would be distressing in any context, they are especially so here considering the very real predicament of his confinement and advanced age—*i.e.,* Mr. Amuso being 88 years of age, immobile, confined to a prison cell, and largely dependent on other inmates to provide self-care.

Moreover, there is no escape from the alarming reality that federal prisons, like those housing Mr. Amuso, frequently go on lockdown and are ill-equipped to timely address the needs of elderly and sick inmates. Indeed, to generally receive medical attention in prison, an elderly and infirm inmate, like Mr. Amuso, must serve as his advocate (performing with good mental and physical capacity) to ensure that written requests for help first reach BOP staff and then are afforded priority to be timely transferred to the attention of proper medical staff—all of which, as evidenced in Mr. Amuso's medical history, rarely occurs in a timely fashion.  *See* Exhibit 12, at p. *1 (March 31, 2023) ("I need a cortisone shot in my hip and knee and I'm in severe pain please if there is a god help me with this as I am 90 years old and in severe pain…."), *id.* at p. *3 (March

11

30, 2023) ("I need cortisone shots in my knee and hip I am 90 years old and in severe pain please

help me…"); *id.* at p. *2 (March 27, 2023) ("To: please help me…: "I think I caught staff on the

back of my behind and it's a hole with raw skin and it got really bad please help me…I am 90

years old and am to[o] weak to come to sick call…please help me").

Aside from the direct account of BOP staff and underlying medical records documenting

Mr. Amuso's increasingly failing health, it is also well established that chronic arthritis, as Mr.

Amuso suffers from, is a severe disease for the elderly that typically requires complex care beyond

what can be provided in a prison setting. According to the CDC, rheumatoid arthritis "has many

physical and social consequences and can lower quality of life.  It can cause pain, disability, and

premature death." *See* Rheumatoid Arthritis (RA), Centers for Disease Control and Prevention,

National Center for Chronic Disease Prevention and Health Promotion, *available at*

www.cdc.gov/arthritis/basics/rheumatoid-arthritis.html (last visited January 3, 2023). Rheumatoid

arthritis (RA) "is an autoimmune and inflammatory disease" which causes the immune system to

attack healthy cells in the body by mistake, "causing inflammation (painful swelling) in the

affected parts of the body." *Id.*   "RA mainly attacks the joints, usually many joints at once. RA

commonly affects joints in the hands, wrists, and knees. In a joint with RA, the lining of the joint

becomes inflamed, causing damage to joint tissue. This tissue damage can cause long-lasting or

chronic pain, unsteadiness (lack of balance), and deformity (misshapenness). *See also United*

*States v. Beard*, No. 1:16-cr-285-SCJ-JKL, 2020 U.S. Dist. LEXIS 246841, at *2-3 (N.D. Ga. June

25, 2020) ("Rheumatoid arthritis is a chronic inflammatory disorder that can damage a wide variety

of body systems, including the skin, eyes, lungs, heart, and blood vessels."); *United States v.*

*McDuffie*, 451 F. Supp. 3d 281, 283 (S.D.N.Y. 2020) (an individual suffering from rheumatoid

arthritis may be especially vulnerable to COVID-19 both because the condition reflects a

12

malfunction of the immune system and because the medication used to treat it has the effect of suppressing the body's natural immune response).

Furthermore, it is noteworthy to mention that Mr. Amuso's failing health has also coincided with the occurrence of the COVID-19 pandemic, which has not only twice led to Mr. Amsuo being infected with COVID-19 but also continues to cause stressors, hardship, and complications that are otherwise not seen outside of a prison setting. Even today, correctional institutions continue to impose lockdowns and restrictions on inmate movement and visitations to deal with COVID-19 infections—all of which impose a uniquely significant hardship on elderly and chronically sick inmates, as Mr. Amuso now presents. *See, e.g., United States v. Garcia*, 2020 WL 7212962, at \*3 (S.D.N.Y. Dec. 8, 2020) (noting that prison sentences served during the pandemic "mak[e] the conditions of confinement harsher, both physically and psychologically, than they would normally be"); *United States v. Romero*, 2021 U.S. Dist. LEXIS 73877, at \*8-10 (S.D.N.Y. Apr. 16, 2021) (finding the pandemic had subjected the defendant "to far more restrictive conditions of confinement, and has prompted limits on access to visitors, including family, far beyond what the Court expected at sentencing." The Court further noted that a "day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. Although not intended as punishment, incarceration in such conditions is, unavoidably, more punishing."); *United States v. Rodriguez*, 492 F.Supp.3d 306 (S.D.N.Y. 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case. This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal."); *United States v. Ben-Yhwh*, 453 F. Supp. 3d 1324, 1333 (D. Haw. 2020)

(continuing to incarcerate individuals who are not a danger to any person or the community during this pandemic, "would impose a sentence greater than necessary to comply with the statutory purposes of punishment, and would be unnecessarily cruel.").

By any measure, a prison setting presents far too many complications and risks for elderly inmates like Mr. Amuso, who are infirm, immobile, and continuously suffering from the pains of an irreversible chronic disease. *See, e.g.,* U.S. Department of Justice (National Institute of Corrections), Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates (2004 Edition), p. 9-10, *available at* https://info.nicic.gov/nicrp/system/files/018735.pdf ("Management problems associated with elderly inmates…are intensified in the prison setting and include the following: Vulnerability to abuse and predation; Difficulty in establishing social relationships with younger inmates; Need for special physical accommodations in a relatively inflexible physical environment."); The Lancet Rheumatology, Rheumatology care in prisons: cruel and unusual punishment?, Volume 2, Issue 12  (December 1, 2020) ("[C]hronic musculoskeletal conditions require management by experienced multidisciplinary teams, which are rarely accessible within prisons….[and] [m]anagement of chronic musculoskeletal conditions is challenging under the best of medical circumstances, and individuals who are incarcerated face a multitude of additional challenges."); Jason Laday, Hard time and health care: Challenges in caring for the prison population, Healio Rheumatology (October 19, 2020); Boucher NA, Van Houtven CH, Dawson WD, Older Adults Post-Incarceration: Restructuring Long-term Services and Supports in the Time of COVID-19, J Am Med Dir Assoc. (March 22, 2021) ("Prison accelerates aging such that the prison population develops chronic illness 10 to 15 years earlier than community counterparts."); Jaul E, Barron J., Age-Related Diseases and Clinical and Public Health Implications for the 85 Years Old and Over Population, Front Public Health (December 11, 2017); *see also United*

*States v. Taveras*, 436 F. Supp.3d 493, 500 (E.D.N.Y. 2006) (life expectancy within federal prison is considerably shortened).

Overall, Mr. Amuso is a seriously ill and frail 88-year-old man who cannot meaningfully navigate a prison setting and provide care for himself. His failing health essentially renders him "doomed to medical purgatory" that serving out the rest of his life sentence under these circumstances "would be greater than necessary to serve the purposes of 18 U.S.C. § 3553(a)(2)." *United States v. Wright*, No. 2:96-cr-80876-3, 2020 U.S. Dist. LEXIS 198340, at *11 (E.D. Mich. Oct. 26, 2020) (citing *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019) (granting compassionate release to a 65-year-old, terminally ill defendant who was no longer to provide self-care and had served 26 years of his life sentence for extortion and racketeering conspiracies and related substantive charges, as well as involvement in certain murders in furtherance of those conspiracies); *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370 (S.D. Ind. May 9, 2019) (granting compassionate release to a defendant that "served much of his sentence while seriously ill and in physical discomfort"); *United States v. Hansen*, 2020 U.S. Dist. LEXIS 61946, 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020) (collecting cases and granting compassionate release where defendant's medical records "overwhelmingly depict a body and mind besieged with mounting, serious afflictions").

Accordingly, the Court's reduction of Mr. Amuso's sentence based on his dire medical circumstances and other relevant considerations (*i.e.*, advanced age, long imprisonment, and exceptional institutional record) would be consistent with 18 U.S.C. § 3582(c)(1)(A)(i) and the policy statements outlined in Section 3(b) of the Federal Bureau of Prisons ("BOP") Policy Statement ("PS") 5050.50.

**IV.    The Section 3553(a) Sentencing Factors Militate in Favor of Compassionate Relief**

The Court's *current* assessment of the § 3553(a) sentencing factors should militate in favor of granting Mr. Amuso compassionate release based on his advanced age, medical circumstances, and rehabilitation. [5] *United States v. Scarpa*, No. 94-cr-1119-1 (ERK), 2020 U.S. Dist. LEXIS 210904 (E.D.N.Y. Nov. 11, 2020) ("Where, as here, the defendant 'can do no more harm' due to his physical and mental condition, the 'compassionate thing to do in this case is to release [the defendant] early, consistent with the intent of Congress when it passed the First Step Act.'" (*citing United States v. Ebbers*, 432 F. Supp. 3d 421, 433 (S.D.N.Y. 2020))*; United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021)  (explaining that the district court may not fulfill its duty to consider the § 3553(a) factors by merely recounting the considerations that supported the original sentence because "Section 3582(c)(1) necessarily envisions that the section 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing….If a district court's original section 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the section 3553(a) factors, then 18 U.S.C. Section 3582(c)(1) would, in effect, be a nullity.").

While the underlying offense conduct is admittedly serious, Mr. Amuso is not the same defendant that stood before the Court more than 31-plus years ago. His circumstances have dramatically and materially changed, as he is now an elderly and very sick man of 88 years of age,

---

[5] While Mr. Amuso's rehabilitation is a relevant factor for consideration under the 3553(a) sentencing factors, it is also established that rehabilitation in combination with other factors can constitute an extraordinary reason to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15 (S.D.N.Y. Apr. 6, 2020; *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *2 n.2 (S.D. Tex. June 24, 2019); *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *8 (D. Conn. Apr. 9, 2020); *Millan*, 2020 WL 1674058, at *10; *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *3 (N.D. Ohio Oct. 17, 2019).

who is staring down his mortality. *See, e.g., Pepper v. United States*, 562 U.S. 476, 492 (2011); *United States v. Ivory*, 2022 U.S. Dist. LEXIS 18307 (D. Kan., Feb. 1, 2022) ("defendant appears to have made significant progress toward rehabilitation. On balance, some 18 years after defendant was incarcerated on this offense, the court gives less weight to his criminal history than his undisputed and extended rehabilitation efforts which suggest that he no longer poses a direct danger to society upon his release").

In the more than three-plus decades since Mr. Amuso was first imprisoned, he has maintained a spotless institutional record and has served as a positive influence to others despite having had no realistic hope of release before the end of his life. He has also maintained the unconditional support and love of his family who will ensure that, if released, he will be well cared for during his final days. Many members of Mr. Amuso's immediate family, including his children and grandchildren, have provided letters to the Court to support the instant request for his compassionate release and an account of Mr. Amuso's good character (*See* Exhibit 13, Letters of Support).

Perhaps most important in this context, Mr. Amuso has not had a single disciplinary infraction during the 31-plus years of his imprisonment, which strongly evidences his maturation and rehabilitation. *See, e.g., United States v. Osuna*, Case No. 02-CR-1327 (CPS), 2008 WL 1836943, at *2 (E.D.N.Y. April 22, 2008) (reducing defendant's sentence pursuant to 18 U.S.C. § 3582(c)(2) where "[d]efendant has maintained good conduct and has not been subject of disciplinary action during his entire period of incarceration"); *United States v. Kwok-Ching Yu*, 2020 U.S. Dist. LEXIS 220458, at *14 (S.D.N.Y. Nov. 23, 2020) (granting compassionate release and noting that "[the defendant's] clean disciplinary record for the last eight years, and the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to

commit future criminal acts or pose a danger to the community"); *United States v. Panton*, Case No. 89-CR-346 (LAP), 2020 WL 4505915, at *7 (S.D.N.Y. Aug. 4, 2020) (reducing life sentence to time-served after close to 30 years in prison in part because defendant had "only six disciplinary infractions over almost thirty years in jail," none of which "involved violence, weapons, gangs, narcotics, alcohol, or BOP staff").

Mr. Amuso's good works and exceptional institutional record, which was without any expectation from Mr. Amuso that a Court would one day be able to consider it for his early release, is compelling. *United States v. Fisher,* 493 F. Supp. 3d 231, 238 (S.D.N.Y. 2020) (noting that the defendant "must be viewed from the present day, after years of rehabilitation he undertook wholly for its own sake and without hope of relief").

Furthermore, while Mr. Amuso and his children have suffered a great deal as a result of Mr. Amuso's long imprisonment—profoundly predicated in most recent years on the passing of Mr. Amuso's wife, his significantly failing health and the COVID-19 pandemic—Mr. Amuso has greatly matured and remained guided by his Catholic faith during the past 31-plus years. Indeed, notwithstanding his long imprisonment, Mr. Amuso has always sought to influence others positively. Of significance, all of Mr. Amuso's children and grandchildren report his positive influence and constant promotion of education during their upbringing:

> Since a little girl, my wish has always been to have my dad back at home where he belongs. Through the years, there are not enough words in this world to describe how supportive he has been to myself and our entire family; his constant support and guidance have given me the tools to stay on a positive path. Because of Dad's wisdom and advice, I successfully received my Bachelor's in Science in Elementary Education (Pre-K-6) and Master's in Science in Literacy (K-12). Being a pillar in my life, Dad has given me the drive to be a dedicated teacher for 17 years; our daily phone calls begin with him asking me if I had a blessed night and wishing me a blessed day. His upbeat attitude, no matter what challenges he may be facing, has always been and continues to be a constant in my life.

Exhibit 13, at *1-2 (Victoria Amuso);

18

***

My father taught me the importance of receiving an education and to walk this world with morals, values, and class….My daughter, Teresa, graduated top of her class and is now a nurse practitioner. My dad's wisdom and guidance for sure helped her on this journey. Dad left shortly after my second child, my son, Gaetano was born, and sadly was not home for my third birth when my son Vittorio, his namesake was born. My boys grew into two honest, trustworthy, hard-working men because of the impact my dad had on their lives.

*Id.* at p. *3 (Catherine DiBenedetto);

***

My dad always pushed me to be a better person each and every day. I graduated from two top tier academic schools: Archbishop Molloy and St. John's University- maintaining good grades and always staying out of trouble. Without my father's positivity and guidance I'd  have never been able to get through those years, as well as many other tough life choices and experiences thereafter.

*Id.*  at *4-5 (Robert Amuso);

***

He has always been a supportive loving father. Always rallying for us to be the best person we could be. Whether it was instilling values like family, manners, church, attending parent /teacher conferences or just a kind ear to listen, he was always there. He wanted nothing but us to be kind and decent people.

*Id.* at *6 (Michele Vasti);

***

One aspect of my grandfather's character that has always stood out to me is his unwavering advocacy for education and his insistence on staying away from negative influences. Despite his circumstances, he consistently emphasized the importance of academic excellence and personal growth. Throughout my educational journey, my grandfather was a pillar of support, constantly encouraging me to pursue my dreams and achieve my goals. His guidance was instrumental in my graduation with Honors from Stevens Institute of Technology.

*Id.*  at *8 (Carl Vasti);

***

During my journey through nursing school and becoming a Family Nurse Practitioner, my grandfather was a constant source of support and encouragement. Despite his own difficulties, he never ceased to encourage me to pursue my dreams and helped me in any way he could. One of the most significant ways he supported me was by sending me books related to my studies. He even wrote notes of encouragement in the margins of the books, which motivated me to continue working hard towards my goals.

*Id.* at *10-11 (Theresa DiBenedetto);

***

A grandfather ultimately holds a special place in a person's life, as he played a pivotal role in providing guidance and assurance when I was growing up. Every time we spoke, he always told me to "stay in school and to keep up the good

19

grades". I have now graduated from Rutgers Business School this past month, and it pains me that he wasn't able to see me walk down the aisle for graduation, because I know he would be so proud.

*Id.* at *12 (Thomas Vasti);

\*\*\*

He would remember every little detail of each of our lives and aided us mentally to look past as he would say "This too shall pass", or to make sure the family and friends would stick together….These are the many lessons that my grandfather taught me, and I can say for a fact, I grew up to be an "amazing young man" as he would tell me, and this is because of him.

*Id.* at *13-14 (Vittorio DiBenedetto);

\*\*\*

Since I was younger, I could always count on his call to bring a smile to my face, encourage me to do my best, and reassure me that I am loved. As I gotten older, that has never changed and has been such a blessing to me. He taught us all the importance of family, and I believe does his best to stay so strong to make sure that we are always okay and united.

*Id.* at *9 (Gaetano DiBenedetto).

The powerful account of Mr. Amuso's children and grandchildren is also supported by the accounts of many others, who, although they have no stake in the outcome of this application, felt compelled to support the instant application and attest to Mr. Amuso's good character (*see* Exhibit 13, at *15-26). For example, the accounts of those who have directly interacted with Mr. Amuso demonstrate his good works and positive relations that he has maintained while imprisoned,

More recently in 2022, Mr. Amuso's ninety-eight (98) year old sister, Marie N. Swierkowski, temporarily began being cared for by my eighty (80) year old mother. Needless to say, the "Golden Girls," as I refer to them, require my assistance on many levels. I am often present in my mother's home when Victorio Amuso calls to speak with his sister. Due to Ms. Swierkoski's hearing loss, the calls usually take place while the phone is on speaker mode.  This has allowed me to hear promises of prayer exchanged between Mr. Amuso and his sister. Mr. Amuso has spoken to me at times as well. Mr. Amuso's words lead me to believe that Mr. Amuso relies on his Christian faith to get through life behind bars.

Exhibit 13, at *16 (Concetta Puglisi, Esq.);

\*\*\*

When my father passed away at 45 years old I was 20 years old. My young, widowed mother, three younger sisters and I were thrown into a state of sorrow and uncertainty. The love and friendship that Vic brought us at that difficult time was a Godsend and I will never forget his kindness to my family.

*Id.* at *20 (Vincent Luccisano)

20

***

> I had the pleasure and honor of not only meeting Papa Vic but living with him for over a year at FCI Cumberland….I learned that he loves his family dearly and that he has a soft spot for birds and squirrels. While not on lockdown he would feed the animals on a daily basis even if it meant that he would go without. Not only that but he also had a heart for others. If he noticed that someone didn't have much of anything, he would give them whatever they needed. He would go without just so that someone else would have some coffee or food. He would routinely make wraps/burritos and pass them out to others. You could see that is warmed his heart to see others enjoy his cooking. In addition to this he would often talk to me about how I need to get back home and take care of my mom. He would tell me that I didn't need to fool around with drugs and the fast women. He would preach to me about working an honest job and providing for my family. I learned how much he respected the honest and hardworking man that provides for his family. He made me promise him that I would stay away from the drugs and that I would dedicate my life to being a family man. I made that promise and I am keeping that promise.

*Id.* at \*21-22 (Tary L. Gilbert).

Notably, the testimony collectively provided by all those who know Mr. Amuso not only captures his maturation and good character but also abundantly documents the unfortunate reality that long terms of imprisonment are a uniquely painful experience for defendants and their families. This has been especially evident in recent years for Mr. Amuso and his family given Mr. Amuso's advanced age, failing health, the loss of many loved ones, and the significant restrictions on inmate movement and visitations imposed since the COVID-19 pandemic.

As best explained by Mr. Amuso's children, Victoria and Robert, the collateral hardships that have accompanied Mr. Amuso's long imprisonment have been overwhelmingly significant,

> My dad has endured so much these past 30+ years within the prison system, upon that, losing my amazing mother-his wife, a number of siblings, cousins, and dear friends. Countless important events-holidays, birthdays, graduations, his grandchildren growing and maturing into fine adults, have been so difficult to experience without him, and I know equally hard for him; since Covid-19 came to be, my family and I have not been able to visit him; numerous restrictions and lockdowns have hindered our visits. You can only imagine how hurtful this is for him, myself, and our family, especially with his advanced age and declining health. He has unfortunately contracted Covid-19 a few times and is currently dealing with other ailments that are compromising his health and ability to do various tasks on his own. Rheumatoid arthritis is deeply affecting his hands, knees, and hip.

Exhibit 13, at \*1-2 (Victoria Amuso);

21

***

Graduations, holidays, birthdays, and family gatherings were never the same since I was 13. In fact, I suffered bouts of depression and seclusion, feeling lost and alone, but it was my father who pulled me out of such dark moments. I can't begin to express how much of an impact his wisdom and advice helped me during those rough times in my life….Besides being away for three plus decades, he has suffered dearly hearing about loved ones who have passed on. The saddest and most tragic of them all- the passing of my mother, his beloved wife. My mother lost her battle to lung cancer in February of 2012, and because she couldn't travel due to intense chemo treatments, my father never got a chance to say goodbye in person. What made it worse was that I had to let him know through a phone call that she had passed. Till this day, I never got over that experience and probably never will. At first glance I thought it was hard for us, but then put myself in my father's shoes hearing that news, and it broke my heart even more so considering where he was. I can't begin to express how devastating that experience was for our entire family.

*Id.* at *4-5 (Robert Amuso).

Likewise, the account of those in direct contact with Mr. Amuso during the past few years reflects the serious medical situation that Mr. Amuso now endures, noting Mr. Amuso's progressively failing health and a rapid decline in his quality of life. For example, Tary L. Gilbert, who was housed with Mr. Amuso in FCI Cumberland in 2022, explains,

The pain in his hip and leg started to become unbearable….He was desperate to get some relief from the pain as it had started to keep him up at nights. During this whole time, he was''t even able to walk up to the chow hall to get his own food. The pain was starting to cripple him. I saw him change right before my eyes from a vibrant highly active older gentlemen, to a frail decrepit man. Though, he would never complain or allow for his family to know what kind of pain he was in on a daily basis. It broke my heart to see him suffering like this without any relief or without any of the medical staff caring that he was in so much pain. My eyes are tearing up writing this letter. It was heartbreaking watching him deteriorate right before my eyes. It had gotten to a point where we needed a wheelchair to take him back and forth to his medical appointments. Though, he continued to walk in the unit with great trouble.

*Id.* at *21-22 (Tary L. Gilbert); *see also* id. at *4-5 (Robert Amuso) ("Currently, he needs assistance walking, and due to his condition, he can no longer send messages on the computer or write a letter home. His cellmate has to push him in a wheelchair each and every day, even assist for a simple phone call.").

22

Overall, the Court's granting of compassionate release to Mr. Amuso at this time would not diminish the nature and circumstances of the underlying offenses nor undercut the need for general/specific deterrence. Specifically, given Mr. Amuso's advanced age and serious medical circumstances, along with his 31-plus years of consecutive imprisonment without incident and that has coincided with many collateral hardships and the COVID-19 pandemic, no reasonable observer would not be deterred from engaging in the same conduct nor consider Mr. Amuo's punishment insignificant. *See, e.g., United States v. Monteleone*, No. 92-CR-351 (ARR), 2023 U.S. Dist. LEXIS 62518 (E.D.N.Y. Apr. 10, 2023) (reducing the defendant's multiple current life sentences for participating in a racketeering conspiracy that included violent objectives (conspiring to murder members of a rival LCN faction) and committing two murders in furtherance thereof, to time served (amounting to a sentence of 30 years of imprisonment, which "is not insignificant") based on the defendant's age (83), health conditions, and rehabilitation efforts.); *United States v. McGraw*, Case No. 02-CR-18 (LJM) (SMM), 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) ("Mr. McGraw has been in custody since September 2002 – nearly 17 years. That is a significant sanction"); *United States v. Best*, Case No. 93-CR-216 (MU), 2006 WL 2176980, at *4 (W.D.N.C. July 31, 2006) (unusually long sentences "are not always in the best interests of society").

Moreover, the Court's granting of compassionate release here, notwithstanding the admitted seriousness of the underlying offense conduct, would be consistent with other successful compassionate release applications that presented similar compelling circumstances as Mr. Amuso now presents. *See. e.g., Monteleone,* No. 92-CR-351 (ARR), 2023 U.S. Dist. LEXIS 62518*; Wong Chi Fai*, No. 93 Cr. 1340, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *4 (concluding, "notwithstanding the seriousness of [defendant's] criminal conduct," which include[d] his involvement in certain murders[,]" that the sentence served (twenty-six years of a life sentence)

23

appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law" and "provide[s] just punishment for the offense"); *United States v. Underwood*, No. 88 Cr. 822, 2021 U.S. Dist. LEXIS 8378, 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release motion where at least five, brutal murders were committed at defendant's direction); *United States v. Rodriguez*, 2020 WL 5810161, at *6 (S.D.N.Y. Sept. 30, 2020) (finding that defendant who tortured a government informant to death does not pose a continuing danger in light of "outstanding long-term prison record, lack of any significant disciplinary history, and the numerous letters of support submitted by prison staff, family, and friends, all attesting to [defendant's] reformation"); *United States v. Hunter*, 2020 WL 5748115, at *3-4 (D.D.C. Sep. 25, 2020) (granting compassionate release and citing defendant's "correctional treatment, and community engagement" notwithstanding his "serious and disturbing" prior criminal history including second-degree murder, armed robbery, setting fire to his then-girlfriend's home with her and a minor child inside, and a prison disciplinary record "including violent altercations with other prisoners"); *United States v. Fisher*, 2020 WL 5992340, at *6 (S.D.N.Y. Oct. 9, 2020) (releasing defendant sentenced to life without parole for participating in a large conspiracy that included at least four murders); *United States v. Tidwell*, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (reducing life sentence to time-served after 26 years imprisonment for a defendant convicted of engaging in a continuing criminal enterprise and two counts of murder in furtherance of that enterprise).

Accordingly, the Court's *current* assessment of the § 3553(a) sentencing factors should militate in favor of granting Mr. Amuso compassionate release based on his advanced age, dire medical circumstances, and rehabilitation.

24

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Mr. Amuso compassionate release, because Mr. Amuso's advanced age and severe chronic medical conditions, along with his 31-plus years of imprisonment and exceptional institutional record, provide an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and otherwise satisfy the criteria set forth by the BOP concerning the early release of elderly inmates.

Dated: White Plains, NY
        June 9, 2023

Respectfully submitted,

*/s/ Anthony DiPietro*
Anthony DiPietro, Esq.
Law Offices of Anthony DiPietro, P.C.
15 Chester Avenue
White Plains, NY 10601
(914) 948-3242

*/s/ James R. Frocarro*
James R. Frocarro, Esq.
20 Vanderventer Avenue, Suite 103W
Port Washington, NY
(516) 965-9180

*/s/ Mathew J. Mari*
Mathew J. Mari, Esq.
30 Wall Street, 8th Fl.
New York, NY 10005
(917) 923-8200

*Counsel for Defendant*
*Vittorio Amuso*