THE LAW OFFICES OF
# ANTHONY DIPIETRO, P.C.

15 CHESTER AVENUE			(914) 948 3242
WHITE PLAINS, NY 10601		(914) 948 5372 FAX
						DIPIETROLAW@YAHOO.COM

January 4, 2023

**By Mail/Email**
C. Carter, Warden
14601 Burbridge Rd, SE
Cumberland, MD 21502
CUM-ExecAssistant@bop.gov
301-784-1000

      Re:   *Request for Compassionate Release*
              Vittorio Amuso, Reg. No. 38740-079

Dear Warden Carter:

      This letter is respectfully submitted on behalf of our client, Vittorio Amuso, Reg. No. 38740-79, seeking Mr. Amuso's compassionate release under 18 U.S.C. § 3582(c)(1)(A)[1] and Bureau of Prisons (BOP) Policy Statement 5050.50 § 4(a) ("New Law" Elderly Inmates). Mr. Amuso meets the criteria for early release under 18 U.S.C. § 3582(c)(1)(A) and BOP PS 5050.50 § 4(a),[2] because his advanced age, chronic medical conditions, time served, and rehabilitation, when considered together, provide extraordinary circumstances that warrant compassionate release and otherwise satisfy the criteria set forth by the BOP as it pertains to the early release of elderly inmates.

---

[1] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[2] Mr. Amuso meets the criteria for early release under BOP PS 5050.50 § 4(a), because he was sentenced for an offense that occurred on or after November 1, 1987, is over the age of seventy (70) years old, and he has served more than thirty (30) years of his term of imprisonment.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and (ii), an inmate's sentence should be reduced if either there exist extraordinary and compelling reasons to warrant such a reduction or the defendant is at least seventy (70) years of age, has served at least thirty (30) years in prison for the offenses for which he is currently imprisoned, and the BOP has determined that he is no longer a danger to the safety of any other person or the community. Likewise, under BOP PS 5050.50 § 4(a) ("New Law" Elderly Inmates), an inmate's sentence should be reduced where the defendant has been sentenced for an offense that occurred on or after November 1, 1987, is over seventy (70) years of age, and has served thirty (30) years or more of his term of imprisonment.

Mr. Amuso is 88 years old and suffers from many serious medical ailments. Mr. Amuso has also served more than 30 consecutive years of imprisonment. Mr. Amuso's rehabilitation is well-established, evidenced by his exemplary prison record and many institutional achievements. During his lengthy incarceration, Mr. Amuso has not committed a single infraction of the BOP's inmate regulations. As of this date, Mr. Amuso's current recidivism risk is minimal, and his release would present no danger to the community. Overall, Mr. Amuso "age, chronic medical conditions, time served, and rehabilitation, when considered together, warrant compassionate release." *United States v. Grecco*, No. 89-00250, 2022 U.S. Dist. LEXIS 209668, at *9 (D.N.J. Nov. 18, 2022);

Most notably, Mr. Amuso's current health is critically unstable and requires complex chronic care. In this regard, Mr. Amuso's health has rapidly declined as he advances in age, and conventional treatment promises no substantial improvement to his medical conditions. The multitude of severe chronic medical conditions Mr. Amuso suffers from has substantially diminished his ability to provide self-care within a correctional facility. Indeed, Mr. Amuso's quality of life has dramatically deteriorated in the past several months due to the progression of his chronic disease and prior COVID-19 infections. Given Mr. Amuso's advanced age, the prognosis is admittedly grim.

The only effective way to deliver medical care to Mr. Amuso is outside a correctional facility where he can receive needed care and monitoring. As the BOP is aware, Mr. Amuso now requires special medical accommodations to address pain management and mobility impairments due to the progression of his chronic arthritis. Mr. Amuso's recent bouts

with rheumatoid arthritis have been so overwhelmingly debilitating and exacerbated by the conditions of his confinement that his quality of life is negligible at best. Not only has Mr. Amuso's chronic arthritis caused him to routinely suffer excruciating pain in the affected parts of his body, but also it has rendered him largely immobile. In this regard, Mr. Amuso can no longer walk long distances within the prison, and medical assistance is needed to provide his travel. The osteoarthritis of the hip and knee is also so severe and painful in Mr. Amuso's case that he can no longer function or provide appropriate self-care within a correctional facility—as he suffers from severe functional disabilities and sleep disturbances.

Essentially, Mr. Amuso's current circumstances render him doomed to "medical purgatory" that "serving out the rest of his life sentence would be greater than necessary to serve the purposes of 18 U.S.C. § 3553(a)(2)." *United States v. Wright*, No. 2:96-cr-80876-3, 2020 U.S. Dist. LEXIS 198340, at *11 (E.D. Mich. Oct. 26, 2020) (citing *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019)); *see also United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370 (S.D. Ind. May 9, 2019) (granting compassionate release to a defendant that "served much of his sentence while seriously ill and in physical discomfort").

According to the CDC, rheumatoid arthritis "has many physical and social consequences and can lower quality of life. It can cause pain, disability, and premature death." *See* Rheumatoid Arthritis (RA), Centers for Disease Control and Prevention, National Center for Chronic Disease Prevention and Health Promotion, *available at* www.cdc.gov/arthritis/basics/rheumatoid-arthritis.html (last visited January 3, 2023). Rheumatoid arthritis (RA) "is an autoimmune and inflammatory disease" which causes the immune system to attack healthy cells in the body by mistake, "causing inflammation (painful swelling) in the affected parts of the body." *Id.* "RA mainly attacks the joints, usually many joints at once. RA commonly affects joints in the hands, wrists, and knees. In a joint with RA, the lining of the joint becomes inflamed, causing damage to joint tissue. This tissue damage can cause long-lasting or chronic pain, unsteadiness (lack of balance), and deformity (misshapenness). RA can also affect other tissues throughout the body and cause problems in organs such as the lungs, heart, and eyes." *Id.*

It is also well established that rheumatoid arthritis is a severe disease for an elderly person, like Mr. Amuso, who is confined to a prison setting. *See United States v. Beard*, No. 1:16-cr-285-SCJ-JKL, 2020 U.S. Dist. LEXIS 246841, at *2-3 (N.D. Ga. June 25, 2020) ("Rheumatoid arthritis is a chronic inflammatory disorder that can damage a wide variety of body systems, including the skin, eyes, lungs, heart, and blood vessels."); *United States v. McDuffie*, 451 F. Supp. 3d 281, 283 (S.D.N.Y. 2020) (an individual suffering from rheumatoid arthritis may be especially vulnerable to COVID-19 both because the condition reflects a malfunction of the immune system and because the medication used to treat it has the effect of suppressing the body's natural immune response); *United States v. Campagna*, No. 16-CR-78, 2020 U.S. Dist. LEXIS 54401, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason.").

Several studies have shown that a prison setting is inappropriate for elderly persons like Mr. Amuso, who suffer from severe chronic diseases like rheumatoid arthritis and prior COVID-19 infection. *See* Jason Laday, *Hard time and health care: Challenges in caring for the prison population*, Healio Rheumatology (October 19, 2020)[3]; Boucher NA, Van Houtven CH, Dawson WD, *Older Adults Post-Incarceration: Restructuring Long-term Services and Supports in the Time of COVID-19*, J Am Med Dir Assoc. (March 22, 2021) ("Prison accelerates aging such that the prison population develops chronic illness 10 to 15 years earlier than community counterparts."); *United States v. Taveras*, 436 F. Supp.3d 493, 500 (E.D.N.Y. 2006) (life expectancy within federal prison is considerably shortened); *see also* Jaul E, Barron J., *Age-Related Diseases and Clinical and Public Health Implications for the 85 Years Old and Over Population*, Front Public Health (December 11, 2017).

Specifically, "chronic musculoskeletal conditions require management by experienced multidisciplinary teams, which are rarely accessible within prisons." The Lancet Rheumatology, *Rheumatology care in prisons: cruel and unusual punishment?*, Volume 2, Issue 12

---

[3] Available at www.healio.com/news/rheumatology/20201009/hard-time-and-health-care-challenges-in-caring-for-the-prison-population.

(December 1, 2020).[4] Likewise, "[m]anagement of chronic musculoskeletal conditions is challenging under the best of medical circumstances, and individuals who are incarcerated face a multitude of additional challenges." *Id.* Specially,

> [o]ne hurdle is the prison environment itself. Designed and constructed to prevent free movement, prison environments leave many patients unable to perform prescribed exercise regimens. General mobility can also be challenged by a predominance of narrow corridors and stairs (often without disabled access)….
>
> Another formidable barrier to high-quality rheumatology care in prison systems is access to appropriate medications. Drugs for management of rheumatic diseases—some of the most expensive on the market—must be ordered from a strict formulary decided by pharmacy benefit managers who often have little to no rheumatological experience. As such, many medications are simply not available.

*Id.*

As for prior and long-term COVID infection, such disease also renders those affected, like Mr. Amuso, more vulnerable to physical and mental regression, requiring specialized care by doctors and therapists. This is especially true for elderly persons living in highly restrictive confinement and otherwise suffering from other chronic illnesses that may mask long-term COVID symptoms. Indeed, recent medical studies have shown that prior COVID-infection can exacerbate and contribute to the progression of other present chronic diseases. *See* John Hopkins Medicine, *COVID 'Long Haulers': Long-Term Effects of COVID-19*[5] ("According to the CDC, the most common lasting symptoms are fatigue, shortness of breath, cough, joint pain and chest pain. Other issues include cognitive problems, difficulty concentrating, depression, muscle pain, headache, rapid heartbeat and intermittent fever."); *id.* ("After

---

[4] Available at www.thelancet.com/journals/lanrhe/article/PIIS2665-9913(20)30387-8/fulltext.

[5] Available at www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/covid-long-haulers-long-term-effects-of-covid19.

surviving COVID-19, some people are left with lingering anxiety, depression and other mental health issues."); *id*. ("If the coronavirus infection caused kidney damage, this can raise the risk of long-term kidney disease and the need for dialysis."); *id.* ("Some individuals develop medium to long-term symptoms following COVID infection, including brain fog, fatigue, headaches and dizziness."); *id*. ("Long-term COVID-19 symptoms can be similar to signs of other disease, so it is important to see your doctor and rule out other problems, such as cardiac issues or lung disease.").

By any measure, it is clear that compassionate release should be sought by the Bureau of Prisons when confronted with an elderly inmate like Mr. Amuso, who is of advanced age and suffers from numerous chronic diseases and prior COVID-19 infections that cause physical and cognitive impairments that hamper the inmate's ability to provide self-care in a correctional setting. Such circumstances fall squarely within the criteria of Application Note 1(A)(ii) and (B), which provides that extraordinary and compelling reason exists to warrant compassionate release if the defendant is -

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

18 U.S.C.S. app. § 1B1.13 (LexisNexis, Lexis Advance through Public Law 117-248, approved December 20, 2022).

Indeed, BOP PS 5050.50(3) has made explicit that compassionate release should be made available to inmates suffering from a debilitated

-6-

medical condition. Specifically, the BOP must give "RIS consideration …to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." *Id.* In this regard, the BOP has defined a debilitated medical condition to include the circumstance where, as in Mr. Amuso's case, "an inmate is capable of only limited self-care and is confined to a bed or chair for more than 50% of waking hours." *Id.*

Likewise, the BOP has ratified that compassionate release should be considered for elderly inmates who meet specific other criteria. *See* BOP PS 5050.50(4). Specifically, the BOP has explicitly noted that elderly inmates, like Mr. Amuso, should be considered for compassionate release when they are 70 years or older and have served 30 years or more of their term of imprisonment. The BOP has further specified that such elderly inmates are particularly worthy of consideration for compassionate relief if they also present severe or chronic medical conditions related to the aging process, experience deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility, and conventional treatment promises no substantial improvement to their mental or physical condition. *Id.*

Notably, Mr. Amuso meets all of the criteria set forth by the BOP regarding an elderly inmate's qualification for compassionate release. *See also United States v. Perez, 2020 U.S. Dist. LEXIS 45635* (D. Kan., March 11, 2020); *United States v. Riggins*, No. 06-700-1, 2022 U.S. Dist. LEXIS 41444, at *6 (E.D. Pa. Mar. 9, 2022) (noting that eligibility for compassionate release includes inmates that are over 70, have served more than 30 years of their term of imprisonment and were sentenced after November 1, 1987); U.S.S.G. § 1B1.13 cmt. n.1B ("Additionally, extraordinary and compelling reasons may exist where '[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less'").

Finally, it is noteworthy that Mr. Amuso has many family members willing to care for him upon his early release and serve as his custodian. Since his incarceration, Mr. Amuso has maintained strong ties and positive relations with the community and his loved ones, including his children. Mr. Amuso has also kept a strong religious faith,

and he has overwhelmingly exhibited good conduct during the past 30-plus years of his imprisonment. At 88 years of age, Mr. Amuso is no risk to the public, and his continued confinement serves no legitimate penological interest. *See* U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders[6]; *see also United States v. Piggott*, No. 94 Cr. 417, 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) ("[Defendant's] strong family support and good job prospects make recidivism unlikely."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing the Sentencing Commission's guidelines to support the unlikelihood of the defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community").

Indeed, notwithstanding the underlying offense conduct alleged in Mr. Amuso's case,[7] his advanced age, current medical circumstances, rehabilitation, and long imprisonment (30-plus years) overwhelmingly compel that compassionate release to be afforded. *See, e.g., United States v. Underwood*, No. 88 Cr. 822, 2021 U.S. Dist. LEXIS 8378, 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release motion where at least five, brutal murders were committed at defendant's direction); *United States v. Ramirez*, 571 F. Supp. 3d 40, 42, 52 (S.D.N.Y. Nov. 10, 2021) (reducing forty-eight-year sentence by eight years where the defendant was the leader of a drug trafficking organization and was personally involved in two murders); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) (reducing sentence to thirty years where defendant participated in torture and murder of

---

[6] Available at www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

[7] Since Mr. Amuso's conviction, new evidence has also emerged demonstrating that much of the alleged conduct was attributable solely to his co-defendant Anthony Casso and that Mr. Amuso had no knowledge of or control over Casso's conduct at such time.

government informant); *Wong Chi Fai*, 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *3 (granting compassionate release to 65-year-old gang leader who had engaged in multiple murder conspiracies and served only 26-years of a term of life imprisonment); *United States v. Rice*, 2020 WL 4505813, at *4 (S.D.N.Y. Aug. 5, 2020) (granting compassionate release despite defendant's conviction for "very serious crimes" where, "given [d]efendant's advanced age and serious health problems, he is significantly less likely to recidivate"); *United States v. Clausen*, Case No. 00-CR-291, 2020 WL 4601247, at *2 (E.D. Pa. Aug. 10, 2020) (reducing 213-year sentence to time-served after more than 20 years imprisonment in part because defendant "maintained a clean disciplinary record since 2003"); *United States v. Panton*, Case No. 89-CR-346 (LAP), 2020 WL 4505915, at *7 (S.D.N.Y. Aug. 4, 2020) (reducing life sentence to time-served after close to 30 years in prison in part because defendant had "only six disciplinary infractions over almost thirty years in jail," none of which "involved violence, weapons, gangs, narcotics, alcohol, or BOP staff").

Overall, the records maintained by the BOP make clear that Mr. Amuso's current circumstances and dire health conditions warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A) and BOP PS 5050.50 § 4(a). Collectively, Mr. Amuso's advanced age, declining health, service of more than 30 years of imprisonment, and rehabilitation, overwhelmingly establish that a reduction in his sentence is warranted at this time.

For the foregoing reasons, it is respectfully requested that Mr. Amuso be granted compassionate release.

Respectfully submitted,

*Anthony DiPietro*
Anthony DiPietro, Esq.

Mathew J. Mari, Esq.
30 Wall Street, 8th Fl.
New York, NY 10005

*Counsel to Vittorio Amuso*