UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA,

        -against-                                      90-cr-00446 (FB)

VITTORIO AMUSO,

        Defendant.

---------------------------------------------------------X

# REPLY MEMORANDUM IN SUPPORT OF PETITIONER VITTORIO AMUSO'S MOTION FOR A SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Anthony DiPietro, Esq.
Law Offices of Anthony DiPietro, P.C.
15 Chester Avenue
White Plains, NY 10601
(914) 948-3242

James R. Frocarro, Esq.
20 Vanderventer Avenue, Suite 103W
Port Washington, NY
(516) 965-9180

Mathew J. Mari, Esq.
30 Wall Street, 8th Fl.
New York, NY 10005
(917) 923-8200

*Counsel for Defendant
Vittorio Amuso*

**PRELIMINARY STATEMENT**

The government ignores that the central issue before the Court is not whether Mr. Amuso deserves a second chance at life, but whether there currently exists compelling reason to warrant his compassionate release at the immediate end of his life. Specifically, the government's opposition amounts almost exclusively to a scattershot of *ad hominem* attacks against the Mr. Amuso who stood before the Court more than 31-plus years ago—none of which materially addresses the current reality that Mr. Amuso is an eighty-eight-year-old prisoner who, after serving three-plus decades in prison without incident, is medically unsalvageable and immobile within a federal prison.

While there is no debate that the underlying conduct was serious, there remains a fundamental truth that no person should be denied a death with dignity, even prisoners whom the Government cast as unworthy. In this regard, the government's opposition provides no convincing reason as to why an elderly and ailing prisoner, after serving an extremely long term of imprisonment, must medically suffer and ultimately perish in a prison cell when the Court possesses the perfect power, provided by the First Step Act, to compel the end-of-life care of such a prisoner to his family.

Simply put, justice is not built on getting even, and punishment need not be aimlessly held in perpetuity because it was once a legally justifiable result. Accordingly, the Court should grant Mr. Amuso compassionate release and impose whatever strict terms of supervision it deems necessary to facilitate such a humane outcome.

**I.  The Government's Opposition Fails to Rebut the Existence of Extraordinary and Compelling Reasons Favoring Mr. Amuso's Compassionate Release**

The government's opposition fails to address the compelling circumstances presented by Mr. Amuso's advanced age, rapidly failing health, and immobility—all of which are well

documented by underlying medical records. Rather, the government weightlessly points the Court's attention to the Warden's conclusory claim that Amuso is "receiving appropriate medical care and treatment by Health Services staff." Gov't Resp at 19. However, the Warden's terse, dated (March 14, 2023), and self-serving assessment provides no actual insight into the current severity of Mr. Amuso's medical condition, the attendant grim prognosis, and the daily and insurmountable obstacles that Mr. Amuso must overcome to provide self-care as an elderly, sick, and immobile inmate within a secure federal prison.

By no coincidence, the government's opposition does even attempt to address any of the details relating to Mr. Amuso's numerous medical conditions, the not-so-timely medical care he has received on many occasions, and the significant pain he has endured as a result of such lapses. Notably, the government's opposition also provides no new information since the Warden's March 14, 2023 denial nor an update to the latest set of medical records produced by the BOP (which were provided with an end date of April 19, 2023).

Furthermore, the government's opposition also makes no mention of the fact that the facility housing Mr. Amuso was again on a long lockdown during the pendency of this motion (May 26th to June 19th) and that Mr. Amuso was confined to a prison cell during that entire time (notwithstanding his advanced age, serious medical circumstances, and immobility).[1] Likewise, the government's opposition makes no mention of the material fact that Mr. Amuso's condition has only worsened during the pendency of this action and his continued

---

[1] While undersigned counsel attempted to ascertain additional information regarding Mr. Amuso's well-being during such lock-down, such request was denied by the BOP on the basis that the release form previously executed by Mr. Amuso expires every three months and must be renewed at each facility (an obstacle that is not so easy to execute every three months when dealing with an elderly and sick inmate). *See* Exhibit A, Emails between Anthony DiPietro Esq., and Executive Assistant (FCI Butner).

imprisonment has caused a significant burden on other inmates who are confronted with the task of being his caretaker since federal prisons are understaffed and ill-equipped to provide one-on-one care by a medical aid that would be typically required in the outside world for the end-of-life care of an elderly, sick, and immobile person as Mr. Amuso now presents. [2]

Finally, the government's opposition misses the mark in claiming that a compelling reason for compassionate release could not be collectively based on Mr. Amuso's advanced age (88), medical ailments, immobility, and his service of more than 30-plus years of imprisonment without incident. Contrary to the government's claim, those facts more than sufficiently qualify as a compelling reason for compassionate release, and the law directly supports that very conclusion. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (The district court can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]."); *see also United States v. Grecco*, No. 89-00250, 2022 U.S. Dist. LEXIS 209668, at *10 (D.N.J. Nov. 18, 2022) ("Pursuant to 18 U.S.C. § 3582(c)(1)(A)(ii), the Court may modify a term of imprisonment if it finds that the defendant is at least seventy (70) years of age, has served at least thirty (30) years in prison…and the BOP has determined that he is no longer a danger to the safety of any other person or the community. Similarly, BOP PS 5050.50 § 4(a) provides that an inmate is eligible for a reduction in sentence where the defendant has been sentenced for an offense that occurred on or after November 1, 1987, is over seventy (70) years of age, and has served thirty (30) years or more of his term of imprisonment").

---

[2] Mr. Amuso's children have reported that Mr. Amuso's condition has only worsened and his cellmate, an admittedly untrained and unqualified person in elderly and medical care, is responsible for mostly all of Mr. Amuso's self-care, including the daily responsibility to try to place Mr. Amuso in his wheelchair from his bunk and to transport him beyond his prison cell.

3

By any measure, the government's opposition fails to rebut the existence of sufficiently compelling reason for the Court to qualify Mr. Amuso for compassionate release.

## II. The Government's Opposition Fails to Establish that the 3553(a) Sentencing Factors Weigh Against Mr. Amuso's Compassionate Release

Contrary to the government's claim that the underlying offense bars any form of compassionate release, both the *current* facts and law counsel otherwise. Indeed, both the First Step Act and BOP Policy cited in Mr. Amuso's moving papers establish, by their inherent purpose, that a prisoner's materially changed circumstances—such as being of advanced age, medically ailing, immobile, and having served 30-plus years of imprisonment without incident—strongly favor compassionate release.

Notably, in *United States v. Kibble*, the Court explained that the district court may not fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence. 992 F.3d 326, 335 (4th Cir. 2021). Specifically, the Court explained, "Section 3582(c)(1) necessarily envisions that the section 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing." *Id.* "If a district court's original section 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the section 3553(a) factors, then 18 U.S.C. Section 3582(c)(1) would, in effect, be a nullity." *Id.*

### A. The Government's Claim that the Underlying Offense Conduct Bars Any Form of Compassionate Release is Without Merit

While the government attempts to exclusively focus on factors considered by the sentencing judge more than 31 years ago, it errantly ignores Mr. Amuso's *current* circumstances, perfect institutional record, and the powerful testimony provided by the many people who have remained in contact with him during his imprisonment—all of which

weighs heavily in favor of compassionate release. *United States v. Osuna*, Case No. 02-CR-1327 (CPS), 2008 WL 1836943, at *2 (E.D.N.Y. April 22, 2008); *United States v. Rodriguez*, Case No. 00-CR-761 (JSR), 2020 WL 5810161, at *4 (S.D.N.Y. Sept. 30, 2020); *United States v. Kwok-Ching Yu*, 2020 U.S. Dist. LEXIS 220458, at *14 (S.D.N.Y. Nov. 23, 2020).

Furthermore, the government ignores all of the legal precedent cited in Mr. Amuso's moving papers, namely, a multitude of cases in which compassionate relief was granted to much younger prisoners notwithstanding equally serious offense conduct. For example, in *United States v. Rodriguez*, 492 F. Supp 3d 303, 311 (S.D.N.Y. 2020), the defendant's life sentence for the brutal torture and murder of a confidential informant was reduced to 30 years based upon the Court's finding that his rehabilitation—together with the unique hardship and risk of severe illness imposed by the pandemic—constituted extraordinary and compelling circumstances under 3582(c)(1)(A). Similarly, in *United States v. Underwood*, No. 88 Cr 822, 2021 WL 3204834 (S.D.N.Y. Jan. 15, 2021), the defendant, the leader of a heroin trafficking enterprise responsible for at least five brutal and calculated murders aimed at eliminating competitors, informants, and actual or potential witnesses was granted immediate release at 67 years old from a life sentence based upon pandemic related concerns, and a significant showing that he had by all accounts been a model inmate and an active and devoted father and grandfather—all while under the specter of a life-without-parole sentence. Id. at *2.

Finally, in *United States v. Ramsay*, 538 F. Supp.3d 407 (S.D.N.Y. 2021), the court found the mandatory nature of the life sentence imposed upon defendant under the Sentencing Guidelines in 1998—for murdering a man, and a woman and her child—among the extraordinary and compelling reasons for the reduction of his sentence to a 30-year prison

5

term. *See also United States v. Tidwell,* 476 F.Supp.3d 66 (E.D. Pa. 2020) (reducing life sentence to time-served after 26 years for engaging in a continuing criminal enterprise and two counts of murder in furtherance of that enterprise as well as terms of years for multiple drug possession, tax evasion, and firearms counts); *United States v. Wong Chi Fai*, Case No. 93-CR-1340 (RJD), 2019 WL 3428504 (E.D.N.Y. July 30, 2019) (reducing life sentence to time-served after 26 years for extortion and racketeering conspiracies as well as involvement in murders in furtherance of those conspiracies); *United States v. Fisher*, 2020 WL 5992340, at *6 (S.D.N.Y. Oct. 9, 2020) (releasing defendant sentenced to life without parole for participating in a large conspiracy that included at least four murders).

Furthermore, the government's claim that sentencing disparities prevent the Court from granting compassionate release is meritless. Not only does such an argument ignore the many successful cases cited in Mr. Amuo's petition, but also such argument is premised on the misleading claim that there exists a string of cases in this district demonstrating the "routine" denial of compassionate release to similarly situated defendants. Gov't Reps. 14-17 (citing Thomas Gioeli, Anthony Casso, Victor Orena, Michael Spinelli, and Vito Guzzo as "similarly situated mob leaders" that engaged in "equally or less heinous conduct than Amuso.").

Specifically, the Court need not engage in any extensive examination of those matters to discern the material distinguishing fact that a majority of the cited defendants by the government are not sentenced to die in federal prison, have already or soon will be released therefrom, and are not of advanced age, immobile, and presenting similar circumstances. For example, Thomas Gioeli was sentenced to only 18 years imprisonment (not even the applicable statutory max) after trial, and he was already released, <u>at the age of 70</u>, on May

6

03, 2023. Likewise, Vito Guzzo was sentenced to only 456 months imprisonment and he will be released, <u>at the age of 63</u>, on November 4, 2028. Finally, Michael Spinelli will be released, <u>at the age of 72</u>, on October 25, 2026.

As for the case of Anthony Casso, the Court already knows that he was a uniquely unremorseful and heinous offender from start to finish,[3] who not only was uniquely sentenced to <u>13 consecutive terms of life imprisonment and had admitted to personally participating in 25 murders</u> (along with his self-hatched plots to kill a federal judge and prosecutor), but also, he had violated, in the most serious ways, both the terms of his cooperation agreement and the rules of prison (including "trying to escape from custody, smuggling in contraband, assaulting other inmates and attempting to tamper with other criminal proceedings by lying about multiple witnesses testimony").[4] *See* Dkt No. 1219, at 3-10, 18-24.

Ultimately, there are no similarities between the cases cited by the government and the instant matter, and, if anything, the cited cases establish that Mr. Amuso should not, at the age of eighty-eight and being immobile, be mandated to medically suffer and die in a prison cell after serving 31-plus years of imprisonment without incident.

---

[3] By no coincidence, the government's opposition here omits Casso's dominant role in all of the charged offenses (*see* Gov't Resp. at 3-6), but when opposing Casso's petition for compassionate release, the government explicitly relied on Casso's far more expansive history of criminal misdeeds and self-directed heinous acts of murder and mayhem, along with his dominant role in the same offenses (*see* Dkt No. 1219, at 3-10, 18-24).

[4] As for Orena's motion, it was "denied without prejudice to renew in the event of significant developments in Orena's habeas proceeding or significant further deterioration of his health" (Dkt Entry for Dkt No. 1876 in 92-cr-00351), and his counsel alleged therein that new evidence proved his innocence of much of the underlying conduct and also was rebutted by the government's unique claim that Orena led an LCN war that led to the death of 28 individuals.

Accordingly, the Court should not be deterred from granting compassionate release here, because the *current* facts and law support such an outcome under the 3553(a) factors.

### B. The Government's Claim that Mr. Amuso's Compassionate Release Would Present a Risk to the Community is Frivolous

Finally, and perhaps most unavailing, is the government's misleading claim that Mr. Amuos's compassionate release would present an unworkable danger based on the account of a cooperating witness (John Pennisi), who admittedly has never met nor spoken to Mr. Amuso.[5] Not only does it remain irrefutable that Mr. Amuso has never been charged with a single prison infraction or crime in the past 31-plus years, but also there is no legitimate reason for the Court to be deterred from the undeniable reality that its imposition of strict supervision, to potentially include a term of home detention, on an elderly, sick and immobile person would be abundantly sufficient to quell any claimed risk. *See, e.g., United States v. Ivory*, No. 22-3094, 2023 U.S. App. LEXIS 17721 (10th Cir. July 12, 2023) (affirming special term of supervised release of 60 months on home confinement set by the district court to reduce the possibility that defendant will pose a danger upon release); *United States v. Adeyemi*, 470 F.Supp.3d 489 (E.D. Pa., July 6, 2020) (finding the defendant does not pose a danger to the community given the imposition of five years of supervised release).

In any event, putting aside that reality and the obvious flaws in Pennisi's account, *i.e.,* that he has never once met or spoken to Mr. Amuso and his claims are admittedly derived from multiple layers of hearsay, there also exists an abundance of powerful impeachment information that was never aired in any trial in which Pennisi previously testified because

---

[5] Should the Court be inclined to consider Mr. Pennisi's prior testimony, an evidentiary hearing should be conducted so that Mr. Amuso can adequately confront such accusation and the Court can assess both Pennisi's credibility and the value of any testimony that the government claims is relevant to the resolution of this matter.

such information was suppressed. Litigation regarding such many nondisclosures remains pending before the Court of Appeals for the Second Circuit. *See United States v. Madonna*, Dkt No. 243 in 20-2479-cr(L) (2d Cir.). Notably, the government's opposition fails to mention that fact, along with the reality that Pennisi will never be utilized again as a cooperating witness after it was recently revealed that he apparently suffers mental delusions and had claimed that the spirit of his deceased loved ones had provided him a message, by shaking the structure of his home and the dishware therein for hours on end, to cooperate with the FBI.

Ultimately, while the government may hope that Pennisi's sanitized testimony in an unrelated proceeding would prove relevant here, no reasonable person would ever rely on such account in any matter of importance today.[6] *See e.g.,* Jerry Capeci, *Mobster John Pennisi said spirit of his grandparents told him to turn rat*, NY Post (June 4, 2021) (Pennisi says, he heard a sudden loud rattling of dishes and glasses: "Everything was shaking in the house… I didn't live by a train station. You had to walk [there]. There was no planes flying around. It wasn't an earthquake. Gary, I swear to you, I had wine glasses and different glasses and dishes

---

[6] 

in the house. Everything was shaking in the house….I even called my mother up, and I says, 'I want you to listen to something.' This went on for hours. She says, 'What is that?' I says, 'It's the glasses. I prayed to Grandma and Grandpa. It's the glasses and the dishes and the house is shaking.' Gary, I can't even explain it. And THAT was my sign to go.").

Finally, and most troubling about the government's careless propagating of Pennisi's hearsay account is its representation that Mr. Amuso's son-in-law, Joey DiBenedetto, "is instrumental in delivering messages to Amuso in prison." Gov't Resp. at 14, fn. 2. Contrary to the government's claim, Mr. DiBenedetto has not visited Mr. Amuso since the 1990s and the two rarely speak except to exchange holiday gratuities on a recorded prison phone line.

## **CONCLUSION**

For the many reasons set forth in Mr. Amuso's moving papers and herein, the Court should grant the instant application for compassionate release, because Mr. Amuso's advanced age, severe chronic medical conditions and immobility, along with his service of 31-plus years of imprisonment, provide a compelling reason for such a humane outcome.

Dated: White Plains, NY
       July 24, 2023

                                      Respectfully submitted,

                                      */s/ Anthony DiPietro*
                                      Anthony DiPietro, Esq.
                                      15 Chester Avenue
                                      White Plains, NY 10601

                                      */s/ James R. Frocarro*
                                      James R. Frocarro, Esq.
                                      20 Vanderventer Avenue, Suite 103W
                                      Port Washington, NY

                                      */s/ Mathew J. Mari*
                                      Mathew J. Mari, Esq.
                                      30 Wall Street, 8th Fl.
                                      New York, NY 10005