UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

   -against-

VITTORIO AMUSO,

             Defendant.

------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 90-cr-00446

*Appearances:*
*For the United States*:
BREON PEACE
United States Attorney
Eastern District of New York
By: ELIAS LARIS
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

*For the Defendant*:
ANTHONY DIPIETRO
Law Office of Anthony DiPietr
15 Chester Avenue
White Plains, NY 10601

JAMES R. FROCCARO
20 Vanderventer Avenue
Suite 103W
Port Washington, NY 11050

**BLOCK, Senior District Judge:**

     Vittorio Amuso ("Amuso") was the boss of the Luchese Crime Family, one of the five families comprising the notorious La Cosa Nostra in New York City, from 1986 until his arrest in 1991.[1] The Luchese Crime Family was a violent organization whose purpose was to amass illicit wealth at the expense of business owners, union

---

[1] The government alleges that Amuso continues to run the Luchese Family from prison; he contests this allegation.

1

members, and U.S. taxpayers. Under Amuso's direction, the organization enjoyed a particularly bloody reputation. Along with his underboss, Anthony "Gaspipe" Casso ("Casso"), Amuso was responsible for ordering numerous murders, which account for a significant portion of his 54 convictions.

Now, after 31 years in prison, Amuso asks the Court to convert his life sentence to one of time served. For the reasons that follow, the Court declines to do so.

## I. BACKGROUND

Amuso became a member of the Luchese Family in 1978. He was named its boss in 1986. Under Amuso's leadership were approximately 120 made men and as many as 1,000 associates, all of whom carried out his bidding. Among the Family's numerous income-generating pursuits were loansharking, narcotics distribution, gambling, extortion, and the collection of kickbacks from corrupt union officials. One of the Family's rackets resulted in the collection of approximately $1,000,000 in kickbacks over two years from window manufacturers, who in turn inflated estimates for planned work for the New York City Housing Authority. Amuso himself shared 75% of the proceeds from this racket with Casso.

Murder was a tool in Amuso's arsenal, and one he used regularly in order to advance his business pursuits and ensure that he retained absolute power in the Family. As boss, Amuso ordered the murder of over a dozen individuals, nine of

whom ultimately were killed. He ordered the slaying of individuals that he believed were informants, those he perceived as threats to his power, and those who refused to fully cooperate with his orders. Many of these individuals were shot at point blank range and in public spaces. One was bludgeoned to death in a bagel shop before being shot in the head. One survived his attempted execution only by driving himself to a medical facility after having been shot in the neck and shoulder. Another survived because the gun that was held up to his head misfired. One soldier for the Family who was suspected of being an informant was lured to an auto-body shop to be executed. He tried to escape when he realized what was happening but was dragged back inside where he was stabbed and shot to death. His killers placed a dead canary in his mouth as a warning sign to potential informants. An associate who was killed in the lobby of his apartment building by a shot to the head was also shot in the groin because Amuso had heard a rumor that the man was bisexual. Another man was paralyzed after being shot 12 times at a gas station because Amuso feared that he might testify against him. That man's father was also intimidated for the same reason.

After learning of an impending indictment from corrupt law enforcement officers, Amuso became a fugitive of justice in May 1990. He was arrested in Scranton, Pennsylvania on July 28, 1991. After a trial spanning more than a month, on June 15, 1992 a jury convicted Amuso of all 54 counts of a superseding

3

indictment. His convictions include six counts of murder in-aid-of racketeering, nine counts of conspiracy or attempt to commit murder in-aid-of racketeering, 34 counts of bribing labor officials, one count of conspiracy to bribe labor officials, conspiracy to commit extortion, conspiracy to evade income taxes, racketeering, and racketeering conspiracy. In October 1992, the Court sentenced Amuso to life in prison plus five years of supervised release. It also imposed a fine of $250,000 and an assessment of $2,700. Amuso appealed his conviction but was unsuccessful. *United States v. Amuso*, 21 F. 3d 1251 (2d Cir. 1994).

Now 88 years old, Amuso suffers from a litany of age-related health conditions. The most debilitating is severe osteoarthritis of the hips, which causes him extreme pain and has rendered him wheelchair-bound for ambulating long distances. He asks the Court to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A) for this reason, and because he believes that he no longer poses a danger to the public.

## II. COMPASSIONATE RELEASE

The Court has explained in detail in its *Birkett* and *Russo* decisions the standard governing motions brought under 18 U.S.C. § 3582(c)(1)(A)(i). --F. Supp. 3d--, 2023 WL 4274683, at *2 (E.D.N.Y. June 29, 2023); --F. Supp. 3d --, at *1-2 (E.D.N.Y. Nov. 28, 2022). The analysis requires three steps. First, the Court must

4

determine whether a defendant has met his or her administrative burden. There is no dispute that Amuso has exhausted this requirement.[2]

Next, the Court must determine if "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[3] The Court has broad discretion to determine whether such reasons exist. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The one limitation in this analysis is that rehabilitation alone may not serve as an extraordinary and compelling circumstance.[4] *Id*. at 238; 28 U.S.C. § 994(t); U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 n.3 (U.S. Sent'g Comm'n 2006). However, it may be considered in combination with other factors. Aside from this guardrail, "what constitutes extraordinary and compelling

---

[2] Amuso applied to the warden of his facility for compassionate release on January 4, 2023. *See* Def.'s Mot. for Sentence Reduction, Ex. 2 ("Request for Compassionate Release"). His request was denied on March 14, 2023. *See id*. at Ex. 3 ("Warden's Denial Letter").

[3] Amuso also requests relief under 18 U.S.C. § 3582(c)(1)(A)(ii). Under this section, the Court may proceed to consideration of the § 3553(a) factors if the defendant is at least 70 years old, has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c)—the so-called Three Strikes Statue—and the Director of the Bureau of Prisons has determined that he or she no longer poses a danger to any person or the community. 18 U.S.C. § 3582(c)(1)(A)(ii). However, Amuso was not sentenced under § 3559(c), but rather under the Sentencing Guidelines. Therefore, relief under this section is not available to him.

[4] The Sentencing Commission published proposed amendments to the Sentencing Guidelines in April 2023 that would confirm that rehabilitation alone cannot suffice as an extraordinary and compelling reason, though it may be considered alongside other factors. *See* U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines (Preliminary)* (April 5, 2023). The proposed amendments will become effective on November 1, 2023.

reasons warranting a reduction is committed to the sound discretion of the district court." *United States v. Roney*, 833 Fed. App'x 850, 852 (2d Cir. 2020) (summary order) (citing *Brooker*, 976 F.3d at 236).

If the Court determines that extraordinary and compelling reasons exist, it then turns to a weighing of the sentencing factors to determine whether a reduced sentence is justified. These factors are: (i) the nature and circumstances of the offense; (ii) the history and characteristics of the defendant; (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (iv) the need to adequately deter criminal conduct; (v) the need to protect the public from the defendant; (vi) the need to provide the defendant with necessary rehabilitation; and (vii) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

### III. ANALYSIS

Amuso presents the following reasons to justify the Court's reconsideration of his sentence: his medical conditions, his advanced age, the length of time he has served, and his rehabilitation. However, Amuso fails to establish that this combination of circumstances meets the threshold of extraordinary and compelling. For reasons discussed below, a balancing of the § 3553(a) factors would not justify his release either.

### a. Extraordinary and Compelling Circumstances

Amuso suffers from several chronic medical conditions: nuclear sclerosis, hypertension, hyperlipidemia, coronary atherosclerosis, cardiac arrhythmia, anemia, an eyelid disorder, a conjunctiva disorder, teeth loss, hematuria, benign hypertrophy of the prostate, enthesopathy, hearing loss, osteoarthritis of the knees, and severe osteoarthritis of the hips. *See* Def.'s Mot. for Sentence Reduction, Ex. 8 ("Bureau of Prisons Health Services Inmate Intra-System Transfer"). His arthritis of the hips in particular causes him severe pain and he requires a wheelchair to move around his facility. He also requires assistance from other inmates or Bureau of Prisons ("BOP") staff to pick up his food trays and make his bed. BOP staff have noted that Amuso's condition and affect have declined in recent months and he was recently designated a "Care 3" inmate due to his increased need for regular medical care.

The Court acknowledges that Amuso, like many elderly inmates, faces particular difficulties while incarcerated. Still, as it stands, Amuso's medical records reflect that the BOP is managing Amuso's medical conditions adequately by providing him with medications, x-rays, and medical appointments upon his request. *See* Def.'s Mot. for Sentence Reduction, Exs. 8-12. Although he complains of deterioration of his medical state, he has not received a terminal diagnosis, nor has he endured any prolonged hospital stays. *See, e.g., United States*

*v. Rodriguez*, No. 22-93, 2023 WL 3001238, at *2 (2d Cir. Apr. 19, 2023) (affirming a lower court's decision to deny compassionate release for a defendant with numerous serious medical conditions because he had no recent prolonged hospital stays nor a terminal diagnosis and was receiving adequate care from the BOP).

Further, Amuso cites the risk of COVID-19 to his health as an elderly inmate. However, Amuso has twice contracted and recovered from COVID-19, and he is now vaccinated against the virus. Courts typically deny compassionate release to vaccinated defendants on this basis. *See, e.g., United States v. Folkes*, No. 18-CR-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) (collecting cases). Also, though the Court appreciates the challenges faced by inmates incarcerated during the pandemic as a result of lockdowns and other harsh restrictions designed to prevent the spread of the disease, *see Birkett*, -- F. Supp. 3d-- at *6, with the pandemic's abatement, this circumstance is also lessened.

Finally, the other reasons listed by Amuso—his age, the time he has served, and his rehabilitation—do not tip the balance toward finding that extraordinary and compelling circumstances exist. Though Amuso is advanced in age and has served 31 years in prison, these facts are a product of his life sentence, rather than extraordinary and compelling circumstances. *See United States v. Victor J. Orena*, 92-cr-00351 (EK), at *8 n. 7 (E.D.N.Y. Oct. 27, 2021) (noting, in denying

compassionate release for an elderly inmate and the former boss of another one of the five families of La Cosa Nostra: "Judge Weinstein surely understood that a life sentence would likely result in Orena's incarceration even as an elderly and infirm inmate, and he would not have imposed the sentence lightly, given that understanding.").

The government questions whether Amuso is rehabilitated based upon trial testimony in 2019 by a witness and former Luchese Crime Family soldier, who stated that Amuso had orchestrated a leadership change in the organization from prison in 2017. Amuso vigorously denies this assertion and points out that the BOP has noted that he is a minimal recidivist risk, *see* Def.'s Mot. for Sentence Reduction, Ex. 6 ("Recidivism Risk Assessment"), that he has a flawless incident report, and that with the support of his family, as evidenced by their numerous letters of support, he poses no risk of slipping back into a life of crime.

Although it is commendable that Amuso has remained incident free over the course of his incarceration, even if the Court assumes that Amuso has not participated in the affairs of the Luchese Family during his imprisonment, it is simply insufficient to find that extraordinary and compelling circumstances exist given that the other factors Amuso offers fail to meet this bar. *See Brooker*, 976 F.3d at 238 (rehabilitation may be considered with other factors in determining

whether extraordinary and compelling circumstances exist, though it cannot alone suffice).

   b. **Section 3553(a) Factors**

Had the Court found that extraordinary and compelling reasons to reduce Amuso's sentence existed, it could not find that a reduced sentence is justified by the § 3553(a) factors. This conclusion aligns with the Court's decision to deny compassionate release for Amuso's close confidant, Casso, on the basis that "the section 3553(a) factors do not justify early termination of his life sentence." *United States v. Anthony Casso*, 90-cr-00446 (FB) (E.D.N.Y. Nov. 28, 2020). The offense conduct in Amuso's case, as with the defendant's in *Orena*, gives rise to a scenario in which a reduced sentence would not be appropriate. "Following the adoption of the First Step Act, a strain of cases . . . has emerged in which the offenders' criminal history is so long, and their victims so numerous, that even serious health conditions do not suffice to merit relief. This case falls squarely in that category." *Orena*, 92-cr-00351 (EK), at *5.

The § 3553(a) factors require the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and adequately deters criminal conduct. An analysis of Amuso's offense conduct in light of these factors militates against reducing his sentence. His reign of the Luchese Family was replete with bloodshed. At Amuso's command, more than a

dozen individuals were ordered to be killed, and nine were actually slain—for the purpose of maintaining power over a criminal enterprise—all while amassing illicit wealth at the expense of New York City and its surrounding areas, including its legitimate business owners, taxpayers, and members of industries and unions corrupted by its influence.

In *United States v. Sessa*, Judge Weinstein poignantly explained the plethora of negative effects that the operation of the La Cosa Nostra crime families had on New York and its residents during the time period in which Amuso was the Luchese boss:

> The drain on the city's human and economic resources caused by this criminal activity has been a major factor in the deterioration of our social, political and economic infrastructure . . . The direct and indirect costs of these gangs to the honest people of the metropolitan area are measured in the billions of dollars. Whole industries have been poisoned and adversely affected. Waterfront activities and traffic by ships, aircraft and trucks, building trades, garment trades, convention and theatrical facilities, restaurants and even politics are among the innumerable areas where these malefactors have operated . . .The direct costs to taxpayers of police surveillance and prosecutions run into the millions.

821 F. Supp. 870, 874 (E.D.N.Y. 1993). Given the depth and breadth of Amuso's role in the Luchese Family, and the harm exacted on both individuals and the community, the Court cannot in good conscience reduce his sentence. His conduct was simply too serious, too disrespectful of the law, and too destructive to the fabric of society to warrant anything other than a life sentence.

11

## CONCLUSION

For the foregoing reasons, the defendant's motion for compassionate release is DENIED.

**SO ORDERED.**

    /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 10, 2023