UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
UNITED STATES OF AMERICA,

     -against-

VITTORIO AMUSO,

               Defendant.
--------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 90-cr-00446

*Appearances:*
*For the United States*:
BREON PEACE
United States Attorney
Eastern District of New York
By: ELIAS LARIS
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

*For the Defendant*:
ANTHONY DIPIETRO
Law Office of Anthony DiPietr
15 Chester Avenue
White Plains, NY 10601

JAMES R. FROCCARO
20 Vanderventer Avenue
Suite 103W
Port Washington, NY 11050

**BLOCK, Senior District Judge:**

Vittorio Amuso ("Amuso") was the boss of the Luchese Crime Family, one

of the five families comprising the notorious La Cosa Nostra in New York City, from

1986 until his arrest in 1991.[1] The Luchese Crime Family was a violent organization

whose purpose was to amass illicit wealth at the expense of business owners, union

---

[1] The government alleges that Amuso continues to run the Luchese Family from
prison; he contests this allegation.

1

**A. 1**

members, and U.S. taxpayers. Under Amuso's direction, the organization enjoyed a particularly bloody reputation. Along with his underboss, Anthony "Gaspipe" Casso ("Casso"), Amuso was responsible for ordering numerous murders, which account for a significant portion of his 54 convictions.

Now, after 31 years in prison, Amuso asks the Court to convert his life sentence to one of time served. For the reasons that follow, the Court declines to do so.

## I.    BACKGROUND

Amuso became a member of the Luchese Family in 1978. He was named its boss in 1986. Under Amuso's leadership were approximately 120 made men and as many as 1,000 associates, all of whom carried out his bidding. Among the Family's numerous income-generating pursuits were loansharking, narcotics distribution, gambling, extortion, and the collection of kickbacks from corrupt union officials. One of the Family's rackets resulted in the collection of approximately $1,000,000 in kickbacks over two years from window manufacturers, who in turn inflated estimates for planned work for the New York City Housing Authority. Amuso himself shared 75% of the proceeds from this racket with Casso.

Murder was a tool in Amuso's arsenal, and one he used regularly in order to advance his business pursuits and ensure that he retained absolute power in the Family. As boss, Amuso ordered the murder of over a dozen individuals, nine of

**A. 2**

whom ultimately were killed. He ordered the slaying of individuals that he believed were informants, those he perceived as threats to his power, and those who refused to fully cooperate with his orders. Many of these individuals were shot at point blank range and in public spaces. One was bludgeoned to death in a bagel shop before being shot in the head. One survived his attempted execution only by driving himself to a medical facility after having been shot in the neck and shoulder. Another survived because the gun that was held up to his head misfired. One soldier for the Family who was suspected of being an informant was lured to an auto-body shop to be executed. He tried to escape when he realized what was happening but was dragged back inside where he was stabbed and shot to death. His killers placed a dead canary in his mouth as a warning sign to potential informants. An associate who was killed in the lobby of his apartment building by a shot to the head was also shot in the groin because Amuso had heard a rumor that the man was bisexual. Another man was paralyzed after being shot 12 times at a gas station because Amuso feared that he might testify against him. That man's father was also intimidated for the same reason.

After learning of an impending indictment from corrupt law enforcement officers, Amuso became a fugitive of justice in May 1990. He was arrested in Scranton, Pennsylvania on July 28, 1991. After a trial spanning more than a month, on June 15, 1992 a jury convicted Amuso of all 54 counts of a superseding

**A. 3**

indictment. His convictions include six counts of murder in-aid-of racketeering, nine counts of conspiracy or attempt to commit murder in-aid-of racketeering, 34 counts of bribing labor officials, one count of conspiracy to bribe labor officials, conspiracy to commit extortion, conspiracy to evade income taxes, racketeering, and racketeering conspiracy. In October 1992, the Court sentenced Amuso to life in prison plus five years of supervised release. It also imposed a fine of $250,000 and an assessment of $2,700. Amuso appealed his conviction but was unsuccessful. *United States v. Amuso*, 21 F. 3d 1251 (2d Cir. 1994).

Now 88 years old, Amuso suffers from a litany of age-related health conditions. The most debilitating is severe osteoarthritis of the hips, which causes him extreme pain and has rendered him wheelchair-bound for ambulating long distances. He asks the Court to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A) for this reason, and because he believes that he no longer poses a danger to the public.

## II.    COMPASSIONATE RELEASE

The Court has explained in detail in its *Birkett* and *Russo* decisions the standard governing motions brought under 18 U.S.C. § 3582(c)(1)(A)(i). --F. Supp. 3d--, 2023 WL 4274683, at *2 (E.D.N.Y. June 29, 2023); --F. Supp. 3d --, at *1-2 (E.D.N.Y. Nov. 28, 2022). The analysis requires three steps. First, the Court must

4

**A. 4**

determine whether a defendant has met his or her administrative burden. There is no dispute that Amuso has exhausted this requirement.[2]

Next, the Court must determine if "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[3] The Court has broad discretion to determine whether such reasons exist. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The one limitation in this analysis is that rehabilitation alone may not serve as an extraordinary and compelling circumstance.[4] *Id*. at 238; 28 U.S.C. § 994(t); U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 n.3 (U.S. Sent'g Comm'n 2006). However, it may be considered in combination with other factors. Aside from this guardrail, "what constitutes extraordinary and compelling

---

[2] Amuso applied to the warden of his facility for compassionate release on January 4, 2023. *See* Def.'s Mot. for Sentence Reduction, Ex. 2 ("Request for Compassionate Release"). His request was denied on March 14, 2023. *See id*. at Ex. 3 ("Warden's Denial Letter").

[3] Amuso also requests relief under 18 U.S.C. § 3582(c)(1)(A)(ii). Under this section, the Court may proceed to consideration of the § 3553(a) factors if the defendant is at least 70 years old, has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c)—the so-called Three Strikes Statue—and the Director of the Bureau of Prisons has determined that he or she no longer poses a danger to any person or the community. 18 U.S.C. § 3582(c)(1)(A)(ii). However, Amuso was not sentenced under § 3559(c), but rather under the Sentencing Guidelines. Therefore, relief under this section is not available to him.

[4] The Sentencing Commission published proposed amendments to the Sentencing Guidelines in April 2023 that would confirm that rehabilitation alone cannot suffice as an extraordinary and compelling reason, though it may be considered alongside other factors. *See* U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines (Preliminary)* (April 5, 2023). The proposed amendments will become effective on November 1, 2023.

**A. 5**

reasons warranting a reduction is committed to the sound discretion of the district court." *United States v. Roney*, 833 Fed. App'x 850, 852 (2d Cir. 2020) (summary order) (citing *Brooker*, 976 F.3d at 236).

If the Court determines that extraordinary and compelling reasons exist, it then turns to a weighing of the sentencing factors to determine whether a reduced sentence is justified. These factors are: (i) the nature and circumstances of the offense; (ii) the history and characteristics of the defendant; (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (iv) the need to adequately deter criminal conduct; (v) the need to protect the public from the defendant; (vi) the need to provide the defendant with necessary rehabilitation; and (vii) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

## III. ANALYSIS

Amuso presents the following reasons to justify the Court's reconsideration of his sentence: his medical conditions, his advanced age, the length of time he has served, and his rehabilitation. However, Amuso fails to establish that this combination of circumstances meets the threshold of extraordinary and compelling. For reasons discussed below, a balancing of the § 3553(a) factors would not justify his release either.

**A. 6**

### a. Extraordinary and Compelling Circumstances

Amuso suffers from several chronic medical conditions: nuclear sclerosis, hypertension, hyperlipidemia, coronary atherosclerosis, cardiac arrhythmia, anemia, an eyelid disorder, a conjunctiva disorder, teeth loss, hematuria, benign hypertrophy of the prostate, enthesopathy, hearing loss, osteoarthritis of the knees, and severe osteoarthritis of the hips. *See* Def.'s Mot. for Sentence Reduction, Ex. 8 ("Bureau of Prisons Health Services Inmate Intra-System Transfer"). His arthritis of the hips in particular causes him severe pain and he requires a wheelchair to move around his facility. He also requires assistance from other inmates or Bureau of Prisons ("BOP") staff to pick up his food trays and make his bed. BOP staff have noted that Amuso's condition and affect have declined in recent months and he was recently designated a "Care 3" inmate due to his increased need for regular medical care.

The Court acknowledges that Amuso, like many elderly inmates, faces particular difficulties while incarcerated. Still, as it stands, Amuso's medical records reflect that the BOP is managing Amuso's medical conditions adequately by providing him with medications, x-rays, and medical appointments upon his request. *See* Def.'s Mot. for Sentence Reduction, Exs. 8-12. Although he complains of deterioration of his medical state, he has not received a terminal diagnosis, nor has he endured any prolonged hospital stays. *See, e.g., United States*

7

**A. 7**

*v. Rodriguez*, No. 22-93, 2023 WL 3001238, at *2 (2d Cir. Apr. 19, 2023) (affirming a lower court's decision to deny compassionate release for a defendant with numerous serious medical conditions because he had no recent prolonged hospital stays nor a terminal diagnosis and was receiving adequate care from the BOP).

Further, Amuso cites the risk of COVID-19 to his health as an elderly inmate. However, Amuso has twice contracted and recovered from COVID-19, and he is now vaccinated against the virus. Courts typically deny compassionate release to vaccinated defendants on this basis. *See, e.g., United States v. Folkes*, No. 18-CR-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) (collecting cases). Also, though the Court appreciates the challenges faced by inmates incarcerated during the pandemic as a result of lockdowns and other harsh restrictions designed to prevent the spread of the disease, *see Birkett*, -- F. Supp. 3d-- at *6, with the pandemic's abatement, this circumstance is also lessened.

Finally, the other reasons listed by Amuso—his age, the time he has served, and his rehabilitation—do not tip the balance toward finding that extraordinary and compelling circumstances exist. Though Amuso is advanced in age and has served 31 years in prison, these facts are a product of his life sentence, rather than extraordinary and compelling circumstances. *See United States v. Victor J. Orena*, 92-cr-00351 (EK), at *8 n. 7 (E.D.N.Y. Oct. 27, 2021) (noting, in denying

8

**A. 8**

compassionate release for an elderly inmate and the former boss of another one of the five families of La Cosa Nostra: "Judge Weinstein surely understood that a life sentence would likely result in Orena's incarceration even as an elderly and infirm inmate, and he would not have imposed the sentence lightly, given that understanding.").

The government questions whether Amuso is rehabilitated based upon trial testimony in 2019 by a witness and former Luchese Crime Family soldier, who stated that Amuso had orchestrated a leadership change in the organization from prison in 2017. Amuso vigorously denies this assertion and points out that the BOP has noted that he is a minimal recidivist risk, *see* Def.'s Mot. for Sentence Reduction, Ex. 6 ("Recidivism Risk Assessment"), that he has a flawless incident report, and that with the support of his family, as evidenced by their numerous letters of support, he poses no risk of slipping back into a life of crime.

Although it is commendable that Amuso has remained incident free over the course of his incarceration, even if the Court assumes that Amuso has not participated in the affairs of the Luchese Family during his imprisonment, it is simply insufficient to find that extraordinary and compelling circumstances exist given that the other factors Amuso offers fail to meet this bar. *See Brooker*, 976 F.3d at 238 (rehabilitation may be considered with other factors in determining

9

**A. 9**

whether extraordinary and compelling circumstances exist, though it cannot alone suffice).

### b. Section 3553(a) Factors

Had the Court found that extraordinary and compelling reasons to reduce Amuso's sentence existed, it could not find that a reduced sentence is justified by the § 3553(a) factors. This conclusion aligns with the Court's decision to deny compassionate release for Amuso's close confidant, Casso, on the basis that "the section 3553(a) factors do not justify early termination of his life sentence." *United States v. Anthony Casso*, 90-cr-00446 (FB) (E.D.N.Y. Nov. 28, 2020). The offense conduct in Amuso's case, as with the defendant's in *Orena*, gives rise to a scenario in which a reduced sentence would not be appropriate. "Following the adoption of the First Step Act, a strain of cases . . . has emerged in which the offenders' criminal history is so long, and their victims so numerous, that even serious health conditions do not suffice to merit relief. This case falls squarely in that category." *Orena*, 92-cr-00351 (EK), at *5.

The § 3553(a) factors require the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and adequately deters criminal conduct. An analysis of Amuso's offense conduct in light of these factors militates against reducing his sentence. His reign of the Luchese Family was replete with bloodshed. At Amuso's command, more than a

10

**A. 10**

dozen individuals were ordered to be killed, and nine were actually slain—for the purpose of maintaining power over a criminal enterprise—all while amassing illicit wealth at the expense of New York City and its surrounding areas, including its legitimate business owners, taxpayers, and members of industries and unions corrupted by its influence.

In *United States v. Sessa*, Judge Weinstein poignantly explained the plethora of negative effects that the operation of the La Cosa Nostra crime families had on New York and its residents during the time period in which Amuso was the Luchese boss:

> The drain on the city's human and economic resources caused by this criminal activity has been a major factor in the deterioration of our social, political and economic infrastructure . . . The direct and indirect costs of these gangs to the honest people of the metropolitan area are measured in the billions of dollars. Whole industries have been poisoned and adversely affected. Waterfront activities and traffic by ships, aircraft and trucks, building trades, garment trades, convention and theatrical facilities, restaurants and even politics are among the innumerable areas where these malefactors have operated . . .The direct costs to taxpayers of police surveillance and prosecutions run into the millions.

821 F. Supp. 870, 874 (E.D.N.Y. 1993). Given the depth and breadth of Amuso's role in the Luchese Family, and the harm exacted on both individuals and the community, the Court cannot in good conscience reduce his sentence. His conduct was simply too serious, too disrespectful of the law, and too destructive to the fabric of society to warrant anything other than a life sentence.

**A. 11**

## CONCLUSION

For the foregoing reasons, the defendant's motion for compassionate release is DENIED.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 10, 2023

**A. 12**

Application for Compassionate Release (Vittorio Amuso (38740-079))

---

From:  Anthony DiPietro (dipietrolaw@yahoo.com)

To:    bux-execcassistant-s@bop.gov

Cc:    mjmesq@aol.com

Date:  Monday, April 14, 2025 at 07:58 AM EDT

---

Good morning:

Please find attached an application for compassionate release on behalf of our client, Vittorio Amuso (38740-079). It is kindly requested that this application be forwarded to Warden Leu for consideration and decision. We will also mail a hard copy to the Office of the Warden.

Please confirm receipt of the attached application. Your time and assistance are appreciated.

Thank you.

Anthony DiPietro, Esq.
15 Chester Avenue
White Plains, NY 10601
Tel: (914)-948-3242
Fax: (914)-948-5372
www.anthonydipietro.com

Attorney-Client Communication: This email contains legally privileged and confidential information intended only for the individual or entity named in the message. If you received this communication in error, please notify us by replying to this email and deleting the original message.

 Amuso, RIS Request (Filed on 4.14.25).pdf
245.7kB

**A. 13**

THE LAW OFFICES OF
# ANTHONY DIPIETRO, P.C.

15 CHESTER AVENUE
WHITE PLAINS, NY 10601

(914) 948 3242
(914) 948 5372 FAX
DIPIETROLAW@YAHOO.COM

April 14, 2025

**By Mail/Email**
Warden David Leu
FCI Butner Medium II
P.O. Box 1500
Butner, NC 27509
BUX-ExecAssistant-S@bop.gov

> Re:    *Request for Compassionate Release*
>        Vittorio Amuso, Reg. No. 38740-079

Dear Warden Leu:

We respectfully submit this letter for our client, Vittorio Amuso, Reg. No. 38740-079, requesting his immediate compassionate release ("reduction in sentence") under 18 U.S.C. § 3582(c)(1)(A) and Sections 3(b) ("Debilitated Medical Condition"), 4(a) ("New Law Elderly Inmates"), 4(b) ("Elderly Inmates with Medical Conditions"), and 4(c) ("Other Elderly Inmates") of the Federal Bureau of Prisons ("BOP") Policy Statement ("PS") 5050.50. Collectively, Mr. Amuso's advanced age, combined with his poor and deteriorating health, qualify as an extraordinary and compelling reason to warrant compassionate release under both 18 U.S.C. § 3582(c)(1)(A) and BOP PS 5050.50. In addition, Mr. Amuso has served more than 30-plus consecutive years of imprisonment without incident, and his early release presents no danger to the community.

As of this writing, there is no valid reason for the continued imprisonment of Mr. Amuso. He is 90 years old, medically infirm, and virtually confined to a wheelchair. He is legally deaf and blind, unable to provide self-care, and suffering from a variety of serious medical ailments. Mr. Amuso has also suffered an unexplained and significant amount of weight loss in the past year (30-plus lbs.), which is almost 20% of his body weight. The continued imprisonment of Mr. Amuso under such circumstances is a violation of fundamental human rights, moral decency, and the very purpose of the First Step Act (FSA), which was enacted to provide the early release of elderly and sick prisoners. Simply put, there is no justifiable reason for a sick 90-year-old prisoner like Mr. Amuso to suffer and die in an American prison when the laws of this great nation compel the BOP—through the Office of the Warden—to grant such a prisoner compassionate release.

Considered alone, Mr. Amuso's advanced age qualifies as a compelling reason for early release under the attendant circumstances, as outlined in U.S.S.G. 1B1.13(b)(2). This is so because Mr. Amuso is over the age of 65, he is experiencing a severe deterioration in physical health due to the aging process, and he has served at least 10 years of imprisonment. "According to the Sentencing Commission's policy statement on compassionate release, the 'Age of the Defendant' qualifies as an extraordinary and compelling reason to support a

**A. 14**

sentence reduction if the 'defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.'" *United States v. Trucchio*, No. 8:04-cr-348-CEH-TGW, 2024 U.S. Dist. LEXIS 212632, at *19-20 (M.D. Fla. Nov. 22, 2024) (*citing* U.S.S.G. 1B1.13(b)(2)).

Regarding Mr. Amuso's declining health, it is undeniable that a prison setting is no longer appropriate. Both the aging process and the progression of disease have taken a toll on Mr. Amuso's well-being, rendering his quality of life negligible. Moreover, Mr. Amuso's age, fragility, and medical decline place him at a heightened risk within a prison setting, especially given that a prison is not designed to address elderly needs (*i.e.,* end-of-life care and safety protocols that are needed for elderly and sick persons).

There are also no conventional treatments to improve Mr. Amuso's medical condition. Indeed, as outlined by medical records cited in Mr. Amuso's prior application for compassionate release, he continues to experience a significant medical decline, and he is in constant medical distress that requires specialized attention. *See, e.g.,* Administrative Note dated 03/04/2024 and 03/05/2024 (Mr. Amuso has suffered "30lb weight los[s] over the past year" and is "unable to do much…due to his age, and he's in [ ] severe pain constantly.); Administrative Note dated 3/06/2024 (reporting that Mr. Amuso is "89 yo in [a] wheelchair with chronic, severe pain…."); Administrative Note dated 3/14/2024 (reporting that Mr. Amuso suffers from "visually significant cataract OS…."); Administrative Note dated 5/15/2024 (reporting that Mr. Amuso is "89 y/o w/ hx. of bilateral knee osteoarthritis….pain keeps him up at night. Reports using a walker sometimes in his cell for short distances/transfers. Otherwise, he uses his wheelchair.").

In the past decade, Mr. Amuso has suffered from a series of ailments that have required outside medical intervention, including benign prostatic hyperplasia (BPH), benign paroxysmal positional vertigo, and basal cell cancer (which appears to have resurfaced recently, and further testing is awaited). It is also well documented that Mr. Amuso has long had vision impairment, hearing loss, nuclear sclerosis, hypertension, coronary atheros, benign hypertrophy of the prostate, anemia, hyperlipidemia, disorder of the eyelid, unspecified disorder of conjunctiva, cardiac arrhythmia, complete loss of teeth, osteoarthritis of the hips and knees, enthesopathy, advanced joint space narrowing w/subchondral sclerosis, and aematuria. Mr. Amuso has also been challenged with recurring episodes of dizziness, loss of sleep, body aches, tenderness, swelling, and severe hip and leg pain. In this regard, Mr. Amuso continues to suffer significantly due to the "severe" degenerative joint space narrowing of his right and left hip and arthritis of both hips. No course of medication (including cortisone injections) has provided him with long-term pain relief.

Recently, Mr. Amuso's pain, along with impaired vision and loss of hearing, have only worsened, and he is no longer able to provide self-care without other inmate assistance. Indeed, it is well reported that Mr. Amuso predominately uses a wheelchair, and he can no longer navigate the prison without the aid of others. Alarmingly, it has been recently documented that due to Mr. Amuso's immobility and underlying ailments (including severe osteoarthritis of the hips and knees), he also requires the assistance of other inmates to perform basic daily tasks, including getting dressed and undressed. In this regard, the BOP can no longer ignore the serious predicament presented here—*i.e.,* that Mr. Amuso is in

A. 15

severe medical decline as a 90-year-old aging person who is currently unable to perform the most basic daily tasks without aid from another inmate, such as his inability of independently getting dressed in the morning because he can no longer bend his knees or stand solidly on his two feet.

Furthermore, since 2009, the BOP has designated Mr. Amuso a chronic care prisoner. Notably, as of 2024, the BOP further assigned Mr. Amuso as a "CARE 3" inmate, and it has self-described his condition in underlying medical records as being both "**unstable**" and requiring "**complex chronic care**." The BOP's **admissions** as to Mr. Amuso's medical decline and his need for a heightened level of care alone dictate the need for his immediate compassionate release. In this regard, it cannot be overstated that Mr. Amuso's current medical circumstance is severe and that human decency dictates that the BOP release Mr. Amuso to his family so that he may receive proper end-of-life care in a dignified manner. *See United States v. Rogers*, No. 5:12-cr-29-Oc-28PRL, 2020 U.S. Dist. LEXIS 144002, at *6 (M.D. Fla. Aug. 11, 2020) (quoting Jalila Jefferson-Bullock, Consensus, Compassion, and Compromise? The First Step Act and Aging Out of Crime, 2019 WL 7766107, at *70, Federal Sentencing Reporter, Vol. 32, No. 2, December 2019) ("Its moral rationale demands that dying prisoners be deemed worthy of a dignified death, indispensable to the fabric of their families as sole caregivers, and/or worthy of experiencing their final living days unconfined by prison walls."); *United States v. Bari*, No. 17-CR-681 (VEC), 2024 U.S. Dist. LEXIS 8462, at *3-4 (S.D.N.Y. Jan. 16, 2024) ("Compassionate release recognizes that no criminal defendant is only the worst thing he has done in his life. Compassionate release recognizes that some defendants, even those who have committed terrible crimes, should be allowed to die with dignity surrounded by loved ones.").

Overall, there can be no legitimate debate that Mr. Amuso qualifies for early release based on his advanced age and medical circumstances under 18 U.S.C. § 3582(c)(1)(A) and BOP PS 5050.50. It is well established that the BOP must recognize that extraordinary and compelling reasons for modification exist where, as here, "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" (U.S.S.G. § 1B1.13, cmt. n.1). *See also United States v. Caballero*, No. 13-cr-261 (PKC), 2024 U.S. Dist. LEXIS 114664, at *12 (S.D.N.Y. June 28, 2024) ("The significant deterioration of vision may constitute extraordinary and compelling reasons to grant an application for a sentence reduction."); *United States v. Beard*, No. 1:16-cr-285-SCJ-JKL, 2020 U.S. Dist. LEXIS 246841, at *2-3 (N.D. Ga. June 25, 2020) ("Rheumatoid arthritis is a chronic inflammatory disorder that can damage a wide variety of body systems, including the skin, eyes, lungs, heart, and blood vessels."); *United States v. McDuffie*, 451 F. Supp. 3d 281, 283 (S.D.N.Y. 2020); *United States v. Hansen*, 2020 U.S. Dist. LEXIS 61946, 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020) (collecting cases and granting release where defendant's medical records "overwhelmingly depict a body and mind besieged with mounting, serious afflictions").

In addition, the BOP must also recognize that Mr. Amuso's predicament presents an unacceptable risk of injury and vulnerability in a prison setting. Mr. Amuso's advanced age, along with his fragility, limited mobility (due to debilitative osteoporosis/rheumatoid arthritis), and loss of both hearing and vision, subjects him to a significant likelihood of

-3-

**A. 16**

injury and collectively renders a prison setting constitutionally unfit for his continued well-being. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to guarantee the safety of the inmates.").

Furthermore, even if the BOP were somehow to conclude that there is an absence of an extraordinary and compelling reason to satisfy § 3582(c)(1)(A)(i), it must nonetheless grant early release under § 3582(c)(1)(A)(ii) (and BOP PS 5050.50), because Mr. Amuso is over 70 years of age and has been incarcerated for at least thirty years with a perfect institutional record. In this regard, Mr. Amuso is presumptively entitled to early release under § 3582(c)(1)(A)(ii), which states that early release should be granted by the BOP when:

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, under a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g).

Here, Mr. Amuso (90) has been imprisoned for the past 30-plus years and has maintained a perfect BOP institutional record. There is no risk of recidivism, especially given Mr. Amuso's advanced age and medical ailments. *United States v. Piggott*, No. 94 Cr. 417, 2022 U.S. Dist. LEXIS 5293, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) (It is "impossible to deny" the "positive correlation between age and recidivism."); *United States v Williams*, No. 3:04-cr-95/MCR, 2020 WL 1751545, at *4 (N.D. Fla. Apr. 1, 2020) (given the defendant's "age, serious health problems, the substantial amount of time he has already served, and his exemplary prison record, factors which are now a part of his history and characteristics, the Court finds that the risk of him engaging in further criminal conduct is minimal and can be managed through home confinement and the terms of his supervised release...").

Furthermore, Mr. Amuso will reside with his children at their residence, and they will provide his end-of-life care. In this regard, Mr. Amuso has a satisfactory and verifiable release plan to ensure his successful transition back into the community, and the BOP can verify such a plan with his projected caretakers should such a step be necessary. Overall, Mr. Amuso's record of being a model prisoner for more than 30 years and his strong ties to his family demonstrate that his early release presents no current danger to the community. *See, e.g., United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) ("[Defendant's] strong family support…make recidivism unlikely."); *United States v. Osuna*, Case No. 02-CR-1327 (CPS), 2008 WL 1836943, at *2 (E.D.N.Y. April 22, 2008) (reducing defendant's sentence under 18 U.S.C. § 3582(c)(2) where "[d]efendant has maintained good conduct and has not been subject of disciplinary action during his entire period of incarceration"); *United States v. Kwok-Ching Yu*, 2020 U.S. Dist. LEXIS 220458, at *14 (S.D.N.Y. Nov. 23, 2020) (granting compassionate release and noting that "[the defendant's] clean disciplinary record for the last eight years, and the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community").

-4-

A. 17

Moreover, the BOP's granting of early release to Mr. Amuso under § 3582(c)(1)(A) is further counseled by the fact that early release has been provided to many other defendants nationwide under the FSA, including defendants of much younger age and of better health, who were convicted of similar offenses and initially sentenced to life imprisonment.[1] *See Trucchio*, No. 8:04-cr-348-CEH-TGW, 2024 U.S. Dist. LEXIS 212632, at *26 ("Given Trucchio's age (73), his numerous medical conditions, his deteriorating health, his rehabilitative efforts, his letters of support from BOP officials, and his good behavior in prison, the Court is persuaded that Trucchio does not pose a danger to any other person or the community."); *United States v. Russo*, No. 92-CR-351, 2022 U.S. Dist. LEXIS 199664 (E.D.N.Y. Nov. 2, 2022) ("Thus, due to the nature and circumstances of the offense, Russo's (70) release at this time, and his advanced age, is unlikely to pose a danger to the general public, satisfying the sentencing goal 'to protect the public from further crimes of the defendant.'"); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) (reducing life sentence of 54-year-old defendant); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 U.S. Dist. LEXIS 59955 (S.D.N.Y. Apr. 6, 2020) (reducing life sentence of 57-year-old defendant to time served); *United States v. Perez*, 02 Cr. 7 (JBA)(D. Conn., March 4, 2021) (granting compassionate release after defendant engaged in a murder for hire, directing two men to kill a rival to protect his drug operation); *United States v. Cox*, 89 Cr. 196 (GAF) (W.D.M.O. June 17, 2021) (granting compassionate release where defendant was the leader of the "Black Mafia," a drug-trafficking organization responsible for at least 17 murders); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) (reducing defendant's sentence of life to 30 years even though the defendant was convicted of leading a violent organization and torturing and murdering an informant); *United States v. Tidwell*, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (reducing life sentence to 25 years even though the defendant orchestrated multiple murders in furtherance of his leadership of a violent drug organization).

In sum, Mr. Amuso's advanced age, declining health, 30-plus years of imprisonment, and perfect institutional record collectively establish that compassionate release should be provided. There exists no legitimate penological reason for the BOP to continue the imprisonment of an elderly and sick inmate like Mr. Amuso under these circumstances. In addition, Mr. Amuso is entitled to early release because he is over 70 and has served more than 30 consecutive years of imprisonment without incident. Accordingly, we pray that the Office of the Warden will grant Mr. Amuso's instant application for compassionate release.

Respectfully submitted,

*Anthony DiPietro*

Anthony DiPietro, Esq.

Mathew J. Mari, Esq.
30 Wall Street, 8th Fl.
New York, NY 10005

---

[1] Mr. Amuso also maintains his innocence as to many of the offenses for which he was convicted at trial, for which he was falsely accused of having participated by unreliable informants, and offenses primarily committed at the sole behest of government cooperator Anthony Casso.

-5-

A. 18

April 5, 2026

Dear Honorable Judge Block,

We are writing this joint letter on behalf of our father, Vittorio Amuso.

As you are aware, we have each previously submitted letters in support of our father's prior motion for compassionate release and we hope Your Honor considers those letters and our continued heartfelt pleas in connection with this new application. Our father's return home remains the most important and pressing matter in all our lives and, even after all these years have passed, we continue to wait for his return home.

We also feel it is very important for Your Honor to know several things that have occurred since the last application for compassionate release was decided, including the reality of our father's continued and serious medical decline, as well as the fact that the Warden at FCI Butner, along with the Probation Department, had approved our father's compassionate release late last year but that approval was suddenly overridden by the General Counsel Office after months of our preparation for dad's release.

Specifically, in the beginning of June of 2025, Warden Leu of FCI Butner had notified our father that he had approved his attorney's request for compassionate release. On June 10th, 2025, a social worker of FCI Butner, Mr. Jones, contacted Victoria Amuso (youngest daughter) to discuss various matters upon our father's release, including his medical care, doctors, and living arrangements. A few weeks later, Parole Officer Stacks and another officer from the Probation Office (EDNY) visited our father's residence (where Victoria and Robert reside) to observe the premises and discuss his future living situation. Officer Stacks toured the house with Victoria, observing where our father would sleep, shower, as well as what we would be making handicapped accessible, as the other officer made conversation with Robert. Officer Stacks approved of the home and explained it will be perfect for Dad. He also explained that Dad would be monitored for some time and would have to check in at times with the probation office.

After months of no answers, but continuing to rearrange our

A. 19

home in preparation to care for Dad, our father received notice one week before this past Christmas, that the Warden's decision approving his compassionate release was overridden by the Office of General Counsel. Unfortunately, the Warden had also just retired and there was simply no recourse for dad to find out what had actually happened. Our family was again devastated, after being strung along for months believing that Dad would be released.

The past several years have been extraordinarily difficult for our family. Not only has our father been denied compassionate release, but we have also been subjected to cruel and distressing false reports and prank telephone calls claiming that he has passed away. Since his compassionate release motions became public, we have received multiple calls from individuals falsely purporting to be affiliated with the prison, informing us that our father had died. The first such incident occurred shortly after the denial of his initial motion, when Victoria received a late-night call from someone claiming to be a staff member at FCI Butner. Our father's attorney was unable to reach anyone at the facility until the following day to confirm that the report was false. These incidents have inflicted significant emotional distress on our family and have compounded the already profound hardship of our father's continued incarceration.

We have also been unable to maintain regular visits due to the distance to the facility where our father is incarcerated, compounded by the frequent lockdowns that repeatedly suspend visitation. On one occasion, our family traveled to surprise him with a visit, only to be turned away upon arrival because the prison was on lockdown and all visits had been canceled. It has been nothing short of heartbreaking and devastating to go years without seeing our father, and to live more than three decades without his presence in our daily lives.

Our father will be 92 this coming November; he is confined to a wheelchair 24/7. Losing mobility in his legs has led him to be confined to either his bed or wheelchair—causing many sores on his backside. His legs and knees have deteriorated to the point that it is impossible to even make it in and out of bed without the assistance of someone else. His knees are so swollen; all day, every day he must wear compression socks making it impossible to sleep in peace. Even sitting in a chair to read is an impossible, painful, daily task due to his glaucoma.

The BOP memo that Dad received claims his release poses "a danger to the community." Your Honor, he is only a danger to himself because he cannot walk, eat, or shower without

**A. 20**

assistance. If Your Honor could see him, you would surely understand.

Every week and month that passes, a new ailment arises. Dad recently had a bad case of the shingles, where the pain was so unbearable that he was unable to properly sleep and to a point that it affected his ability to eat. He also had another biopsy six months ago to get skin cancer removed on his chin; it has yet to be removed.

Communication via email and letters has become so difficult; he can no longer send hand-written letters due to the pain he endures. Your Honor, our father cannot do anything in the prison without someone's help. Since his eyesight has declined greatly, menial tasks such as eating, sleeping, and showering require assistance from another inmate.

Your Honor, please send our father home. Please let us care for him at home to live out whatever years he has left in dignity. He won't even leave the house if that is how you prefer it.

A prison is not properly equipped or staffed to provide the level of care an elderly person in our father's condition needs, nor the emotional support required at the end of life. It is difficult to understand how a facility known for its medical services can provide adequate care when doctors rarely see him. He is in pain every single day and is steadily fading.

Our father has been incarcerated for 35 years—since we were children. The prior Warden recognized the reality of his condition and graciously approved his release, acknowledging that his advanced age and circumstances warranted it.

We respectfully ask that you grant this request. Our family will be forever grateful for your mercy of allowing our father to come home.

With love and respect,

The Amuso Family

Victoria Amuso

Michele Vasti

Catherine DeBenedetto

Robert Amuso

A. 21

Re: [EXTERNAL] Vittorio Amuso 38740-079 (Early/Elderly Release)

From: Glancy, Jessica (BOP) (jglancy@bop.gov)

To: dipietrolaw@yahoo.com

Date: Wednesday, September 24, 2025 at 06:59 AM EDT

Good morning,

The application was approved at the institution level by the Warden. From there, it was sent to Central Office in DC for approval. I have not received any updates as of yet.

**J. Glancy, Case Manager**
**Alternate Deputy CMC**
**FCI II, Butner**
**P.O. Box 1500**
**Butner, NC 27509**
**(919)575-8000 ext. 7231**

**From:** Anthony DiPietro <dipietrolaw@yahoo.com>
**Sent:** Monday, September 22, 2025 7:48 AM
**To:** BUX-ExecAssistant-S (BOP) <BUX-ExecAssistant-S@bop.gov>; Glancy, Jessica (BOP) <jglancy@bop.gov>
**Subject:** [EXTERNAL] Vittorio Amuso 38740-079 (Early/Elderly Release)

Good morning,

Hope all is well. We write to respectfully request clarification regarding the status of Mr. Amuso's application for early/elderly release. We were recently informed that the Warden has advised Mr. Amuso that the Bureau has approved his application, and it has now been transmitted to the Court for consideration. However, upon review, the Court's docket does not reflect any such pending application.

Could you kindly confirm the current posture of Mr. Amuso's application and whether it has, in fact, been submitted to the Court? This clarification would be greatly appreciated so that we may accurately advise Mr. Amuso on the next steps.

Thank you for your time and assistance.

Anthony DiPietro, Esq.
15 Chester Avenue
White Plains, NY 10601
Tel: (914)-948-3242
Fax: (914)-948-5372
www.anthonydipietro.com

Attorney-Client Communication: This email contains legally privileged and confidential information intended only for the individual or entity named in the message. If you received this communication in error, please notify us by replying to this email and deleting the original message.

**A. 22**



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

*Office of the General Counsel*                    *Washington, DC 20534*

MEMORANDUM FOR D. LEU, ACTING COMPLEX WARDEN
                FEDERAL CORRECTIONAL COMPLEX
                BUTNER, NORTH CAROLINA

FROM:            Elisa Mason   **ELISA MASON**  Digitally signed by ELISA MASON Date: 2025.12.18 10:01:23 -05'00'
                 Assistant Director/General Counsel

SUBJECT:         AMUSO, Vittorio
                 Federal Register No. 38740-079
                 Request for Reduction in Sentence

Please be advised that Mr. Amuso's request for a reduction in sentence (RIS) pursuant to section 4(a) of Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.§§ 3582(c)(1)(A) and 4205(g)</u> ("'New Law' Elderly Inmates"), is denied. We have carefully reviewed the documentation accompanying this request and have consulted with the Assistant Director of the Correctional Programs Division.

Section 4(a) provides that an inmate sentenced for an offense that occurred on or after November 1, 1987, may be considered for a RIS once he is 70 years old or older and has served at least 30 years of his term of imprisonment. In addition, section 7 requires consideration of factors such as the nature and circumstances of the inmate's offense; his criminal history, including any supervised release violations; unresolved detainers; and whether release would minimize the severity of the offense or pose a danger to the safety of any other person or to the community.

Mr. Amuso is 91 years old and has served over 34 years of his life sentence, which was imposed for offenses committed after November 1, 1987. He therefore meets the criteria for a RIS under section 4(a). However, due to the serious nature and circumstances of Mr. Amuso's offenses, his release would minimize the severity of his offense and could pose a danger to the community. Accordingly, his RIS request is denied.

**A. 23**

Please provide Mr. Amuso a copy of this decision.

cc:    M. Starr, Regional Director, Mid-Atlantic Region

**A. 24**

Dear JudgeBlock,                                          Feb. 2026

My name is Cletis Warren. I am housed at FCI.I Butner, N.C. with Vittorio Amuso. We have been in the same cell for about 3yrs. and I have been his clinical helper because he is unable to get his pants or shoes on as well shaving and getting to and from medical appointments etc. He is unable to walk so assistance is needed all the time. It can be difficult at times because of the pain in his legs. He has to get shots for the pain which wear off about every 8 weeks and shots are every 6mths. So he he is awake at night in pain and when he sleeps its in his wheelchair. I'm not a doctor by any means but I this is something that his family should be doing for him with his need. He is in bad shape. The warden Lou asked me why Amuso hadn't been and wrote a letter to approve his compassionate release because of everthing wrong with Amuso. The man isn't going to be around much longer sir and how he has done over 30 yrs straight without a single incident, I will never know, I do know that this place will humble a man and force them to just keep to them-selves. or go crazy. If I had a request to be granted It would be for you to allow Amuso to go home a live the remainder of his life "which isn't much" with his family. Thank-You for your time.
                                                      Cletis Warren

A. 25

Dear Honorable J. Block,

I am writing you this in support of some one I've had the privilege to meet during this journey through life. I have met Mr. Amuso during the year of 2023, and have come to know him well, I do not need to know his case to know who this man is as the true person he is today. Sir time has never ceased to amaze me, you must first understand the law of nature, as well as Gods plan for each of us, however, I've looked to one of Jesus disciples Saul, known as Paul, he as us all changed. I only know the caregiving of his self and have seen him extend him self to people he can help, with kind words or advice to help guide them in a positive direction, all this was, and is being through all the pain he has and continually is feeling each day although he does his best trying to hide it so many of us won't worry about him. Allow me a moment to try to express just one of the condition he and every one here has to live with, the Unit we live in has no heat, or very little, I was told the institution is waiting for a part, that has been three weeks ago, and the weather keeps getting colder. I don't know how much punishment the court wants to inflect, but I can see this has changed and completely been rehabilitated. I would like to see him out his remaing life around his children and grand children. Thank you for your consideration Judge Block.

Sincerely

James I. Pridgen

**A. 26**

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

| | | |
|---|---|---|
| Inmate Name: AMUSO, VITTORIO | | Reg #: 38740-079 |
| Date of Birth: 11/04/1934 | Sex: M Race: WHITE | Facility: BTF |
| Encounter Date: 01/06/2026 10:40 | Provider: Gichuhi, Damaris (MOUD) | Unit: L01 |

**Reviewed Health Status:** Yes

Preventive Health Visit - Male encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT 1 Provider: Gichuhi, Damaris (MOUD) NP-C

Chief Complaint: Preventive Health Visit

Subjective: 91-year-old male seen today for preventive health visit.

Inmate with complaints of a rash that is spread across his right breast through his back that started about a week and a half ago. He reports itching and redness but denies stinging/tingling or burning pain. He reports he has been using cortisone cream without much relief. Also, with complaints of bilateral knee pain and stated he is unable to sleep with his legs stretched out. He states he was previously getting steroid injections but has not had any recently. He rates his pain as a 5/10 but states pain worsens at night. He denies, fever chills, or tingling/burning pain.

**Pain:** Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 01/06/2026 10:43 |
| Location: | Knee-bilateral |
| Quality of Pain: | Aching |
| Pain Scale: | 5 |
| Intervention: | none |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 1-5 Years |
| Duration: | 1-5 Years |
| Exacerbating Factors: | straightening |
| Relieving Factors: | bending knees |
| Reason Not Done: | |
| Comments: | |

**Allergies:**

| Allergy | Reaction | Comments |
|---|---|---|
| Sulfa Antibiotics | Unknown | |

Allergies list reviewed/updated for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors with the patient on 01/06/2026 10:40 by Gichuhi, Damaris (MOUD) NP-C

**ROS:**

**Breasts**

**General**

Yes: Skin Changes

**Integumentary**

A. 27

| Inmate Name: | AMUSO, VITTORIO | | | | Reg #: | 38740-079 |
|---|---|---|---|---|---|---|
| Date of Birth: | 11/04/1934 | Sex: | M    Race:  WHITE | | Facility: | BTF |
| Encounter Date: | 01/06/2026 10:40 | Provider: | Gichuhi, Damaris (MOUD) | Unit: | | L01 |

**Skin**

Yes: Rashes

**Preventive Health**

**Hypertension screening**

Yes: Blood pressure reviewed

**Colon Cancer**

No: Chronic ulcerative colitis or Crohn's disease, History of adenomas or colon cancer, Inflammatory bowel disease, Family history of colon cancer or adenomas, Fecal Occult Blood x 3 recommended per PHG, Colonoscopy recommended per PH guidelines

**Diabetes**

Yes: Hyperlipidemia, FBS or HgbA1C recommended per PHG

No: BMI Calculated, B/P greater than 135/80 (treated or untreated), Overweight (BMI of 27kg/m or greater)

**Aspirin for CVD Risk**

No: CVD Risk documented in comments

**Abdominal Aortic Aneurysm**

No: >65 yrs and history of smoking

**Hearing**

Yes: Occupational risk

**Substance Abuse**

No: Alcohol abuse history, Injection/non-injection drug use history, Tobacco abuse, Substance abuse referral PHG

**Lifestyle**

No: BMI > or equal 30

**Inf. Disease Screening**

Yes: HCV testing offered, Bloodborne path & immunization history reviewed, HIV screening offered, TB screening reviewed/completed
No: HBsAG indicated, Syphilis Antibody Cascading Reflex indicated

**Vision Screening**

No: Visual Acuity (Snellen) testing completed


**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 01/06/2026 | 10:47 BUX | 98.5 | 36.9 | | Gichuhi, Damaris (MOUD) NP-C |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 01/06/2026 | 10:47 BUX | 77 | | | Gichuhi, Damaris (MOUD) NP-C |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 01/06/2026 | 10:47 BUX | 14 | Gichuhi, Damaris (MOUD) NP-C |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 01/06/2026 | 10:47 BUX | 93/51 | Left Arm | Sitting | | Gichuhi, Damaris (MOUD) NP- |

**SaO2:**

Inmate Name:   AMUSO, VITTORIO                                                      Reg #:    38740-079
Date of Birth:   11/04/1934                          Sex:      M     Race:   WHITE      Facility:   BTF
Encounter Date: 01/06/2026 10:40                 Provider:   Gichuhi, Damaris (MOUD)  Unit:      L01

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 01/06/2026 | 10:47 BUX | 95 | | Gichuhi, Damaris (MOUD) NP-C |

**Height:**

| Date | Time | Inches | Cm | Provider |
|------|------|--------|----|----------|
| 01/06/2026 | 10:47 BUX | 66.0 | 167.6 | Gichuhi, Damaris (MOUD) NP-C |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|------|------|-----|----|---------------|----------|
| 01/06/2026 | 10:47 BUX | Unavail | 0.0 | | Gichuhi, Damaris (MOUD) NP-C |

### Comments

# colonoscopy not recommended based on patient's age

## ASSESSMENT:

Encounter for screening, Z139 - Current

Herpes zoster (shingles), B029 - Current

## PLAN:

**New Medication Orders:**

| Rx# | Medication | Order Date |
|-----|-----------|------------|
| | valACYclovir Tablet | 01/06/2026 10:40 |

    **Prescriber Order:**     1000 mg Orally  -  three times a day x 7 day(s)

    Indication:   Herpes zoster (shingles)

        Non-Formulary was created for this drug

| | | |
|-----|-----------|------------|
| | Acetaminophen 325 MG Tablet | 01/06/2026 10:40 |

    **Prescriber Order:**     2 tablets Orally  every 6 hours PRN x 180 day(s) -- Take 2 tablets (650 mg) every 6 hours as needed

    Indication:   Osteoarthritis of hip, unspecified, Osteoarthritis of knee, unspecified

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|----------|---------------|--------------------|
| Preventive Health Visit | 12/28/2026 00:00 | APP 03 |

    Last PHV 1/6/26

**Disposition:**

Follow-up at Sick Call as Needed

**Other:**

# Preventive Health Visit: 91-year-old male
- BMI: Unable to obtain weight
- TST positive 1992. Negative CXR.  Asymptomatic for TB
- Denies any known FMH of colon or prostate cancer and asymptomatic for both
- Colon cancer screening not indicated based on age
- ASCVD 10-year not calculated based on age
- LP WNL in 1/2025
- Denies any risky behaviors that would indicate repeat Hep B/C, HIV, and/or RPR screening

Herpes Zoster virus:
# High suspicion for shingle based on dermatome and appearance of the rash
# Inmate with a rash mixed of fluid filled rash and crusted blisters with some drainage noted.
# Will treat with antivirals

| | | | | |
|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex:    M    Race:   WHITE | Facility: | BTF |
| Encounter Date: | 01/06/2026 10:40 | Provider:   Gichuhi, Damaris (MOUD) | Unit: | L01 |

Bilateral Knee pain:
\# inmate states he was told he is not a surgical candidate
\# will order Tylenol for pain.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/06/2026 | Counseling | Plan of Care | Gichuhi, Damaris | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**   No

Completed by Gichuhi, Damaris (MOUD) NP-C on 01/06/2026 12:50

A. 30

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

---

Inmate Name:   AMUSO, VITTORIO                                                Reg #:   38740-079
Date of Birth:   11/04/1934                 Sex:       M     Race:   WHITE       Facility:   BTF
Encounter Date:   01/12/2026 10:35          Provider:   Rogers, Richard (MOUD-   Unit:   L01

---

**Reviewed Health Status:**   Yes

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT   **1**          Provider:   Rogers, Richard (MOUD-M) MD

Chief Complaint:   Chronic Care Clinic

Subjective:      AIC is a 91 yo male with PMHx significant for CAD s/p 2 vessel CABG, HTN, HLD, BPH, osteoarthritis and BCC of skin presenting to CCC

AIC denies cp/sob/f/c/n/v/d

AIC is able to perform all ADLs

AIC reports compliance with all medications

FMHx:
 Father:  deceased, MI       Mother:  deceased, cancer

SHx:
 Tobacco:  denies        Drugs:  denies        Etoh:  occasional

Allergies:  An allergy review was completed with patient for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors - sulfa antibiotics

**Pain:**          Not Applicable

---

**Allergies:**

| Allergy | Reaction | Comments |
|---|---|---|
| Sulfa Antibiotics | Unknown | |

Allergies list reviewed/updated for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors with the patient on 01/12/2026 10:35 by Rogers, Richard (MOUD-M) MD

**Seen for clinic(s):** Cardiac, Endocrine/Lipid, General, Hypertension, Orthopedic/Rheumatology

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 01/12/2026 | 10:35 BUX | 98.5 | 36.9 | | Rogers, Richard (MOUD-M) MD |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 01/12/2026 | 10:35 BUX | 93 | | | Rogers, Richard (MOUD-M) MD |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 01/12/2026 | 10:35 BUX | 15 | Rogers, Richard (MOUD-M) MD |

| Inmate Name: | AMUSO, VITTORIO | | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: | M | Race: WHITE | Facility: | BTF |
| Encounter Date: | 01/12/2026 10:35 | Provider: | Rogers, Richard (MOUD- | | Unit: | L01 |

| Date | Time | Rate Per Minute | Provider |
| --- | --- | --- | --- |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
| --- | --- | --- | --- | --- | --- | --- |
| 01/12/2026 | 10:35 BUX | 155/79 | | | | Rogers, Richard (MOUD-M) |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
| --- | --- | --- | --- | --- |
| 01/12/2026 | 10:35 BUX | 95 | | Rogers, Richard (MOUD-M) MD |

**Height:**

| Date | Time | Inches | Cm | Provider |
| --- | --- | --- | --- | --- |
| 01/12/2026 | 10:35 BUX | 66.0 | 167.6 | Rogers, Richard (MOUD-M) MD |

### ROS Comments

General: No fever, chills, fatigue, unexplained wt loss
Hair: No hair loss
Nails: No onychomycosis
Skin: Active shingles of torso
Head: No headaches
Ears: Decreased hearing, tinnitus, no earache, no drainage
Eyes: Glasses, no vision loss
Nose: No epistaxis
Mouth: No sores, no dry mouth
Neck: No pain, no stiffness
Throat: No cough, no sore throat, no difficulty swallowing
Heart: No chest pain, no palpitations
Lungs: No SOB, no pleural pain
GI: No nausea, vomiting, diarrhea, constipation, abdominal pain, heartburn
GU: No dysuria, difficulty with urination
MSK: Wheelchair for ambulation
Ext: Lower leg swelling b/l
Neuro: No numbness, tingling
Lymphatics: No LAD
Psych: No depression, SI/HI

### Exam Comments

General:  alert and oriented x 3, cooperative, NAD
HEENT:  N/A, pinpoint pupils, edentulous, TMs wnl
Lymphatic:  no LAD
Neck:  supple
Heart:  RRR, NL S1/S2, no M/R/G
Lungs:  CTAB, unlabored breathing, no wheezes, rhonchi or crackles
Abdomen:  normoactive BS, soft/NT/ND, no palpable masses/hernias
Rectal:  deferred
MSK:  Unable to ambulate, uses wheelchair
Skin:  Shingles of right mid-torso bandaged C/D/I, warm/dry to touch
Ext:  RLE 2+ edema, LLE 1+ edema
Psych:  appropriate mood/affect
Neuro:  CN 2-12 grossly intact

## ASSESSMENT:

Cardiac arrhythmia, I499 - Current - *PVC's*

Herpes zoster (shingles), B029 - Current

Hyperlipidemia, unspecified, E785 - Current

Osteoarthritis of hip, unspecified, M169 - Current

A. 32

| | | | |
|---|---|---|---|
| Inmate Name: AMUSO, VITTORIO | | Reg #: 38740-079 | |
| Date of Birth: 11/04/1934 | Sex: M   Race: WHITE | Facility: BTF | |
| Encounter Date: 01/12/2026 10:35 | Provider: Rogers, Richard (MOUD- | Unit: L01 | |

Osteoarthritis of knee, unspecified, M179 - Current

BPH, Benign Hypertophy of Prostate, 600.00 - Current - *Stable on Flomax and Proscar*

Coronary atherosclerosis of unspec type of vessel, 414.00 - Current

Hypertension, Benign Essential, 401.1 - Current - *Continue current medications*

**PLAN:**

**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 2103677-BUX | Atorvastatin 20 MG TAB | 01/12/2026 10:35 |

    **Prescriber Order:** Take three tablets (60 MG) by mouth each day for control of cholesterol x 365 day(s)

    Indication:  Coronary atherosclerosis of unspec type of vessel, Hyperlipidemia, unspecified

| Rx# | Medication | Order Date |
|---|---|---|
| 2103682-BUX | Petrolatum External Ointment 42% 100 GM | 01/12/2026 10:35 |

    **Prescriber Order:** Apply topically to the affected area(s) each day AS NEEDED for dry skin PRN x 180 day(s)

    Indication:  Encounter for screening

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests-L-Lipid Profile<br>Lab Tests-C-CBC<br>Lab Tests-C-Comprehensive Metabolic Profile (CMP) | One Time | 01/19/2026 00:00 | Routine |

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Chronic Care Visit | 11/12/2026 00:00 | Physician 01 |

    CCC done 01/12/2026

**Disposition:**

    Follow-up at Sick Call as Needed
    Follow-up at Chronic Care Clinic as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/12/2026 | Counseling | Access to Care | Rogers, Richard | Verbalizes Understanding |

**Copay Required:** No    **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Rogers, Richard (MOUD-M) MD on 01/12/2026 11:02

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M | Race: WHITE | Facility: | BTF |
| Encounter Date: | 03/04/2024 11:51 | Provider: | Seidler, C. (MOUD) PA-C | Unit: | L01 |

Mid Level Provider - Preoperative Note encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT **1**          Provider:   Seidler, C. (MOUD) PA-C

Chief Complaint:   Pre-operative Eval

Subjective:       Pre-op H&P.  See document manager for forms.

An allergy review was completed with patient for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food, and environmental factors.

**Pain:**          Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 03/04/2024 11:52 |
| Location: | Leg-Upper bilateral |
| Quality of Pain: | Aching |
| Pain Scale: | 8 |
| Intervention: | n/a |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 1-5 Years |
| Duration: | 1-5 Years |
| Exacerbating Factors: | laying in bed |
| Relieving Factors: | tylenol |
| Reason Not Done: | |
| Comments: | |

**OBJECTIVE:**

**Exam Comments**

mild induration and erythema above coccyx/glutteal cleft, on left side, ttp, non-purulent, not fluctuant

**ASSESSMENT:**

Cellulitis, unspecified, L0390 - Resolved

Encounter for screening, Z139 - Current - ***Pre-op H&P***

Pressure ulcer of sacral region, L89159 - Resolved

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| | Cephalexin Capsule/Tablet | 03/04/2024 11:51 |
| | **Prescriber Order:**   500mg Orally  -four times a day x 7 day(s) | |

A. 34

| | | |
|---|---|---|
| Inmate Name: AMUSO, VITTORIO | | Reg #: 38740-079 |
| Date of Birth: 11/04/1934 | Sex: M  Race: WHITE | Facility: BTF |
| Encounter Date: 03/04/2024 11:51 | Provider: Seidler, C. (MOUD) PA-C | Unit: L01 |

## New Medication Orders:

| Rx# | Medication | Order Date |
|---|---|---|
| | Indication: Pressure ulcer of sacral region | |
| | Acetaminophen 325 MG Tablet | 03/04/2024 11:51 |
| | **Prescriber Order:**  2 tablets Orally  -  three times a day PRN x 180 day(s) | |
| | Indication: Osteoarthritis of knee, unspecified | |
| | Lidocaine Patch 5% | 03/04/2024 11:51 |
| | **Prescriber Order:**  1 patch Transdermally  -  daily x 180 day(s) | |
| | Indication: Osteoarthritis of hip, unspecified | |

## New Consultation Requests:

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Pharmacist | 05/31/2024 | 05/31/2024 | Routine | No | |

Subtype:

Pain Management Clinic

Reason for Request:

89 yo in wheel chair with chronic, severe pain, does not want narcotic pain meds, currently on 60mg of duloxetine, request consult to work towards better pain control

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Consultation | 03/04/2024 00:00 | Occupational Therapist 01 |

89 yo in wheel chair, having pain in his right elbow/arm from pushing himself up/over to use the bathroom or get out of his chair, request evaluation

| Consultation | 03/04/2024 00:00 | Dietitian |
|---|---|---|

89 yo with ~30lb weight lost over the past year, request nutritional evaluation

## Disposition:

Follow-up at Sick Call as Needed

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 03/04/2024 | Counseling | Plan of Care | Seidler, C. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Seidler, C. (MOUD) PA-C on 03/04/2024 12:05

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M Race: WHITE | | Facility: | BTF |
| Note Date: | 03/05/2024 15:01 | Provider: Ha, M. Pharm. D. | | Unit: | L01 |

Pharmacy Note - Chart Review-Other encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**        Provider:   Ha, M. Pharm. D.

Chronic Pain Management Clinic: Chart Review
PMH: HTN, Nuclear Sclerois, BPH, Anemia, Hyperlipidemia, cardiac arrythmia, osteoarthritis (hip,knee)
All: Sulfa antibiotic

Referred for following midlevel: 89 yo and has a lot of pain.  Ortho is unable to do much to him due to his age, and he's in pretty severe pain constantly.

Based on notes patient appears to report specifically R Knee and R Hip pain, though it occurs bilaterally.

IMAGING
7/26/2023
Bilateral tricompartmental osteoarthritis (advanced joint space narrowing L, suspected R)

11/20/2020
R Hip
Severe degenerative R Hip Joint Space narrowing. Associated relative mild to moderate osteoarthritic marginal osteophyte formation of the femoral head and subchondral sclerosis and cystic changes.

Other imaging has been reviewed. There is foraminal narrowing in the cervical spine and osteoarthritis.

Patient is currently on:
Acetaminophen 650 MG TID
Duloxetine 60mg QD
Lidocaine 5% Patch QD

3/4/2024 - BUN/Cr - 0.81/27
2/7/2024 - AST/ALT/ALKP - WNL

RECOMMENDATION

Patient's has osteoarthritic pain in multiple areas, an oral NSAID would be our first choice. To minimize side effects, we'll start with a selective NSAID - meloxicam 15mg daily is a good option. If that's not effective, we can try a non-selective NSAID like naproxen or ibuprofen, based on the patient's history and preferences.

If they end up needing NSAIDs long-term, adding a proton pump inhibitor is wise to protect their stomach.

If they want to avoid oral NSAIDs entirely, capsaicin 0.1% cream applied 4 times a day can be a good alternative, especially if heat helps their pain. We'll have them alternate that with lidocaine patches rather than using both at once.

**Copay Required:** No        **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Ha, M. Pharm. D. on 03/05/2024 16:32
Requested to be reviewed by Seidler, C. (MOUD) PA-C.

Generated 03/05/2024 16:32 by Ha, M. Pharm. D.        Bureau of Prisons - BUH        Page 1 of 2

A. 36

**Bureau of Prisons**
**Health Services**
**Clinical Encounter - Administrative Note**

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M    Race: WHITE | | Facility: | BTF |
| Note Date: | 03/06/2024 09:08 | Provider: Ha, M. Pharm. D. | | Unit: | L01 |

Pharmacy Note - Pain Management - Initial encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE    **1**        Provider:  Ha, M. Pharm. D.
        Adding to scheduler

Schedule:

| **Activity** | **Date Scheduled** | **Scheduled Provider** |
|---|---|---|
| Pain Management | 03/06/2024 00:00 | Pharmacist |

Seidler:
89 yo in wheel chair with chronic, severe pain, does not want narcotic pain meds, currently on 60mg of duloxetine, request consult to work towards better pain control

**Copay Required:** No            **Cosign Required:** No
**Telephone/Verbal Order:**    No

Completed by Ha, M. Pharm. D. on 03/06/2024 09:10

Requested to be reviewed by  Seidler, C. (MOUD) PA-C.

Review documentation will be displayed on the following page.

A. 37

# Bureau of Prisons
# Health Services
# Devices and Equipment

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 38 of 116 PageID #: 2357

| Start Date: | 02/01/2024 | Stop Date: | 06/27/2024 |
| --- | --- | --- | --- |
| Reg #: | 38740-079 | Inmate Name: | AMUSO, VITTORIO |

| Device/Equipment | | Start Date | Stop Date | Date Returned | Obtained From | Comments |
| --- | --- | --- | --- | --- | --- | --- |
| Cushion: foam/gel | | | | | | |
| 03/07/2024 09:32 EST | Nobles, T. DPT/OCS, SER Therapist | 03/07/2024 | | | BOP | w/c cushion due to very frail/thin with decreased coverage on sacrum |
| Walker | | | | | | |
| 12/12/2023 10:35 EST | Nobles, T. DPT/OCS, SER Therapist | 12/12/2023 | | | BOP | standard walker with 4-wheels for standing in room to give back a break |
| 12/12/2023 10:34 EST | Nobles, T. DPT/OCS, SER Therapist | 12/12/2023 | | | BOP | standard walker with 4-wheels |
| Wheelchair | | | | | | |
| 03/09/2023 10:46 EST | Nobles, T. DPT/OCS, SER Therapist | 03/06/2023 | | | BOP | WC1264 |
| 03/06/2023 10:04 EST | Firozvi, Amir M.D. | 03/06/2023 | | | BOP | |
| Cane | | | | | | |
| 03/11/2021 14:17 EST | Crites, Kristi CRNP | 03/11/2021 | | | BOP | |
| Eye Glasses | | | | | | |
| 07/31/2019 14:00 EST | Voorhees, Michele HIT | 07/31/2019 | | | BOP | |
| ~~Medical Shoes~~ | | | | | | |
| ~~05/17/2018 09:50 EST~~ | ~~Todd, C. RN~~ | ~~05/17/2018~~ | | | ~~BOP~~ | ~~size 7 1/2--mistaken entry~~ |
| 05/17/2018 09:49 EST | Todd, C. RN | 05/17/2018 | | | BOP | size 7 1/2 |
| ~~Alternate Institutional Shoes~~ | | | | | | |
| ~~05/17/2018 09:53 EST~~ | ~~Todd, C. RN~~ | ~~05/17/2018~~ | | | ~~BOP~~ | ~~size 7 1/2--mistaken entry~~ |
| 05/17/2018 09:50 EST | Todd, C. RN | 05/17/2018 | | | BOP | size 7 1/2 |
| Alternate Institutional Shoes | | | | | | |
| 01/17/2018 10:05 EST | Gera, Tom PA-C | 01/17/2018 | 01/17/2019 | | BOP | |
| Soft Shoes | | | | | | |
| 12/12/2014 13:43 EST | McGann, S. MD | 12/02/2007 | 02/01/2008 | | BOP | |
| 09/15/2008 10:09 EST | Slone, S. RN, AHSA | 12/02/2007 | 02/01/2008 | | BOP | |
| 12/02/2007 18:01 EST | Slone, S. RN, AHSA | 12/02/2007 | 12/02/2008 | | BOP | |
| ~~Crutches~~ | | | | | | |

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M    Race: WHITE | | Facility: | BTF |
| Note Date: | 03/14/2024 12:53 | Provider: Seidler, C. (MOUD) PA-C | | Unit: | L01 |

Review Note - Report Review encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE    **1**        Provider:   Seidler, C. (MOUD) PA-C

1. Pseudophakia
(1d ) postop (basic) IOL (no Lensx) right eye . Looks good
Continue moxi/pred/ketor tid until finished
Return in 2wks

2. Nuclear sclerotic cataract, left
-Patient with visually signficant cataract OS.
-Causing decrease in BCVa and limitation of following ADLs: Driving, Watching television, Seeing street signs, Reading, Performing fine tasks at near
-Glare limits night driving
-We discussed risks, benefits, and alternatives to cataract surgery. Also discussed femtosecond technology and advanced technology lenses to minimize postoperative dependence upon glasses.
-Patient elects to proceed with cataract surgery. Cataract removal is expected to improve vision and function.
-Will implant standard IOL, target plano.


DIAGNOSIS: Visually significant cataract that is primary cause for decrease in vision, Left Eye


ASSESSMENT:  1. Cataract is primary cause for decrease in vision.

2. The removal of the cataract will improve the patient's quality of life with reading, driving/riding, night-time driving, watching TV.

3. There are no co-existing ocular diagnoses affecting the patient's vision.


**New Consultation Requests:**

| **Consultation/Procedure** | **Target Date** | **Scheduled Target Date** | **Priority** | **Translator** | **Language** |
|---|---|---|---|---|---|
| Ophthalmology | 03/22/2024 | 03/22/2024 | Urgent | No | |

Subtype:
    Off-site Clinic
Reason for Request:
    AIC had cataract surgery with Dr. Li at NCEENT on 3/6/24 and post-op on 3/7/24, is supposed to follow up back in clinic 2 weeks from then.

**Copay Required:** No        **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Seidler, C. (MOUD) PA-C on 03/14/2024 12:55

**A. 39**

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

---

Inmate Name:   AMUSO, VITTORIO                                                    Reg #:   38740-079
Date of Birth:   11/04/1934              Sex:   M   Race:   WHITE              Facility:   BTF
Encounter Date:   05/15/2024 11:25       Provider:   McClure, B. NP-C          Unit:   L01

---

**Reviewed Health Status:**   Yes

Consultation - Follow up visit encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT  **1**          Provider:   McClure, B. NP-C

Chief Complaint:   ORTHOPEDIC/RHEUMATOLOGY

Subjective:          Consultation: "89 yo wm pmhx cad, s/p cabg, hld, htn, oa not surgical candidate may need steroid injections of knee

*** no show 3/19/24

89 y/o w/ hx. of bilateral knee osteoarthritis is in ortho clinic asking for repeat injection into his right knee. He says that he was thinking/hoping for an injection in February. He says he wants an injection today for knee pain. R>L. Pain keeps him up at night. Reports using a walker sometimes in his cell for short distances/transfers. Otherwise, he uses his wheelchair. Last injection was August 2023. Injection was helpful. Denies fever, chills, SOB, feeling malaise.

**Pain:**          Yes

**Pain Assessment**

Date:                    05/15/2024 11:30

Location:                Knee-Right

Quality of Pain:         Sharp

Pain Scale:              8

Intervention:            APAP

Trauma Date/Year:

Injury:

Mechanism:

Onset:                   5+ Years

Duration:                12-24 Hours

Exacerbating Factors:    WBA, lying down

Relieving Factors:       APAP, rubbing knee

Reason Not Done:

Comments:

---

**Allergies:**

| Allergy | Reaction | Comments |
|---|---|---|
| Sulfa Antibiotics | Unknown | |

Allergies list reviewed/updated for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors with the patient on 05/15/2024 11:25 by McClure, B. NP-C

**OBJECTIVE:**

**Exam Comments**

- Patient is pleasant and cooperative. Received in his wheelchair, transfers independently onto the exam table. RLL

A. 40

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

---

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M | Race: WHITE | Facility: | BTF |
| Encounter Date: | 08/08/2025 09:09 | Provider: | Russell, A. (MOUD-M) | Unit: | L01 |

---

**Reviewed Health Status:**   Yes

Advanced Practice Provider - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT  **1**          Provider:   Russell, A. (MOUD-M) FNP-BC

Chief Complaint:   Swelling

Subjective:   90 y/o male w/a PMH that includes CAD s/p 2 vessel CABG s/p MI, HTN, Dyslipidemia, BPH, and OA seen today d/t reporting bilateral lower extremity pain and swelling that started ~ 2 months ago.  Inmate stated "I didn't come down here because I thought it would get better but now it's 10/10 (R>L).

Reports that his R leg swelling is the worse and it started ~ 1 month ago and the pain starts at his anterior R knee and goes down to the plantar aspect of his right foot.  Reports that this leg has 10/10 pain that is constant and sharp.  Denies anything making pain better.

Reports his L leg swelling and pain started approximately 2 months ago and is not as bad (5/10 sharp pain w/ palpation), but continues to have constant pain.  Reports that pain on his LLE starts at his distal lower leg and goes down to the plant aspect of his left foot.

Denies any fever, chills, nausea, vomiting, dyspnea, chest pain.  Denies any hx of HF.

**Pain:**          Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 08/08/2025 07:43 |
| Location: | Leg-Lower bilateral |
| Quality of Pain: | Burning |
| Pain Scale: | 10 |
| Intervention: | none |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 3-5 Days |
| Duration: | <1 Minute |
| Exacerbating Factors: | none |
| Relieving Factors: | none |
| Reason Not Done: | |
| Comments: | |

---

**Allergies:**

| Allergy | Reaction | Comments |
|---|---|---|
| Sulfa Antibiotics | Unknown | |

Allergies list reviewed/updated for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors with the patient on 08/08/2025 09:09 by Russell, A. (MOUD-M) FNP-BC

Inmate Name:   AMUSO, VITTORIO                                                        Reg #:      38740-079
Date of Birth:   11/04/1934                        Sex:      M    Race:   WHITE        Facility:   BTF
Encounter Date:  08/08/2025 09:09                  Provider:  Russell, A. (MOUD-M)    Unit:       L01

## OBJECTIVE:

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|------|------|-----------|---------|----------|----------|
| 08/08/2025 | 09:09 BUX | 98.1 | 36.7 | Oral | Russell, A. (MOUD-M) FNP-BC |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|------|------|-----------------|----------|--------|----------|
| 08/08/2025 | 09:09 BUX | 79 | | | Russell, A. (MOUD-M) FNP-BC |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|------|------|-----------------|----------|
| 08/08/2025 | 09:09 BUX | 14 | Russell, A. (MOUD-M) FNP-BC |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 08/08/2025 | 09:09 BUX | 172/92 | Left Arm | Sitting | | Russell, A. (MOUD-M) FNP-BC |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 08/08/2025 | 09:09 BUX | 98 | Room Air | Russell, A. (MOUD-M) FNP-BC |

### Exam Comments

General: NAD. Calm and cooperative male.

HEENT: Normocephalic. EOMI. PERRLA. Oral and nasal mucosa pink and moist. Neck supple. No adenopathy. Conjunctiva non-injected.  Sclera white.

CV: RRR. S1 and S2. No murmur or gallop.

Resp: CTAB. No adventitious sounds. No respiratory distress.

Abd: Flat

Skin and Extremities:
- There is +3 edema present starting at the R anterior knee down the entire RLE down to the dorsal right foot.  Calf circumference of RLE is 38 cm.  There is no erythema, warmth, or dilated superficial veins.
- There is +2 edema present starting at the L distal lower leg  down to the L dorsal foot.  Calf circumference of L calf is 33cm.  There is no erythema, warmth, or dilated superficial veins.

MSK: Using bilateral UE to self propel self in wheelchair.  AFROM of bilateral UE and LE.  Bilateral hand grips muscle strength 5/5.  Bilateral UE and LE muscle strength 5/5.  Bilateral dorsi flexion and plantar flexion 5/5.

Neuro: A&O x 3. CN II-XII grossly intact. Motor and sensation grossly intact.

## ASSESSMENT:

Edema, 782.3 - Resolved

## PLAN:

**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|-----|-----------|------------|
| 2041053-BUX | Aspirin 81 MG EC Tab | 08/08/2025 09:09 |

**Prescriber Order:**   Take one tablet (81 MG) by mouth each day for heart x 365 day(s)

Inmate Name:    AMUSO, VITTORIO                                                              Reg #:    38740-079
Date of Birth:    11/04/1934                          Sex:    M    Race:  WHITE              Facility:  BTF
Encounter Date:  08/08/2025 09:09                     Provider:  Russell, A. (MOUD-M)        Unit:    L01

## Renew Medication Orders:

| Rx# | Medication | Order Date |
|---|---|---|
| | Indication:   Coronary atherosclerosis of unspec type of vessel | |
| 2056471-BUX | Petrolatum External Ointment 42% 100 GM | 08/08/2025 09:09 |
| | **Prescriber Order:**   Apply topically to the affected area(s) each day AS NEEDED dry skin PRN x 180 day(s) | |
| | Indication:   Encounter for screening | |
| 1991456-BUX | Tamsulosin HCl 0.4 MG Cap | 08/08/2025 09:09 |
| | **Prescriber Order:**   Take two capsules (0.8 MG) by mouth each day 30 minutes after same meal for prostate x 365 day(s) | |
| | Indication:   BPH, Benign Hypertophy of Prostate | |
| 1991453-BUX | Finasteride 5 MG TAB | 08/08/2025 09:09 |
| | **Prescriber Order:**   Take one tablet (5 MG) by mouth each day for prostate x 365 day(s) | |
| | Indication:   BPH, Benign Hypertophy of Prostate | |
| 1991454-BUX | Lisinopril 10 MG Tab | 08/08/2025 09:09 |
| | **Prescriber Order:**   Take one tablet (10 MG) by mouth each day to control blood pressure x 365 day(s) | |
| | Indication:   Hypertension, Benign Essential | |
| 1991455-BUX | Metoprolol Tartrate  25 MG Tab | 08/08/2025 09:09 |
| | **Prescriber Order:**   Take one-half tablet (12.5 MG) by mouth twice daily with food for heart and for blood pressure x 365 day(s) | |
| | Indication:   Hypertension, Benign Essential, Coronary atherosclerosis of unspec type of vessel | |
| 2041054-BUX | Atorvastatin 20 MG TAB | 08/08/2025 09:09 |
| | **Prescriber Order:**   Take three tablets (60 MG) by mouth each day for control of cholesterol x 180 day(s) | |
| | Indication:   Coronary atherosclerosis of unspec type of vessel, Hyperlipidemia, unspecified | |

### New Laboratory Requests:

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests-C-CBC | One Time | 08/11/2025 00:00 | Routine |
| Lab Tests-C-Comprehensive Metabolic Profile (CMP) | | | |
| Lab Tests-P-PT/INR (not POC) | | | |

Labs requested to be reviewed by:        Craft, Patrick (MOUD) MD

### New Radiology Request Orders:

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| Ultrasound-Venous-Bilateral Lower Extremity | One Time | | 08/09/2025 | Routine |

Specific reason(s) for request (Complaints and findings):

90 y/o male w/ BLE swelling.  Please complete U/S to r/o DVT.

## Other:

# BLE edema R>L: Consulted w/ MD Rogers.  Low suspicion for DVT, however, will r/o w/ U/S.  Radiology aware and agreed to do BLT LE U/S today to r/o U/S.  DDx includes venous insufficiency and per MD Rogers, if U/S negative

| Inmate Name: | AMUSO, VITTORIO | | Reg #: | 38740-079 |
|---|---|---|---|---|
| Date of Birth: | 11/04/1934 | Sex: M    Race: WHITE | Facility: | BTF |
| Encounter Date: | 08/08/2025 09:09 | Provider: Russell, A. (MOUD-M) | Unit: | L01 |

could do trial of compression stockings

BP elevated and inmate stated he has NOT taken his Lisinopril today d/t him not eating breakfast yet but reports he is complaint w/ all meds.

Did report he ran out of Metoprolol 1 week ago.

Needs medication renewals and will renewal all medications

IF U/S of BLE negative, will dispense Compression Stockings

See MD Roger's Clinical Encounter for any additional information

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 08/08/2025 | Counseling | Plan of Care | Russell, A. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Russell, A. (MOUD-M) FNP-BC on 08/08/2025 09:52

Requested to be cosigned by  Rogers, Richard (MOUD) MD.

Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: AMUSO, VITTORIO | | Reg #: | 38740-079 |
| Date of Birth: 11/04/1934 | Sex: M Race: WHITE | Facility: | BTF |
| Encounter Date: 08/08/2025 07:42 | Provider: Tuck, Hannah RN | Unit: | L01 |

**Reviewed Health Status:** Yes

Nursing - Sick Call Note encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT 1        Provider: Tuck, Hannah RN

Chief Complaint:   Other Problem

Subjective:   "my lower legs are swollen and leaking fluid x 1 week with 10/10 pain"

**Pain:**        Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 08/08/2025 07:43 |
| Location: | Leg-Lower bilateral |
| Quality of Pain: | Burning |
| Pain Scale: | 10 |
| Intervention: | none |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 3-5 Days |
| Duration: | <1 Minute |
| Exacerbating Factors: | none |
| Relieving Factors: | none |
| Reason Not Done: | |
| Comments: | |

**Allergies:**

| Allergy | Reaction | Comments |
|---|---|---|
| Sulfa Antibiotics | Unknown | |

Allergies list reviewed/updated for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors with the patient on 08/08/2025 07:42 by Tuck, Hannah RN

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 08/08/2025 | 07:42 BUX | 98.0 | 36.7 | | Tuck, Hannah RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/08/2025 | 07:42 BUX | 94 | | | Tuck, Hannah RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|

| Inmate Name: | AMUSO, VITTORIO | | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: | M | Race: WHITE | Facility: | BTF |
| Encounter Date: | 08/08/2025 07:42 | Provider: | Tuck, Hannah RN | | Unit: | L01 |

| Date | Time | Rate Per Minute | Provider |
|------|------|-----------------|----------|
| 08/08/2025 | 07:42 BUX | 16 | Tuck, Hannah RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 08/08/2025 | 07:42 BUX | 170/76 | | | | Tuck, Hannah RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 08/08/2025 | 07:42 BUX | 97 | | Tuck, Hannah RN |

**ASSESSMENT:**

Other

AIC reports to sick call for bilateral swollen lower legs with leaking fluid in right leg x 1 week. AIC CO 10/10 pain and worse in the right. Vitals WNL. Advised AIC to wait for provider

**PLAN:**

**Disposition:**

To be Evaluated by Provider

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|----------------|--------|---------------|----------|---------|
| 08/08/2025 | Counseling | Access to Care | Tuck, Hannah | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Tuck, Hannah RN on 08/08/2025 07:46

Requested to be cosigned by  Russell, A. (MOUD-M) FNP-BC.

Cosign documentation will be displayed on the following page.

Requested to be reviewed by  Rogers, Richard (MOUD) MD.

Review documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M    Race: WHITE | | Facility: | BTF |
| Note Date: | 08/08/2025 09:43 | Provider:  Seidler, C. (MOUD-M) | | Unit: | L01 |

**Reviewed Health Status:**    No

Admin Note - Orders encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE    **1**          Provider:   Seidler, C. (MOUD-M) PA-C

Inmate inquired about his dermatology consult.  It was put in as urgent in March with a target date of 4/11/25, however, he has not been seen.  Sent email to consult scheduling inquiring about getting him into dermatology and I was advised that we no longer have a dermatologist in house.  I will change the consult to off-site.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Dermatology | 08/29/2025 | 08/29/2025 | Urgent | No | |

Subtype:

Off-site

Reason for Request:

90 yo with history of BCC, has non-healing x 1 year growth on left chin, may need biopsy / removal

Had initially placed urgent in house consult 3/6/25, inmate had not been scheduled, informed today that we no longer have dermatology in house so switching to off site.

**Discontinued Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Dermatology | 04/11/2025 | 04/11/2025 | Urgent | No | |

Subtype:

Inhouse Clinic

Reason for Request:

90 yo with history of BCC, has non-healing x 1 year growth on left chin, may need biopsy / removal

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**   No

Completed by Seidler, C. (MOUD-M) PA-C on 08/08/2025 09:47

Requested to be reviewed by  Gichuhi, Damaris (MOUD) NP-C.

Review documentation will be displayed on the following page.

**A. 47**

## Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex:     M      Race: WHITE | Facility: | BTF |
| Note Date: | 08/12/2025 13:57 | Provider:   Seidler, C. (MOUD-M) | Unit: | L01 |

**Reviewed Health Status:**   No

Admin Note - Orders encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**          Provider:   Seidler, C. (MOUD-M) PA-C

Previously placed offsite Dermatology consult for evaluation of possible BCC on chin, however, received email from UR Nurse that Dr. Stock will perform an in house biopsy.  Will update consult.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Specialty Procedure - In house | 09/05/2025 | 09/05/2025 | Urgent | No | |

Subtype:

Inhouse, NOS

Reason for Request:

90 yo with history of BCC, has non-healing x 1 year growth on left chin, may need biopsy / removal

Initially placed consult with dermatology, but advised to change to in house visit with Dr. Stock

**Discontinued Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Dermatology | 08/29/2025 | 08/29/2025 | Urgent | No | |

Subtype:

Off-site

Reason for Request:

90 yo with history of BCC, has non-healing x 1 year growth on left chin, may need biopsy / removal

Had initially placed urgent in house consult 3/6/25, inmate had not been scheduled, informed today that we no longer have dermatology in house so switching to off site.

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**   No

Completed by Seidler, C. (MOUD-M) PA-C on 08/12/2025 14:00

**A. 48**

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M   Race: WHITE | Facility: | BTF |
| Encounter Date: | 08/26/2025 17:50 | Provider: Porterfield, Aaron | Unit: | L01 |

**Reviewed Health Status:**   Yes

EMT/Para - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT   **1**        Provider:   Porterfield, Aaron Paramedic

Chief Complaint:   Open Wound(s)
Subjective:       I burned myself with coffee and need it checked out.
**Pain:**           No

---

**Allergies:**

| Allergy | Reaction | Comments |
|---|---|---|
| Sulfa Antibiotics | Unknown | |

Allergies list reviewed/updated for the presence or absence of allergies, sensitivities, and other reactions to drugs, materials, food and environmental factors with the patient on 08/26/2025 17:50 by Porterfield, Aaron Paramedic

**OBJECTIVE:**

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/26/2025 | 17:40 BUX | 74 | Via Machine | | Porterfield, Aaron Paramedic |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 08/26/2025 | 17:40 BUX | 20 | Porterfield, Aaron Paramedic |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 08/26/2025 | 17:40 BUX | 130/53 | Right Arm | Sitting | Adult-regular | Porterfield, Aaron Paramedic |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 08/26/2025 | 17:40 BUX | 100 | Room Air | Porterfield, Aaron Paramedic |

**ASSESSMENT:**

Burn - Thermal-Minor

Inmate was seen in medical in reference to a burn. The inmate received a burn to the upper left posterior leg. It appeared to be a possible second/third degree burn to approximately a 4x3 inch portion of the left posterior leg. The burn did happen days prior to coming to medical. The inmate did have a dressing over same from where he had supplies from a previous injury. The inmate does not grimace or show he is in any pain when the burn is palpated. The inmates' vitals were obtained and noted to be within stable limits. The inmate received triple antibiotic ointment to put on the affected area. The wound was also redressed. The inmate was advised to return to sick call in the morning.

**PLAN:**

**Disposition:**

## Bureau of Prisons
## Health Services
## Consultation Request

BTF 9/25/25

| | | |
|---|---|---|
| **Inmate Name:** AMUSO, VITTORIO | **Reg #:** 38740-079 | **Complex** BUX |
| **Date of Birth:** 11/04/1934 | **Sex:** M | |

**Consultation/Procedure Requested:**    Specialty Procedure - In house

**Subtype:**    Inhouse, NOS

**Priority:** Urgent

**Target Date:**  09/05/2025

**Reason for Request:**

90 yo with history of BCC, has non-healing x 1 year growth on left chin, may need biopsy / removal

Initially placed consult with dermatology, but advised to change to in house visit with Dr. Stock

**Medications (As of 09/16/2025)**

Aspirin 81 MG EC Tab  Exp: 08/08/2026  SIG: Take one tablet (81 MG) by mouth each day for heart
Atorvastatin 20 MG TAB  Exp: 02/04/2026  SIG: Take three tablets (60 MG) by mouth each day for control of cholesterol
Finasteride 5 MG TAB  Exp: 08/08/2026  SIG: Take one tablet (5 MG) by mouth each day for prostate
Lisinopril 10 MG Tab  Exp: 08/08/2026  SIG: Take one tablet (10 MG) by mouth each day to control blood pressure
Metoprolol Tartrate  25 MG Tab  Exp: 08/08/2026  SIG: Take one-half tablet (12.5 MG) by mouth twice daily with food for heart and for blood pressure
Petrolatum External Ointment 42% 100 GM  Exp: 02/04/2026  SIG: Apply topically to the affected area(s) each day AS NEEDED for dry skin
Tamsulosin HCl 0.4 MG Cap  Exp: 08/08/2026  SIG: Take two capsules (0.8 MG) by mouth each day 30 minutes after same meal for prostate

**Allergies (As of 09/16/2025)**

Sulfa Antibiotics

**Health Problems (As of 09/16/2025)**

Hypertension, Benign Essential ICD-9 401.1, Coronary atherosclerosis of unspec type of vessel ICD-9 414.00, BPH, Benign Hypertrophy of Prostate ICD-9 600.00, Fitting and adjust of dental prosthetic device ICD-9 V52.3, LTBI Prophy Incomplete ICD-10 795.5E, Nuclear sclerosis ICD-9 366.16, Unspecified disorder of conjunctiva ICD-10 H119, Enthesopathy, unspecified ICD-10 M779, Hyperlipidemia, unspecified ICD-10 E785, Encounter for fit/adjst of dental prosthetic device ICD-10 Z463, Disorder of eyelid ICD-10 H029, Complete loss of teeth ICD-10 K081, Cardiac arrhythmia ICD-10 I499, Osteoarthritis of hip, unspecified ICD-10 M169, Anemia, unspecified ICD-10 D649, Osteoarthritis of knee, unspecified ICD-10 M179, Encounter for general adult medical exam without abnormal findings ICD-10 Z0000, Personal history of COVID-19 ICD-10 Z8616, Encounter for screening ICD-10 Z139, Encounter for screening ICD-10 Z139, Tinea cruris ICD-10 B356, Encounter for screening ICD-10 Z139

**Inmate Requires Translator:**   No          **Language:**

**Additional Records Required:**

**Comments:**

**Requested By:**    Seidler, C. (MOUD-M) PA-C

**Ordered Date:**    08/12/2025 13:57

**Scheduled Target Date:** 09/05/2025 00:00

**Level of Care:**    Medically Necessary - Non-Emergent

# Bureau of Prisons
# Health Services
# Consultation Request

BTF 9/25/25

| | | |
|---|---|---|
| **Inmate Name:** AMUSO, VITTORIO | **Reg #:** 38740-079 | **Complex** BUX |
| **Date of Birth:** 11/04/1934 | **Sex:** M | |

**Consultation/Procedure Requested:**     Specialty Procedure - In house

**Subtype:**     Inhouse, NOS

**Priority:** Urgent

**Target Date:** 09/05/2025

**Reason for Request:**

90 yo with history of BCC, has non-healing x 1 year growth on left chin, may need biopsy / removal

Initially placed consult with dermatology, but advised to change to in house visit with Dr. Stock

**Medications (As of 09/16/2025)**

Aspirin 81 MG EC Tab  Exp: 08/08/2026  SIG: Take one tablet (81 MG) by mouth each day for heart
Atorvastatin 20 MG TAB  Exp: 02/04/2026  SIG: Take three tablets (60 MG) by mouth each day for control of cholesterol
Finasteride 5 MG TAB  Exp: 08/08/2026  SIG: Take one tablet (5 MG) by mouth each day for prostate
Lisinopril 10 MG Tab  Exp: 08/08/2026  SIG: Take one tablet (10 MG) by mouth each day to control blood pressure
Metoprolol Tartrate  25 MG Tab  Exp: 08/08/2026  SIG: Take one-half tablet (12.5 MG) by mouth twice daily with food for heart and for blood pressure
Petrolatum External Ointment 42% 100 GM  Exp: 02/04/2026  SIG: Apply topically to the affected area(s) each day AS NEEDED for dry skin
Tamsulosin HCl 0.4 MG Cap  Exp: 08/08/2026  SIG: Take two capsules (0.8 MG) by mouth each day 30 minutes after same meal for prostate

**Allergies (As of 09/16/2025)**

Sulfa Antibiotics

**Health Problems (As of 09/16/2025)**

Hypertension, Benign Essential ICD-9 401.1, Coronary atherosclerosis of unspec type of vessel ICD-9 414.00, BPH, Benign Hypertophy of Prostate ICD-9 600.00, Fitting and adjust of dental prosthetic device ICD-9 V52.3, LTBI Prophy Incomplete ICD-10 795.5E, Nuclear sclerosis ICD-9 366.16, Unspecified disorder of conjunctiva ICD-10 H119, Enthesopathy, unspecified ICD-10 M779, Hyperlipidemia, unspecified ICD-10 E785, Encounter for fit/adjst of dental prosthetic device ICD-10 Z463, Disorder of eyelid ICD-10 H029, Complete loss of teeth ICD-10 K081, Cardiac arrhythmia ICD-10 I499, Osteoarthritis of hip, unspecified ICD-10 M169, Anemia, unspecified ICD-10 D649, Osteoarthritis of knee, unspecified ICD-10 M179, Encounter for general adult medical exam without abnormal findings ICD-10 Z0000, Personal history of COVID-19 ICD-10 Z8616, Encounter for screening ICD-10 Z139, Encounter for screening ICD-10 Z139, Tinea cruris ICD-10 B356, Encounter for screening ICD-10 Z139

**Inmate Requires Translator:**  No          **Language:**

**Additional Records Required:**

**Comments:**

**Requested By:**     Seidler, C. (MOUD-M) PA-C

**Ordered Date:**     08/12/2025 13:57

**Scheduled Target Date:** 09/05/2025 00:00

**Level of Care:**     Medically Necessary - Non-Emergent

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: M Race: WHITE | | Facility: | BTF |
| Note Date: | 09/30/2025 15:14 | Provider: Gichuhi, Damaris | | Unit: | L01 |

**Reviewed Health Status:** No

Review Note - Document Review encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**         Provider:   Gichuhi, Damaris (MOUD) NP-C

Inmate recently underwent a biopsy of a non-healing growth on his left chin with Dr Stock. Pathology showed Basal cell carcinoma. Recommendation was to have MOHS surgery done By Dr. Cook's clinic at Duke. Will refer for further evaluation.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Dermatology | 10/30/2025 | 10/30/2025 | Routine | No | |

Subtype:
 Off-site

Reason for Request:

Inmate recently underwent a biopsy of a non-healing growth on his left chin which showed Basal cell carcinoma. Recommendation was to have MOHS surgery done By Dr. Cook's clinic at Duke.

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Gichuhi, Damaris (MOUD) NP-C on 09/30/2025 15:23

**A. 52**

**Bureau of Prisons**
**Health Services**
**Consultation Request**

12/04/2025
BTF L01

| Inmate Name: AMUSO, VITTORIO | Reg #: 38740-079 | Complex BUX |
|---|---|---|
| Date of Birth:    11/04/1934 | Sex:    M | |

**Consultation/Procedure Requested:**    Optometry

**Subtype:**    Onsite.

**Priority:**  Routine

**Target Date:**   12/15/2025

**Reason for Request:**

AIC is a 90 yo male with h/o pseudophakia OU and trichiasis, followed by ophthalmology, Dr James, last seen 12/17/24.  Recommended a one year f/u with staff optometrist.

**Medications (As of 12/01/2025)**

Aspirin 81 MG EC Tab  Exp: 08/08/2026  SIG: Take one tablet (81 MG) by mouth each day for heart
Atorvastatin 20 MG TAB  Exp: 02/04/2026  SIG: Take three tablets (60 MG) by mouth each day for control of cholesterol
Finasteride 5 MG TAB  Exp: 08/08/2026  SIG: Take one tablet (5 MG) by mouth each day for prostate
Lisinopril 10 MG Tab  Exp: 08/08/2026  SIG: Take one tablet (10 MG) by mouth each day to control blood pressure
Metoprolol Tartrate  25 MG Tab  Exp: 08/08/2026  SIG: Take one-half tablet (12.5 MG) by mouth twice daily with food for heart and for blood pressure
Petrolatum External Ointment 42% 100 GM  Exp: 02/04/2026  SIG: Apply topically to the affected area(s) each day AS NEEDED for dry skin
Tamsulosin HCl 0.4 MG Cap  Exp: 08/08/2026  SIG: Take two capsules (0.8 MG) by mouth each day 30 minutes after same meal for prostate

**Allergies (As of 12/01/2025)**

Sulfa Antibiotics

**Health Problems (As of 12/01/2025)**

Hypertension, Benign Essential ICD-9 401.1, Coronary atherosclerosis of unspec type of vessel ICD-9 414.00, BPH, Benign Hypertophy of Prostate ICD-9 600.00, Fitting and adjust of dental prosthetic device ICD-9 V52.3, LTBI Prophy Incomplete ICD-10 795.5E, Nuclear sclerosis ICD-9 366.16, Unspecified disorder of conjunctiva ICD-10 H119, Enthesopathy, unspecified ICD-10 M779, Hyperlipidemia, unspecified ICD-10 E785, Encounter for fit/adjst of dental prosthetic device ICD-10 Z463, Disorder of eyelid ICD-10 H029, Complete loss of teeth ICD-10 K081, Cardiac arrhythmia ICD-10 I499, Osteoarthritis of hip, unspecified ICD-10 M169, Anemia, unspecified ICD-10 D649, Osteoarthritis of knee, unspecified ICD-10 M179, Encounter for general adult medical exam without abnormal findings ICD-10 Z0000, Personal history of COVID-19 ICD-10 Z8616, Encounter for screening ICD-10 Z139, Encounter for screening ICD-10 Z139, Tinea cruris ICD-10 B356, Encounter for screening ICD-10 Z139

**Inmate Requires Translator:**   No              **Language:**

**Additional Records Required:**

**Comments:**

**Requested By:**    Rogers, Richard (MOUD-M) MD

**Ordered Date:**    01/21/2025 08:49

**Scheduled Target Date:** 12/15/2025 00:00

**Level of Care:**

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AMUSO, VITTORIO | | | Reg #: | 38740-079 |
| Date of Birth: | 11/04/1934 | Sex: | M    Race: WHITE | Facility: | BTF |
| Note Date: | 12/05/2025 12:46 | Provider: | Rogers, Richard (MOUD- | Unit: | L01 |

**Reviewed Health Status:**    No

Cosign Note - Clinical Encounter Cosign encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE    **1**        Provider:    Rogers, Richard (MOUD-M) MD

> AIC is a 91 yo male seen by optometry 12/4/25.  Recommended ophthalmology consult for cataract evaluation.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Priority | Translator | Language |
|---|---|---|---|---|
| Ophthalmology | 05/18/2026 | Routine | No | |

Subtype:

Inhouse Clinic

Reason for Request:

> AIC is a 91 yo male seen by optometry 12/4/25.  Recommended ophthalmology consult for cataract evaluation.

**Copay Required:** No        **Cosign Required:**  No

**Telephone/Verbal Order:**    No

Completed by Rogers, Richard (MOUD-M) MD on 12/05/2025 12:48

**A. 54**

# Bureau of Prisons
# Health Services
# Devices and Equipment

| | |
|---|---|
| **Start Date:** 08/01/2025 | **Stop Date:** 03/13/2026 |
| **Reg #:** 38740-079 | **Inmate Name:** AMUSO, VITTORIO |

Case 1:90-cr-00446-FB Document 1236-1 Filed 04/24/26 Page 55 of 116 PageID #: 2374

| Device/Equipment | | Start Date | Stop Date | Date Returned | Obtained From | Comments |
|---|---|---|---|---|---|---|
| Cushion: foam/gel | | | | | | |
| 03/07/2024 09:32 EST | Nobles, T. DPT/OCS, SER Therapist | 03/07/2024 | | | BOP | w/c cushion due to very frail/thin with decreased coverage on sacrum |
| Walker | | | | | | |
| 12/12/2023 10:35 EST | Nobles, T. DPT/OCS, SER Therapist | 12/12/2023 | | | BOP | standard walker with 4-wheels for standing in room to give back a break |
| 12/12/2023 10:34 EST | Nobles, T. DPT/OCS, SER Therapist | 12/12/2023 | | | BOP | standard walker with 4-wheels |
| Wheelchair | | | | | | |
| 03/09/2023 10:46 EST | Nobles, T. DPT/OCS, SER Therapist | 03/06/2023 | | | BOP | WC1264 |
| 03/06/2023 10:04 EST | Firozvi, Amir M.D. | 03/06/2023 | | | BOP | |
| Cane | | | | | | |
| 03/11/2021 14:17 EST | Crites, Kristi CRNP | 03/11/2021 | | | BOP | |
| Eye Glasses | | | | | | |
| 07/31/2019 14:00 EST | Voorhees, Michele HIT | 07/31/2019 | | | BOP | |
| ~~Medical Shoes~~ | | | | | | |
| ~~05/17/2018 09:50 EST~~ | ~~Todd, C. RN~~ | ~~05/17/2018~~ | | | ~~BOP~~ | ~~size 7 1/2~~--mistaken entry |
| 05/17/2018 09:49 EST | Todd, C. RN | 05/17/2018 | | | BOP | size 7 1/2 |
| ~~Alternate Institutional Shoes~~ | | | | | | |
| ~~05/17/2018 09:53 EST~~ | ~~Todd, C. RN~~ | ~~05/17/2018~~ | | | ~~BOP~~ | ~~size 7 1/2~~--mistaken entry |
| 05/17/2018 09:50 EST | Todd, C. RN | 05/17/2018 | | | BOP | size 7 1/2 |
| Alternate Institutional Shoes | | | | | | |
| 01/17/2018 10:05 EST | Gera, Tom PA-C | 01/17/2018 | 01/17/2019 | | BOP | |
| Soft Shoes | | | | | | |
| 12/12/2014 13:43 EST | McGann, S. MD | 12/02/2007 | 02/01/2008 | | BOP | |
| 01/15/2008 10:09 EST | Slone, S. RN, AHSA | 12/02/2007 | 02/01/2008 | | BOP | |
| 12/02/2007 18:01 EST | Slone, S. RN, AHSA | 12/02/2007 | 12/02/2008 | | BOP | |

| Device/Equipment | Start Date | Stop Date | Date Returned | Obtained From | Comments |
|---|---|---|---|---|---|
| ~~Crutches~~ | | | | | |
| ~~12/02/2007 18:01 EST~~ ~~Slone, S. RN, AHSA~~ | ~~05/08/2007~~ | ~~05/29/2007~~ | | ~~BOP~~ | --Expired |
| 05/08/2007 14:00 EST  Bhadra, Samiran MLP | 05/08/2007 | 05/29/2007 | | BOP | |

**Total:** 10

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 56 of 116 PageID #: 2375

A. 56

Reg #: 38740-079          Inmate Name: AMUSO, VITTORIO

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| **Current** | | | | | | |
| Nuclear sclerosis | | | | | | |
| 05/07/2013 14:29 EST  Radaneata, Christian OD | III | ICD-9 | 366.16 | 05/07/2013 | Current | 05/07/2013 |
| Hypertension, Benign Essential | | | | | | |
| 01/13/2025 09:54 EST  Rogers, Richard MD | III | ICD-9 | 401.1 | 06/19/2008 | Current | 12/11/2015 |
| Continue current medications | | | | | | |
| 06/04/2013 10:38 EST  Lin, Michael MD | III | ICD-9 | 401.1 | 06/19/2008 | Current | 06/04/2013 |
| 01/13/2011 09:39 EST  Cintron, Miguel A MD | III | ICD-9 | 401.1 | 06/19/2008 | Current | 01/13/2011 |
| well controlled . | | | | | | |
| 06/19/2008 14:47 EST  Cruz, Pablo MD | III | ICD-9 | 401.1 | 06/19/2008 | Remission | 06/19/2008 |
| well controlled . | | | | | | |
| Coronary atherosclerosis of unspec type of vessel | | | | | | |
| 12/11/2015 15:11 EST  McGann, S. MD | III | ICD-9 | 414.00 | 06/19/2008 | Current | 12/11/2015 |
| 01/13/2011 09:39 EST  Cintron, Miguel A MD | III | ICD-9 | 414.00 | 06/19/2008 | Current | 01/13/2011 |
| 06/19/2008 14:47 EST  Cruz, Pablo MD | III | ICD-9 | 414.00 | 06/19/2008 | Remission | 06/19/2008 |
| BPH, Benign Hypertophy of Prostate | | | | | | |
| 01/13/2025 09:54 EST  Rogers, Richard MD | III | ICD-9 | 600.00 | 04/30/2009 | Current | 12/11/2015 |
| Stable on Flomax and Proscar | | | | | | |
| 02/05/2015 13:06 EST  McGann, S. MD | III | ICD-9 | 600.00 | 04/30/2009 | Current | 02/05/2015 |
| 04/09/2014 15:54 EST  Moubarek, Mohamed S. MD, CD | III | ICD-9 | 600.00 | 04/30/2009 | Remission | 04/09/2014 |
| 04/30/2009 10:29 EST  Rosario, Norbert MD | III | ICD-9 | 600.00 | 04/30/2009 | Current | 04/30/2009 |
| LTBI Prophy Incomplete | | | | | | |
| 11/22/2023 14:37 EST  Tayyeb, Mohammed QIIC RN | III | ICD-10 | 795.5E | 04/20/1997 | Current | 07/12/2016 |
| 795.5e per sentry 4.20.97 20mm 11.18.92 per sentry | | | | | | |
| 07/12/2016 11:57 EST  McCormick, Pamela RN/IDC/IOP | III | ICD-9 | 795.5E | 04/20/1997 | Current | 07/12/2016 |
| 795.5e per sentry | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 795.5E | 04/20/1997 | Resolved | 04/20/1997 |
| 795.5e per sentry | | | | | | |
| 01/16/2010 13:52 EST  Objio, T RN/IDC/IOP | III | ICD-9 | 795.5E | 04/20/1997 | | 04/20/1997 |
| 795.5e per sentry | | | | | | |
| Herpes zoster (shingles) | | | | | | |
| 01/06/2026 12:28 EST  Gichuhi, Damaris (MOUD) NP-C | | ICD-10 | B029 | 01/06/2026 | Current | |

A. 57

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Tinea cruris | | | | | | |
| 11/04/2024 14:47 EST  Seidler, C. (MOUD) PA-C | | ICD-10 | B356 | 11/04/2024 | Current | |
| Anemia, unspecified | | | | | | |
| 01/07/2022 14:07 EST  Crites, Kristi (MAT) CRNP | | ICD-10 | D649 | 01/07/2022 | Current | |
| Hyperlipidemia, unspecified | | | | | | |
| 01/13/2025 09:54 EST  Rogers, Richard MD | | ICD-10 | E785 | 06/16/2017 | Current | |
|     Continue statin therapy | | | | | | |
| 06/16/2017 14:57 EST  Crites, Kristi CRNP | | ICD-10 | E785 | 06/16/2017 | Current | |
| Disorder of eyelid | | | | | | |
| 10/19/2018 08:28 EST  Crites, Kristi CRNP | | ICD-10 | H029 | 10/19/2018 | Current | |
| Unspecified disorder of conjunctiva | | | | | | |
| 05/20/2016 09:55 EST  Gera, Tom PA-C | | ICD-10 | H119 | 05/20/2016 | Current | |
|     may be result of seasonal allergy | | | | | | |
| Cardiac arrhythmia | | | | | | |
| 04/24/2020 11:50 EST  Crites, Kristi CRNP | | ICD-10 | I499 | 04/24/2020 | Current | |
|     PVC's | | | | | | |
| Complete loss of teeth | | | | | | |
| 06/28/2019 10:35 EST  Powell, Jason DDS | | ICD-10 | K081 | 06/28/2019 | Current | |
| Osteoarthritis of hip, unspecified | | | | | | |
| 11/13/2020 12:46 EST  Crites, Kristi CRNP | | ICD-10 | M169 | 11/13/2020 | Current | |
| Osteoarthritis of knee, unspecified | | | | | | |
| 08/15/2023 15:38 EST  Meyer, Caleb (MAT) APRN-CNP | | ICD-10 | M179 | 08/03/2022 | Current | |
|     Bilateral.  Wheelchair for mobility.  Right knee injection 8/15/23. | | | | | | |
| 08/03/2022 13:19 EST  Crites, Kristi (MAT) CRNP | | ICD-10 | M179 | 08/03/2022 | Current | |
| Enthesopathy, unspecified | | | | | | |
| 10/03/2016 14:21 EST  Crites, Kristi CRNP | | ICD-10 | M779 | 10/03/2016 | Current | |
| Fitting and adjust of dental prosthetic device | | | | | | |
| 09/10/2010 10:27 EST  Vazquez-Diaz, Pio DDS | III | ICD-9 | V52.3 | 09/10/2010 | Current | 09/10/2010 |
| Encounter for general adult medical exam without abnormal findings | | | | | | |
| 02/02/2023 07:50 EST  Crites, Kristi (MAT) CRNP | | ICD-10 | Z0000 | 02/02/2023 | Current | |
| Encounter for screening | | | | | | |

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 58 of 116 PageID #: 2377

A
5
8

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| 01/06/2026 10:52 EST  Gichuhi, Damaris (MOUD) NP-C | | ICD-10 | Z139 | 01/06/2026 | Current | |
| Encounter for screening | | | | | | |
| 03/06/2025 10:19 EST  Seidler, C. (MOUD) PA-C | | ICD-10 | Z139 | 03/06/2025 | Current | |
|     PHV | | | | | | |
| Encounter for screening | | | | | | |
| 04/05/2024 11:13 EST  Seidler, C. (MOUD) PA-C | | ICD-10 | Z139 | 04/05/2024 | Current | |
|     Prev Health Visit | | | | | | |
| Encounter for screening | | | | | | |
| 03/04/2024 11:56 EST  Seidler, C. (MOUD) PA-C | | ICD-10 | Z139 | 03/04/2024 | Current | |
|     Pre-op H&P | | | | | | |
| Encounter for fit/adjst of dental prosthetic device | | | | | | |
| 02/05/2018 10:12 EST  Powell, Jason DDS | | ICD-10 | Z463 | 02/05/2018 | Current | 02/05/2018 |
|     Inmate states dentures are loose. | | | | | | |
| Personal history of COVID-19 | | | | | | |
| 02/28/2023 07:45 EST  Mangum, D. QIIC RN | | ICD-10 | Z8616 | 01/30/2022 | Current | |
|     covid+ 1.30.22 & 8.16.22 | | | | | | |

## Remission

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Sensory hearing loss, bilateral | | | | | | |
| 11/17/2022 14:50 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 389.11 | 06/26/2015 | Remission | 11/17/2022 |
| 06/26/2015 14:59 EST  McGann, S. MD | III | ICD-9 | 389.11 | 06/26/2015 | Current | 06/26/2015 |

## Resolved

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Other specified viral infection | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 079.89 | 08/29/2013 | Resolved | 09/19/2013 |
|     Initiate pneumonia protocol | | | | | | |
| 09/19/2013 15:02 EST  Henaghan, Kristi CRNP | III | ICD-9 | 079.89 | 08/29/2013 | Resolved | 09/19/2013 |
|     Initiate pneumonia protocol | | | | | | |
| 08/29/2013 09:01 EST  Lin, Michael MD | III | ICD-9 | 079.89 | 08/29/2013 | Current | 08/29/2013 |
|     Initiate pneumonia protocol | | | | | | |
| Benign neo of nasal cavity, middle ear, acc sinus | | | | | | |
| 12/02/2021 16:44 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 212.0 | 09/10/2015 | Resolved | 12/02/2021 |
| 09/10/2015 15:07 EST  McGann, S. MD | III | ICD-9 | 212.0 | 09/10/2015 | Current | 09/10/2015 |
| Anemia, unspecified | | | | | | |

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 59 of 116 PageID #: 2378

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| 12/02/2021 16:44 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 285.9 | 05/06/2014 | Resolved | 12/02/2021 |
| normocytic | | | | | | |
| 05/06/2014 14:18 EST  Henaghan, Kristi CRNP | III | ICD-9 | 285.9 | 05/06/2014 | Current | 05/06/2014 |
| normocytic | | | | | | |
| Eye, redness or discharge | | | | | | |
| 09/14/2020 14:11 EST  Crites, Kristi CRNP | III | ICD-9 | 379.93 | 02/11/2016 | Resolved | 09/14/2020 |
| 02/11/2016 10:15 EST  Mitter, Robert OD | III | ICD-9 | 379.93 | 02/11/2016 | Current | 02/11/2016 |
| Unspec chronic disease of tonsils and adenoids | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 474.9 | 02/06/2013 | Resolved | 02/06/2013 |
| No current issues | | | | | | |
| 02/06/2013 13:41 EST  Lin, Michael MD | III | ICD-9 | 474.9 | 02/06/2013 | Resolved | 02/06/2013 |
| No current issues | | | | | | |
| Influenza-Like-Illness (ILI) | | | | | | |
| 08/06/2018 16:23 EST  McCormick, Pamela RN/IDC/IOP | III | ICD-10 | 488.1A | 03/21/2018 | Resolved | 08/06/2018 |
| Afebrile, T = 97.7 on 6/25/18: chart review. | | | | | | |
| 03/21/2018 13:48 EST  Gera, Tom PA-C | III | ICD-10 | 488.1A | 03/21/2018 | Current | |
| Blood in stool | | | | | | |
| 11/17/2022 14:50 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 578.1 | 01/05/2011 | Resolved | 11/17/2022 |
| per record on 11/12/2010. | | | | | | |
| 05/15/2015 13:22 EST  Crites, Kristi CRNP | III | ICD-9 | 578.1 | 01/05/2011 | Current | 05/15/2015 |
| per record on 11/12/2010. | | | | | | |
| 05/06/2014 14:18 EST  Henaghan, Kristi CRNP | III | ICD-9 | 578.1 | 01/05/2011 | Resolved | 05/06/2014 |
| per record on 11/12/2010. | | | | | | |
| 01/05/2011 15:48 EST  Lee, Jongmyeong NP | III | ICD-9 | 578.1 | 01/05/2011 | Current | 01/05/2011 |
| per record on 11/12/2010. | | | | | | |
| Urinary tract infection, site not specified | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 599.0 | 01/22/2015 | Resolved | 02/05/2015 |
| 02/05/2015 13:06 EST  McGann, S. MD | III | ICD-9 | 599.0 | 01/22/2015 | Resolved | 02/05/2015 |
| 01/22/2015 11:01 EST  McGann, S. MD | III | ICD-9 | 599.0 | 01/22/2015 | Current | 01/22/2015 |
| *REVISED ICD9 Hematuria | | | | | | |
| 12/02/2021 16:45 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 599.7 | 09/18/2008 | Resolved | 12/02/2021 |
| 09/18/2008 12:47 EST  Rosario, Norbert MD | III | ICD-9 | 599.7 | 09/18/2008 | Current | 09/18/2008 |
| Seborrhea capitis | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 690.11 | 07/30/2013 | Resolved | 02/05/2015 |
| Selenium sulfide - patient educated in use of medication. | | | | | | |
| 02/05/2015 13:06 EST  McGann, S. MD | III | ICD-9 | 690.11 | 07/30/2013 | Resolved | 02/05/2015 |
| Selenium sulfide - patient educated in use of medication. | | | | | | |

Case 1:90-cr-00446-FB  Document 1236-1  Filed 04/24/26  Page 60 of 116 PageID #: 2329

A-60

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| 07/30/2013 12:34 EST  Lin, Michael MD | III | ICD-9 | 690.11 | 07/30/2013 | Current | 07/30/2013 |
| Selenium sulfide - patient educated in use of medication. | | | | | | |
| Dermatitis/eczema due to unspecified cause | | | | | | |
| 12/02/2021 16:45 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 692.9 | 03/16/2010 | Resolved | 12/02/2021 |
| 03/16/2010 10:15 EST  Michel, Gilbert MLP | III | ICD-9 | 692.9 | 03/16/2010 | Current | 03/16/2010 |
| Wrist, Pain in joint, forearm | | | | | | |
| 12/02/2021 16:46 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 719.43 | 02/04/2016 | Resolved | 12/02/2021 |
| 02/04/2016 14:58 EST  McGann, S. MD | III | ICD-9 | 719.43 | 02/04/2016 | Current | 02/04/2016 |
| Ankle, foot- Pain in joint | | | | | | |
| 09/14/2020 14:11 EST  Crites, Kristi CRNP | III | ICD-9 | 719.47 | 12/11/2015 | Resolved | 09/14/2020 |
| 12/11/2015 15:11 EST  McGann, S. MD | III | ICD-9 | 719.47 | 12/11/2015 | Current | 12/11/2015 |
| Enthesopathy of hip region | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 726.5 | 11/07/2014 | Resolved | 02/05/2015 |
| moderate arthritis identified by xray. | | | | | | |
| 02/05/2015 13:06 EST  McGann, S. MD | III | ICD-9 | 726.5 | 11/07/2014 | Resolved | 02/05/2015 |
| moderate arthritis identified by xray. | | | | | | |
| 11/07/2014 12:29 EST  Gera, Tom PA-C | III | ICD-9 | 726.5 | 11/07/2014 | Current | 11/07/2014 |
| moderate arthritis identified by xray. | | | | | | |
| Dizziness and giddiness | | | | | | |
| 11/14/2018 14:24 EST  Crites, Kristi CRNP | III | ICD-9 | 780.4 | 01/09/2015 | Resolved | 11/14/2018 |
| 01/09/2015 15:28 EST  McGann, S. MD | III | ICD-9 | 780.4 | 01/09/2015 | Current | 01/09/2015 |
| Edema | | | | | | |
| 04/15/2016 15:02 EST  McGann, S. MD | III | ICD-9 | 782.3 | 02/25/2015 | Resolved | 04/15/2016 |
| 02/25/2015 15:47 EST  McGann, S. MD | III | ICD-9 | 782.3 | 02/25/2015 | Current | 02/25/2015 |
| Nausea with vomiting | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 787.01 | 01/07/2015 | Resolved | 12/11/2015 |
| 12/11/2015 15:14 EST  McGann, S. MD | III | ICD-9 | 787.01 | 01/07/2015 | Resolved | 12/11/2015 |
| 04/20/2015 10:38 EST  McGann, S. MD | III | ICD-9 | 787.01 | 01/07/2015 | Current | 04/20/2015 |
| 01/09/2015 15:31 EST  McGann, S. MD | III | ICD-9 | 787.01 | 01/07/2015 | Resolved | 01/09/2015 |
| 01/07/2015 11:18 EST  McGann, S. MD | III | ICD-9 | 787.01 | 01/07/2015 | Current | 01/07/2015 |
| Nausea alone | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 787.02 | 12/30/2015 | Resolved | 12/30/2015 |
| 12/30/2015 14:26 EST  McGann, S. MD | III | ICD-9 | 787.02 | 12/30/2015 | Resolved | 12/30/2015 |
| Elevated prostate specific antigen [PSA] | | | | | | |
| 12/02/2021 16:46 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 790.93 | 03/26/2009 | Resolved | 12/02/2021 |

Case 1:90-cr-00446-FB  Document 1236-1  Filed 04/24/26  Page 61 of 116 PageID #: 2380

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| duplicate dx. | | | | | | |
| 03/26/2009 10:20 EST  Rosario, Norbert MD | III | ICD-9 | 790.93 | 03/26/2009 | Current | 03/26/2009 |
| Will retest PSA, if continues high then will Tx with doxazosin. | | | | | | |
| Fracture of sternum, closed | | | | | | |
| 12/02/2021 16:46 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 807.2 | 10/09/2015 | Resolved | 12/02/2021 |
| 10/09/2015 14:24 EST  McGann, S. MD | III | ICD-9 | 807.2 | 10/09/2015 | Current | 10/09/2015 |
| Sprain and strain of other site of foot | | | | | | |
| 12/02/2021 16:47 EST  Marrero, Maria F (MAT) MD, RMD | III | ICD-9 | 845.19 | 08/31/2010 | Resolved | 12/02/2021 |
| 08/31/2010 10:08 EST  Michel, Gilbert MLP | III | ICD-9 | 845.19 | 08/31/2010 | Remission | 08/31/2010 |
| Facial abrasion or friction burn without infection | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 910.0 | 01/25/2011 | Resolved | 02/05/2015 |
| 02/05/2015 13:06 EST  McGann, S. MD | III | ICD-9 | 910.0 | 01/25/2011 | Resolved | 02/05/2015 |
| 01/25/2011 15:21 EST  Michel, Gilbert MLP | III | ICD-9 | 910.0 | 01/25/2011 | Current | 01/25/2011 |
| Foreign body on oth and combined sites of ext eye | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | 930.8 | 08/16/2013 | Resolved | 02/05/2015 |
| Single inverted eyelash removed. Cont lacri-lube and artificial tears for dry eye | | | | | | |
| 02/05/2015 13:06 EST  McGann, S. MD | III | ICD-9 | 930.8 | 08/16/2013 | Resolved | 02/05/2015 |
| Single inverted eyelash removed. Cont lacri-lube and artificial tears for dry eye | | | | | | |
| 08/16/2013 15:36 EST  Lin, Michael MD | III | ICD-9 | 930.8 | 08/16/2013 | Current | 08/16/2013 |
| Single inverted eyelash removed. Cont lacri-lube and artificial tears for dry eye | | | | | | |
| Viral wart | | | | | | |
| 12/02/2021 16:46 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | B079 | 04/16/2019 | Resolved | 12/02/2021 |
| 04/16/2019 14:11 EST  Crites, Kristi CRNP | | ICD-10 | B079 | 04/16/2019 | Current | |
| Basal cell carcinoma of skin, unspecified | | | | | | |
| 04/06/2017 11:32 EST  Crites, Kristi CRNP | | ICD-10 | C4491 | 12/14/2016 | Resolved | 04/06/2017 |
| left cheek x 2 | | | | | | |
| 12/14/2016 07:49 EST  Crites, Kristi CRNP | | ICD-10 | C4491 | 12/14/2016 | Current | |
| left cheek x 2 | | | | | | |
| Benign lipomatous neoplasm, unspecified | | | | | | |
| 12/02/2021 16:46 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | D179 | 03/24/2016 | Resolved | 12/02/2021 |
| 03/24/2016 15:21 EST  McGann, S. MD | | ICD-10 | D179 | 03/24/2016 | Current | |
| Unspecified disorder of nose and nasal sinuses | | | | | | |
| 12/02/2021 16:47 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | J349 | 02/27/2020 | Resolved | 12/02/2021 |
| 02/27/2020 13:10 EST  Crites, Kristi CRNP | | ICD-10 | J349 | 02/27/2020 | Current | |
| Cellulitis, unspecified | | | | | | |

A 62

Case 1:90-cr-00446-FB  Document 1236-1  Filed 04/24/26  Page 62 of 116 PageID #: 23381

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| 12/12/2019 14:39 EST  Crites, Kristi CRNP | | ICD-10 | L0390 | 10/18/2016 | Resolved | 12/12/2019 |
| 10/18/2016 10:04 EST  Crites, Kristi CRNP | | ICD-10 | L0390 | 10/18/2016 | Current | |
| Pressure ulcer of sacral region | | | | | | |
| 05/05/2023 10:02 EST  Russell, Adrian FNP-BC | | ICD-10 | L89159 | 03/31/2023 | Resolved | 05/05/2023 |
|     Stage 2 | | | | | | |
| 03/31/2023 15:00 EST  Russell, Adrian FNP-BC | | ICD-10 | L89159 | 03/31/2023 | Current | |
|     Stage 2 | | | | | | |
| Other disorder of the skin and subcutaneous tissue | | | | | | |
| 12/02/2021 16:49 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | L988 | 10/03/2016 | Resolved | 12/02/2021 |
|     under left eye | | | | | | |
| 11/03/2021 12:28 EST  Crites, Kristi CRNP | | ICD-10 | L988 | 10/03/2016 | Current | |
|     under left eye | | | | | | |
| 04/05/2018 11:03 EST  Crites, Kristi CRNP | | ICD-10 | L988 | 10/03/2016 | Current | |
|     left arm/right lip | | | | | | |
| 10/03/2016 14:21 EST  Crites, Kristi CRNP | | ICD-10 | L988 | 10/03/2016 | Current | |
|     left cheek | | | | | | |
| Pain in unspecified foot | | | | | | |
| 12/02/2021 16:49 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | M79673 | 01/17/2018 | Resolved | 12/02/2021 |
| 01/17/2018 10:27 EST  Gera, Tom PA-C | | ICD-10 | M79673 | 01/17/2018 | Current | |
| Hematuria, unspecified | | | | | | |
| 01/23/2024 09:50 EST  Firozvi, Amir (MOUD) M.D. | | ICD-10 | R319 | 05/24/2019 | Resolved | 01/23/2024 |
| 05/24/2019 09:28 EST  Crites, Kristi CRNP | | ICD-10 | R319 | 05/24/2019 | Current | |
| Hematuria, unspecified | | | | | | |
| 12/02/2021 16:48 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | R319 | 08/23/2018 | Resolved | 12/02/2021 |
| 08/23/2018 12:50 EST  Crites, Kristi CRNP | | ICD-10 | R319 | 08/23/2018 | Current | |
| Dizziness and giddiness | | | | | | |
| 11/17/2022 14:50 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | R42 | 01/28/2019 | Resolved | 11/17/2022 |
| 12/02/2021 16:48 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | R42 | 01/28/2019 | Remission | 12/02/2021 |
| 02/04/2019 14:41 EST  Crites, Kristi CRNP | | ICD-10 | R42 | 01/28/2019 | Current | 02/04/2019 |
| 01/28/2019 10:29 EST  Crites, Kristi CRNP | | ICD-10 | R42 | 01/28/2019 | Resolved | 01/28/2019 |
| Edema, unspecified | | | | | | |
| 11/17/2022 14:49 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | R609 | 01/07/2022 | Resolved | 11/17/2022 |
| 01/07/2022 14:07 EST  Crites, Kristi (MAT) CRNP | | ICD-10 | R609 | 01/07/2022 | Current | |
| Prediabetes | | | | | | |
| 12/02/2021 16:48 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | R7303 | 11/17/2017 | Resolved | 12/02/2021 |
| 11/17/2017 12:56 EST  Crites, Kristi CRNP | | ICD-10 | R7303 | 11/17/2017 | Current | |

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 63 of 116 PageID #: 2282

A63

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Confirmed case COVID-19 | | | | | | |
| 08/26/2022 07:14 EST  Hall, Lisa V. RN, IOP/IDC | | ICD-10 | U07.1 | 08/16/2022 | Resolved | 08/26/2022 |
| 08/16/2022 13:35 EST  Gera, Tom PA-C | | ICD-10 | U07.1 | 08/16/2022 | Current | |
| Confirmed case COVID-19 | | | | | | |
| 02/10/2022 07:34 EST  Hall, Lisa V. RN, IOP/IDC | | ICD-10 | U07.1 | 01/30/2022 | Resolved | 02/10/2022 |
| 01/30/2022 11:39 EST  Hall, Lisa V. RN, IOP/IDC | | ICD-10 | U07.1 | 01/30/2022 | Current | |
| Fitting and adjustment of orthodontic devices | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | V53.4 | 11/05/2013 | Resolved | 11/05/2013 |
| 11/05/2013 14:57 EST  Morris-Veasey, Carolyn Chief Dentist | III | ICD-9 | V53.4 | 11/05/2013 | Resolved | 11/05/2013 |
| Other specified general medical examination | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM | III | ICD-9 | V70.8 | 02/28/2011 | Resolved | 02/28/2011 |
| 02/28/2011 11:09 EST  Chipi, E. J. MLP | III | ICD-9 | V70.8 | 02/28/2011 | Resolved | 02/28/2011 |
| Other specified general medical examination | | | | | | |
| 02/23/2016 07:20 EST  SYSTEM  s/p colonoscopy | III | ICD-9 | V70.8 | 02/04/2011 | Resolved | 02/04/2011 |
| 02/04/2011 13:56 EST  Chipi, E. J. MLP  s/p colonoscopy | III | ICD-9 | V70.8 | 02/04/2011 | Resolved | 02/04/2011 |
| Encounter for general adult medical exam without abnormal findings | | | | | | |
| 11/17/2022 14:50 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | Z0000 | 09/01/2022 | Resolved | 11/17/2022 |
| 09/01/2022 08:08 EST  Crites, Kristi (MAT) CRNP | | ICD-10 | Z0000 | 09/01/2022 | Current | |
| Encounter for general adult medical exam without abnormal findings | | | | | | |
| 12/02/2021 16:47 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | Z0000 | 05/28/2020 | Resolved | 12/02/2021 |
| 12/02/2021 16:47 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | Z0000 | 05/28/2020 | Remission | 12/02/2021 |
| 05/29/2020 10:40 EST  Crites, Kristi CRNP | | ICD-10 | Z0000 | 05/28/2020 | Current | |
| 02/26/2018 12:27 EST  Crites, Kristi CRNP | | ICD-10 | Z0000 | 02/26/2018 | Current | |
| Encounter for general adult medical exam without abnormal findings | | | | | | |
| 12/02/2021 16:48 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | Z0000 | 10/10/2019 | Resolved | 12/02/2021 |
| 10/10/2019 10:30 EST  Crites, Kristi CRNP | | ICD-10 | Z0000 | 10/10/2019 | Current | |
| Encounter for general adult medical exam without abnormal findings | | | | | | |
| 12/02/2021 16:47 EST  Marrero, Maria F (MAT) MD, RMD | | ICD-10 | Z0000 | 05/07/2018 | Resolved | 12/02/2021 |
| 05/07/2018 14:56 EST  Crites, Kristi CRNP | | ICD-10 | Z0000 | 05/07/2018 | Current | |

**Total:** 70

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 64 of 116 PageID #: 2383

Outlook

**4e78aaab-70a8-4a28-ab38-d173236dff3b**

From BTF-InmateToPhysicalTherapy (BOP) <BTF-InmateToPhysicalTherapy@bop.gov>
Date Wed 10/22/2025 8:20 AM
To    ~^! AMUSO, ~^!VITTORIO <38740079@inmatemessage.com>

I will put you on callout or call the unit for you on Wednesday, 10/22 at 0830

---

**From:** ~^! AMUSO, ~^!VITTORIO <38740079@inmatemessage.com>
**Sent:** Saturday, October 18, 2025 7:38 AM
**Subject:** ***Request to Staff*** AMUSO, VITTORIO, Reg# 38740079, BTF-L-A

To: noble
Inmate Work Assignment: none

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
4e78aaab-70a8-4a28-ab38-d173236dff3b
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


my wheelchair is in need of bearings in left rear. the whole seal is blown and is shaking to the point of it feels like its going to fall off and the back is about to fall out of it too . lmk when i can comne down there asap.thanks

**A. 65**

Outlook

---

c24c8d8a-056b-4e01-b5ab-b2a5c07772a4

---

From BTF-InmateToPharmacy (BOP) <BTF-InmateToPharmacy@bop.gov>
Date Thu 8/14/2025 11:06 AM
To    ~^! AMUSO, ~^!VITTORIO <38740079@inmatemessage.com>
Cc    BTF-MedicalRecords-S (BOP) <BTF-MedicalRecords-S@bop.gov>

Your provider did not prescribe this medication. Please come to sick call to be evaluated if needed.

---

From: ~^! AMUSO, ~^!VITTORIO <38740079@inmatemessage.com>
Sent: Tuesday, August 12, 2025 10:52 PM
Subject: ***Request to Staff*** AMUSO, VITTORIO, Reg# 38740079, BTF-L-A

To:
Inmate Work Assignment: RETIRED

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
c24c8d8a-056b-4e01-b5ab-b2a5c07772a4
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***

DEAR PHARMACY,FOR MY SWOLLEN LEGS DOCTOR ROGERS PRECRIBED  FUROEMIDE! WOULD APPRECIATE WHEN IT WAS.LISTED OM MY COMPUTER WHEN I WENT ON THE PILL LINE I WAS TOLD IT WAS NEVER PRECRIBED??? PLEASE CHECK TO SEE WHERE THE ERROR IS? THANK YOU RESPECTFULLY YOURS, VITTORIO AMUSO

A. 66

Honorable Judge,

I am writing this letter on behalf of my father Vittorio Amuso who has been incarcerated for almost 32 years (since I am 12 years old) and will be turning 89 in November. I am asking from the bottom of my heart to please consider him for compassionate release.

Since a little girl, my wish has always been to have my dad back home where he belongs. Through the years, there are not enough words in this world to describe how supportive he has been to myself and our entire family; his constant support and guidance have given me the tools to stay on a positive path. Because of Dad's wisdom and advice, I successfully received my Bachelor's in Science in Elementary Education (Pre-K-6) and Master's in Science in Literacy (K-12). Being a pillar in my life, Dad has given me the drive to be a dedicated teacher for 17 years; our daily phone calls begin with him asking me if I had a blessed night and wishing me a blessed day. His upbeat attitude, no matter what challenges he may be facing, has always been and continues to be a constant in my life; whether he sings me a song or recalls funny memories, he always wants to be sure I am smiling and laughing. His number one concern is that my family and I are healthy and happy. You will never hear him complaining. He always says, "I am hanging in there; don't worry about Dad!"

My father continues to be a exemplary inmate; other inmates say they would happily add time to their sentences, so that Dad could have his freedom; guards and even the warden from the last prison he was in, have said if they could, would send him home; that speaks volumes.

My dad has endured so much these past 30+ years within the prison system, upon that, losing my amazing mother-his wife, a number of siblings, cousins, and dear friends. Countless important events-holidays, birthdays, graduations, his grandchildren growing and maturing into fine adults, have been so difficult to experience without him, and I know equally hard for him; since Covid-19 came to be, my family and I have not been able to visit him; numerous restrictions and lockdowns have hindered our visits. You can only imagine how hurtful this is for him, myself, and our family, especially with his advanced age and declining health. He has unfortunately contracted Covid-19 a few times and is currently dealing with other ailments that are compromising his health and ability to do various tasks on his own. Rheumatoid arthritis is deeply affecting his hands, knees, and hip. Being in a prison setting, only adds more harm. These conditions are not suitable nor appropriate for a man his age with ailing health issues. He deserves to be in the comforts of his home. My dad has an endless amount of love and support here at home, that it would be our honor, privilege, and pleasure to take care of him. In 2012, when we lost our beautiful mother, she left our home to my brother and me; we have stayed here in hopes that one day our dad may come back to the home he built so beautifully with our mother. To be able to tend to his daily needs and spend quality time with him, is all we strive to have.

**A. 67**

Case 1:90-cr-00446-FB   Document 1236-1    Filed 04/24/26    Page 68 of 116 PageID #:
Case 1:90-cr-00446-FB   Document 1223-13  Filed 06/09/23   Page 2 of 26 PageID #: 1980
2387

I wish I could find the right words to thank you, Your Honor, for taking the time to read this. I hope that my words give you a small picture of the wonderful man my dad truly is. He is a man like no other; he is my everything, as I call him-my hero, my Superman. I implore you to please take his compassionate release into consideration; as my dad always says, "We must never give up hope." His "little" girl, will never give up. May God bless you.

Respectfully yours,

Victoria Amuso

**A. 68**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 69 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13 Filed 06/09/23    Page 3 of 26 PageID #: 1981
2388

Honorable Judge,

I am writing this letter on behalf of my father Vittorio Amuso who has been away for over 31 years and is now approaching 89 years of age. I am pleading with you to please grant him compassionate release.

My dad has raised me as one of his own since I am 9 years old; for as long as I can remember, he has given me an immeasurable amount of love, respect, and compassion. The adoration he had for my mother has formed me into the woman I am today.

My father taught me the importance of receiving an education and to walk this world with morals, values, and class. At the age of 20, I became a mother; I was scared to start this new life, but Dad held my hand and never left my side. He made sure I had a beautiful wedding, and I was lucky to have him around for when my daughter was born. My daughter, Teresa, graduated top of her class and is now a nurse practitioner. My dad's wisdom and guidance for sure helped her on this journey. Dad left shortly after my second child, my son, Gaetano was born, and sadly was not home for my third birth- when my son Vittorio, his namesake was born.  My boys grew into two honest, trustworthy, hard-working men because of the impact my dad had on their lives.

With Dad's age and ailments, I would only hope and pray with your consideration that you will grant him this well deserved compassionate release.  I am fortunate to live next door to my brother Robert and sister Victoria-where Dad will reside shall you grant him this.  It would be my honor to take care of my dad the way he has taken care of me and my family all these years.

I thank you, Your Honor, for taking your time in reading my plea to you; my father is a loving, kind, respectful man; he is one of a kind, and he deserves to be home with his family.  Again, I appreciate you taking this into consideration; may God Bless you.

Respectfully yours,

Catherine DiBenedetto
Catherine DiBenedetto

**A. 69**

Case 1:90-cr-00446-FB     Document 1236-1     Filed 04/24/26     Page 70 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13  Filed 06/09/23   Page 4 of 26 PageID #: 1982
2389

Honorable Judge,

I am writing on behalf of my father who has been incarcerated now since 1992.
Your Honor, I am pleading with you to grant him his freedom and allow
whatever remaining years he has left to be spent at home with our family. He
has served enough time and deserves to be comfortable in the presence of his
children and grandchildren. Prison isn't a suitable environment for any elderly
man going on 89 years of age, let alone one with deteriorating health issues.

Even without him present, throughout a majority of my life, he is, was, and
always will be my heart, soul, and inspiration! My dad always pushed me to be
a better person each and every day. I graduated from two top tier academic
schools: Archbishop Molloy and St. John's University-maintaining good grades
and always staying out of trouble. Without my father's positivity and guidance
I'd have never been able to get through those years, as well as many other
tough life choices and experiences there after.

Graduations, holidays, birthdays, and family gatherings were never the same
since I was 13. In fact, I suffered bouts of depression and seclusion, feeling lost
and alone, but it was my father who pulled me out of such dark moments. I
can't begin to express how much of an impact his wisdom and advice helped
me during those rough times in my life.

He has missed out on seeing all of his grandchildren grow up, and may I say,
each and every one of them have flourished with their lives and careers because
of his sound advice and influence.

Besides being away for three plus decades, he has suffered dearly hearing
about loved ones who have passed on. The saddest and most tragic of them all-
the passing of my mother, his beloved wife. My mother lost her battle to lung
cancer in February of 2012, and because she couldn't travel due to intense
chemo treatments, my father never got a chance to say goodbye in person.
What made it worse was that I had to let him know through a phone call that
she had passed. Till this day, I never got over that experience and probably
never will. At first glance I thought it was hard for us, but then put myself in
my father's shoes hearing that news, and it broke my heart even more so
considering where he was.

**A. 70**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 71 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13 Filed 06/09/23    Page 5 of 26 PageID #: 1983
2390

I can't begin to express how devastating that experience was for our entire family. Yet, through all the hardships, I never once heard my father complain about his situation. He was and still remains upbeat, pushing us all to stay together because after all, family is everything. He is the true definition of a man's man, and I can only hope one day to be half of what he is.

I live with my sister, while my other sibling lives one house over. We can easily tend to him at home 24/7 with round the clock love and care. Whatever good years he has left should be spent with us. Please grant us this wish and show sympathy, Judge. Due to the Covid-19 epidemic none of us have been able to visit in three and a half years. We are all heartbroken, Your Honor. It's a helpless feeling as a family to not be by his side.

Currently, he needs assistance walking, and due to his condition, he can no longer send messages on the computer or write a letter home. His cellmate has to push him in a wheelchair each and every day, even assist for a simple phone call. On a side note, my father has been a model prisoner for all 32 years of his incarceration. Not one single altercation or issue with any other inmates or even a guard. Even his past warden loved him and said if it were his decision, he would have been home already. I apologize for this long winded letter; please show compassion, and grant my father his release. At his age, he deserves a second shot at freedom. Please, Judge. Thank you for taking the time to read this, Your Honor. Much appreciated....

With respect,

Robert Amuso

**A. 71**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 72 of 116 PageID #:
Case 1:90-cr-00446-FB   Document 1223-13 Filed 06/09/23   Page 6 of 26 PageID #: 1984
2391

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:   Vittorio Amuso

Dear Your Honor,

    I humbly appeal to you for the compassionate release of my stepfather Vittorio Amuso.

    This man has been above and beyond a father to me and my sister. He took us in and raised us as his own. He has always been a supportive loving father. Always rallying for us to be the best person we could be. Whether it was instilling values like family, manners, church, attending parent /teacher conferences or just a kind ear to listen, he was always there. He wanted nothing but us to be kind and decent people. I believe he has succeeded in that judging by the people we are today.

    Our Dad is turning 89 years old. Although he may look amazing for his age, he does have multiple health issues and will require much more assistance as he ages and his health deteriorates. It would be a privilege and an honor to be able to take care and assist him and be able to return the love and care he gave to us. I feel in my heart of hearts he has served a very long tough road of time in prison, yet through it all he has shown to be a model inmate who respects authority and is very humbled.

    He has nothing left but a love of his family and this beautiful country we are privileged to live in. I ask you with the utmost respect for compassionate release. I pray in Jesus's name this will happen. For the sake of family and whatever little time is left on this earth for any of us, please let him come home to his family.

Respectfully Submitted,

*Michele Vasti*

Michele Vasti

**A. 72**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 73 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13    Filed 06/09/23    Page 7 of 26 PageID #: 1985
2392

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:   Vittorio Amuso

Dear Your Honor,

     I humbly appeal to you for the compassionate release of my father-in law Vittorio Amuso.

     Sadly, my relationship with my father-in-law has only been through visits, letters, and phone calls. He welcomed me as a son in law immediately and has only shown me kindness, love and respect over the years and has expressed his gratitude for me being a loving husband and father and he will always joke with me about me being a Dallas Cowboy fan.

     He has been an advocate of my children's education and expressed how important a college education is. He has followed their academic and athletic achievements and milestones from kindergarten throughout college. Over the years he has always been selfless and compassionate in our conversations and only expressing concern for the wellbeing of my family and me.

     Over the years while being incarcerated he has had to endure time away from his family, not being able to be there to witness his children and grandchildren grow up, or to be there as family members suffered from illness and passed away and see any family members for close to three years due to the pandemic and throughout this all he keeps a positive spirit.

     As we grow old one realizes that life is short and what we cherish the most is the memories one gets from there family, it could be a child's first steps, a sunset with loved ones, the smell of sauce on Sunday, or anything else that by only being in the present can create a memory. Your Honor, please grant Vittorio Amuso compassionate release, so he can be surrounded by family and loved ones for his remaining years.

Sincerely,

Carl Vasti

**A. 73**

DocuSign Envelope ID: BB6CB9EB42D31-4147-968A-B4101FBC756X
Case 1:90-cr-00446-FB    Document 1223-13    Filed 06/09/23    Page 8 of 26 PageID #: 1986

Dear Your Honor,

I hope this letter finds you in good health. I am writing to you today with a deep sense of urgency and a plea for your compassion. I would like to bring your attention to the case of my grandfather, Vittorio Amuso, who has been incarcerated for my entire life. I kindly request your consideration of granting him compassionate release based on his age, declining health, and the profound impact it would have on our family.

At the age of 88, my grandfather is advancing in age and facing the reality that he does not have many years left. His health has deteriorated over the years, with various medical issues requiring ongoing care and attention. It deeply saddens me to know that my relationship with him has been limited to sporadic visits and short phone calls due to his lengthy imprisonment. I long for the opportunity to foster a stronger bond and create lasting memories with my grandfather, especially during this critical time in his life.

One aspect of my grandfather's character that has always stood out to me is his unwavering advocacy for education and his insistence on staying away from negative influences. Despite his circumstances, he consistently emphasized the importance of academic excellence and personal growth. Throughout my educational journey, my grandfather was a pillar of support, constantly encouraging me to pursue my dreams and achieve my goals. His guidance was instrumental in my graduation with Honors from Stevens Institute of Technology..

Furthermore, my grandfather's influence extends beyond academia and into my professional life. Currently, I serve as a manager for a leading financial technology company, a position that I owe in part to his unwavering support and guidance. His advice and wisdom have shaped me into the individual I am today, and I am forever grateful for the impact he has had on my career.

Considering the circumstances, it would mean the world to me and our entire family if my grandfather could spend his remaining years at home, surrounded by loved ones. The opportunity to create lasting memories, share stories, and offer support during this time would be immeasurable.

In conclusion, I kindly implore you to review my grandfather's case and grant him compassionate release. His age, declining health, and the immense impact it would have on our family make this a matter of utmost importance. I am confident that your compassion and understanding will prevail, and my grandfather will have the opportunity to spend his final years in the embrace of family and love.

Thank you for your time and consideration.

With heartfelt gratitude,

Carl Vasti

DocuSigned by:

*Carl Vasti*

8A2FC7335531404...

**A. 74**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 75 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13  Filed 06/09/23   Page 9 of 26 PageID #: 1987
2394

Dear Honorable Judge,

   My name is Gaetano DiBenedetto, and I am writing this letter on behalf of my grandfather, Vittorio Amuso. He is 88 years old and has spent the last thirty two years behind bars. I can't think of a person more deserving of a second chance than him. Being one of eighteen children his life has never been easy. He was forced to grow up quickly and learn to provide for himself and his family. A task that he has never run away from. I don't know where my family and I would be if  it were not for his love and support throughout our lives.

   I am 33  years old, and even though my grandfather has been away for my whole life, he has played such a major role in making me the man I am today. I don't even think he knows how much of a positive influence he has had in my life. He has shown me so much love and compassion and truly what it means to be a man. Since I was younger, I could always count on his call to bring a smile to my face, encourage me to do my best, and reassure me that I am loved. As I gotten older, that has never changed and has been such a blessing to me. He taught us all the importance of family, and I believe does his best to stay so strong to make sure that we are always okay and united. We have been through a lot as a family, and we always find our way back to each other thanks to the great values and principles he has instilled in us.

Since I was a young boy, I have been dreaming of the day that he would come home. It breaks my heart to think of all the things he missed out on, especially not being able to say goodbye to my beautiful grandmother. I ask you, Your Honor, to please take my grandfather's compassionate release into consideration. He has been a model inmate, and deserves nothing more than to be able to spend his last remaining years with our family. I thank you for your time and consideration.

Respectfully yours,

Gaetano DiBenedetto

**A. 75**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 76 of 116 PageID #:
2355
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 10 of 26 PageID #: 1988

Dear Your Honor,

My name is Teresa DiBenedetto, and I am a 35-year-old Family Nurse Practitioner and the granddaughter of inmate Vittorio Amuso. I am writing today to request a compassionate release for my grandfather, who has been incarcerated for 32 years and is now 88 years old, effectively serving a life sentence.

Throughout his time in prison, my grandfather has been a model prisoner. Despite the challenges he has faced, he remains strong in spirit, faith, and committed to leading a meaningful life. As his grandchild, I have had the privilege of communicating with him throughout his incarceration and can attest to his good character and positive influence on my life. Although not being physically present, My grandfather never ever forgot a birthday or special event in my life. He went above and beyond to "be there" when in reality he couldn't be.

During my journey through nursing school and becoming a Family Nurse Practitioner, my grandfather was a constant source of support and encouragement. Despite his own difficulties, he never ceased to encourage me to pursue my dreams and helped me in any way he could. One of the most significant ways he supported me was by sending me books related to my studies. He even wrote notes of encouragement in the margins of the books, which motivated me to continue working hard towards my goals.

However, his absence has caused immeasurable pain and suffering for our family. My grandmother passed away without him by her side. His children and grandchildren, including myself, have grown up without being able to physically have him present. The very few early memories I have with him, which are repeated every phone conversation, are my most cherished. I would give anything for one more new memory with him.

Furthermore, my grandfather's health has significantly deteriorated since his incarceration 32 years ago. He suffers from heart complications, prostate complications, and severe rheumatoid arthritis, which have made his living conditions unbearable over time. Due to his rheumatoid arthritis, he has a significantly reduced ability to perform daily activities and self-care, which can lead to increased reliance on others for assistance. Older adults like him with rheumatoid arthritis are at a higher risk of developing infections, and being in a confined space like a jail can increase the risk of exposure to infectious diseases. This risk is further compounded by the COVID-19 pandemic, which has disproportionately affected my grandfather, who has already suffered through Covid twice.

**A. 76**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 77 of 116 PageID #:
2356
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 11 of 26 PageID #: 1989

Individuals with rheumatoid arthritis require ongoing medical care to manage their symptoms and prevent further complications. In a jail setting, access to medical care may be limited, and delays in receiving treatment can lead to worsening of symptoms and other health complications.

Overall, my grandfather's health is in an extremely fragile state. His rheumatoid arthritis, along with other comorbidities, can be a complex and challenging experience, as it can exacerbate the physical and emotional burdens of his condition while limiting access to appropriate medical care and support.

As a practitioner, I believe that my grandfather's comorbidities and current health status qualify him for a chance to live out his few remaining years in a safe and caring environment. He has a loving family that is begging for a chance to support him during this difficult time, and for the opportunity to provide him with the care, love, and support he needs during his remaining years.

I respectfully request that you consider my grandfather's case for compassionate release. I want to thank you for hearing my voice, and I appreciate your time and attention to this matter. Please let me know if you require any additional information or support from me.

Sincerely,

Teresa DiBenedetto

**A. 77**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 78 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13    Filed 06/09/23    Page 12 of 26 PageID #: 1990
2357

Dear Your Honor,

I am writing this letter in hopes of compassionate release for my grandfather, Vittorio Amuso.

For as long as I've been alive, I have mostly only been able to hear my grandfather's voice through brief phone calls, with exceptions to a few face-to-face visits. Despite these circumstances, we always valued and cherished every moment we had to speak together. A grandfather ultimately holds a special place in a person's life, as he played a pivotal role in providing guidance and assurance when I was growing up. Every time we spoke, he always told me to "stay in school and to keep up the good grades". I have now graduated from Rutgers Business School this past month, and it pains me that he wasn't able to see me walk down the aisle for graduation, because I know he would be so proud. Over the past decade, I have grown and accomplished so much and was only able to share these achievements through a timed phone call. I know this was painful for both of us, but no matter what I was always able to see how much love he had for me.

With that being said, time doesn't stop for anyone. I am now 21 years old and have never been able to see my grandfather outside guarded walls. With compassionate release, then can all change and he can spend his remaining years with the comfort of his loved ones.

Sincerely,

Thomas Vasti

*Thomas Vasti*

**A. 78**

Case 1:90-cr-00446-FB  Document 1236-1  Filed 04/24/26  Page 79 of 116 PageID #:
2358
Case 1:90-cr-00446-FB  Document 1223-13  Filed 06/09/23  Page 13 of 26 PageID #: 1991

Your Honor,

My name is Vittorio (victor) DiBenedetto, I am the grandson of Vittorio Amuso. I am currently 30 years of age and I work for an Investment Bank (IBCM) on the Financial Crimes Advisory Team for Wells Fargo. It is a genuine honor to write this letter to you in perchance and in favor of that Vittorio Amuso can come home to his loved ones. When I was born, 30 years ago, my grandfather was sent away for a life imprisonment. Since then, it has been a very elongated time since I last saw his face, only to have the opportunity to hear his voice and to write incessantly letters to one another.

However, most recently when speaking to my grandfather on the phone, I heard a big difference in his voice, this was ultimately heartbreaking for me. After all these years, I finally realized the toll to which this all had impacted his life and in correlation to all of our lives, friends, and family who loved him so dearly. Presently, my grandfather is not in good health, and I believe that age bears on his well-being. During past calls, he would say "Hello I am doing great", "Papa is very strong", and "doing push-ups and a lot of reading". Continuously, he would call daily, to help us move forward in our lives without once ever making us feel any sympathy for himself. He would remember every little detail of each of our lives and aided us mentally to look past as he would say "This too shall pass", or to make sure the family and friends would stick together. I live by that quote because of him. Strong meaning...because we all have those days when we feel so amazing or the days when we can feel so down. Therefore, this too shall pass, in both good and bad times of our lives, we need to be humble in life, and just be good to one another because in the end that's what life is about. These are the many lessons that my grandfather taught me, and I can say for a fact, I grew up to be an "amazing young man" as he would tell me, and this is because of him. Selfishly, me included, people would complain to him, whether about their struggles or what we (liberated people) were experiencing outside of a prison wall. Not to realize how strong his words were. Every time (beginning from my childhood years), that I would go to the local store, gym, library, etc., I would be approached by someone, who would reflect on my grandpa. They would begin to tear up or laugh when telling me a memorable story they shared with him. To me, portraying the narrative of everyone's opinion of him, he was a hero, who helped many people during the bad times and even good times. He continuously showed his support and gratitude for his loving family, friends, and strangers.

Reflecting on the many years that have passed, family members passing away, birthday celebrations, academic achievements. weddings, engagements, and anniversaries, etc., were the years without our grandfather here to experience it with us. And for the most recent event March of 2020, due to Covid restrictions, we were not able to visit my grandpa in person. It's been a huge stress on everyone to

**A. 79**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 80 of 116 PageID #:
Case 1:90-cr-00446-FB    Document 1223-13    Filed 06/09/23    Page 14 of 26 PageID #: 1992
2359

hear his voice, noting his age now, and not being able to visit him, is a real burden on all of over lives. It would be only right and righteous to let my grandpa share his last memories at home with us, for us to take care of him before his last breath. Enjoying the few days or years he has left on this earth with his family. I prayed for years for this day to happen, also during when my beloved Grandma was alive. However, I know she is watching down on all of us, and it would be a great honor to show my grandma that he has made it back in the home reunited with his family and loved ones.

It is my sincere hope that the court finds this letter from my heart and in careful consideration to let Vittorio Amuso return to his family after all these very long tiresome years of pain. Thank you very much for taking the time to read what I had to say, it truly means the world to me.

Best Regards,
Vittorio Robert DiBenedetto



A. 80

April 29, 2023

Dear Your Honor,

I hope that this letter finds you well. My name is Marie A. Swierkowski and I am the older sister of Victorio Amuso. I am ninety-eight (98) years old and have asked for my words to be typed so that you do not struggle with reading my handwriting.

Our parents had eighteen (18) children. Our mother died in 1955 at the age of sixty (60). Victorio and I have lost most of our brothers and sisters, there are only four (4) of us alive at this time. I am the only sister left and our living brothers are Dominic and Rudy. Rudy has incurable cancer and Dominic has a severed nerve in his spine and is not fully mobile. As I approach my 99th birthday on June 15th I am reminded that there are no friends or relatives left who have even met our late brothers and sisters. I am a widow. My brother Victorio is my emotional companion.

My oldest son Edward recently had a life altering stroke leaving my son Joseph to look after me. My son Joseph temporarily moved me into the home of a friend, Christina Puglisi, who at the age of eighty (80) cares for my physical needs. I feel as if I have been casted aside. My son Joseph is doing the best he can but I am told that my elder son's needs must take priority over my own. My brother Victorio is the only one who provides me with genuine love. He has never forgotten me.

Victorio asked me not to visit him during the thirty-two (32) years that he has been incarcerated. Victorio was more concerned about what I would be required to endure at the prison than for his own desire to see me in person. Victorio's calls have been the best medicine for me. Victorio's calls help me to carry on.

I do not know what more to say or how to express myself to you in a way that would convince you to allow my brother to return home before we both pass. I will pray to God for your decision.

Thank you.

With the utmost respect,

*Marie Swierkowski*

Marie N. Swierkowski

c/o 216 Fox Ct., Merrick, NY 11566

**A. 81**

# FAGENSON & PUGLISI, PLLC
## ATTORNEYS AT LAW

450 SEVENTH AVENUE · SUITE 704
NEW YORK, NEW YORK 10123
TEL: (212) 268-2128
FAX: (212) 268-2127

LAWRENCE M. FAGENSON
CONCETTA PUGLISI
NOVLETTE R. KIDD

OF COUNSEL
MARK BRETTSCHNEIDER
STEVEN CANDELA
SCOTT G. CERBIN

May 8, 2023

Re: Victorio Amuso

Dear Honorable Court,

I submit this letter for the Court's consideration on behalf of Victorio Amuso. Please note that I am not the attorney of record for Victorio Amuso nor have I been retained/paid by Mr. Amuso to write this letter.

I was a young child when I met Victorio Amuso and several of his siblings. Very few Italian-American families from my childhood have family members who have attained college educations or law degrees. Therefore, I am the only attorney that many from this older generation feel comfortable reaching out to. I have been called upon for decades to provide legal advice and do basic family-related legal work for this first generation of Americans. Now most are gone.

In 2012, Mr. Amuso's children reached out to me when their mother died for help with their mother's estate. I had an opportunity to work with Mr. Amuso as the attorney for his late wife's estate. Mr. Amuso at that time was pensive. I witnessed a man who, although unable to mourn with his children in person, expressed no anger towards God, no anger towards the Court and no anger against the prison personnel. The house owned by Mr. Amuso's wife is now owned by their children. The Amuso family remains in this very home to which Mr. Amuso hopes to one day return.

More recently in 2022, Mr. Amuso's ninety-eight (98) year old sister, Marie N. Swierkowski, temporarily began being cared for by my eighty (80) year old mother. Needless to say, the "Golden Girls," as I refer to them, require my assistance on many levels. I am often present in my mother's home when Victorio Amuso calls to speak with his sister. Due to Ms. Swierkoski's hearing loss, the calls usually take place while the phone is on speaker mode. This has allowed me to hear promises of prayer exchanged between Mr. Amuso and his sister. Mr. Amuso has spoken to me at times as well. Mr. Amuso's words lead me to believe that Mr. Amuso relies on his Christian faith to get him through life behind bars.

It is my hope that the Court is able to reach a decision that favors Mr. Amuso without pause or hesitation.

Respectfully submitted,

Concetta Puglisi

**A. 82**

April 29, 2023

Dear Your Honor:

Please accept this letter as evidence of the care and love that I have witnessed expressed by Victorio Amuso.

I am the life-long friend and caretaker of Marie N. Swierkowski, the sister of Victorio Amuso. In the past year, I have watched Marie sit by the phone patiently waiting for calls from her brother Victorio. Victorio provides his sister with comfort. I listen to the calls because Marie is nearly deaf and she can only hear her brother when the phone is on speaker. Victorio patiently listens to his sister repeat stories from their childhood. The calls bring Marie momentarily to a place of happiness. Victorio never fails to call his sister no matter how draining the conversations can become.

I am eighty (80) years old, I could not bear to see my friend Marie placed in nursing home. There is never a month, week or day that goes by when Marie doesn't say to me, "I know Victorio is going to walk in your front door any day now and surprise me!"

I have not heard any anger in Victorio's voice. He never uses profanity or shows any form of agitation. His words are simple and conversations are sweet between Victorio and his sister. Most people have not seen Victorio in over thirty years, so the only way to know his character is through these tender phone calls.

I hope that you can reach your decision in a way that allows you to grant the application being asked of you and Marie's wish to see her brother before they both die be granted.

Thank you.

Sincerely and respectfully,

Christina Puglisi

Christina Puglisi

140 Cheltenham Rd.

W. Babylon, NY 11704

A. 83

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 84 of 116 PageID #:
2405
Case 1:90-cr-00446-FB    Document 1223-13    Filed 06/09/23    Page 18 of 26 PageID #: 1996

Marianne D. Taras
111 SE 3rd Avenue
Apt. 401
Dania, Florida 33004

April 26, 2023

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    Vittorio Amuso

Dear Your Honor:

My name is Marianne Taras. I have one child, a son, named Vincent. We currently live in Florida. We moved from Queens, New York when my son was 7 years old. I am currently working for an Airline since the year 2000. After our move our to Florida in 1976, we have returned to New York numerous times over the years to visit family and friends. Unfortunately, my parents have passed on many years ago.

We were in New York in the early 1980's for a visit and we met Victor through friends. I have respect for the decision the Court made many years ago when Victor was sent to prison. He has been incarcerated for a very long time. This is the reason I am writing to Your Honor.

I would like to tell you a little bit about Victor as we know him. I have deep admiration for Victor, just as he has respect for my son Vincent and myself throughout the years. He is considerate and good natured. I have never heard a vulgar word come from his mouth, even though I have used a few myself! Many summers in the early 1980's my son and I would drive up to New York and spend a few weeks with my family. One year in particular, we ran in to Victor. I will never forget that day even though it was over forty years ago. He looked at the car I was driving and told me there were no threads on my tires and he couldn't believe we drove up to New York like that. He sent us to a gas station to have all new tires put on my car, and he paid the bill. He was so concerned for our safety. Someone does something like that for you, it touches your heart in a special way and you can never forget. We would see him on our visits to New York and he was always concerned as to how we were doing. We couldn't believe he was sent away. I guess it was several months later I found out where he was and wrote to see how he was doing.

Victor and I have corresponded with each other all of these years he has been incarcerated. I consider him a good friend. I have seen his strength and his character in the words he wrote to me. I have read letters from him and many times I have cried. When his brother Bobby passed away, I could feel the pain in heart in the words he wrote to me but I was not able to help him. When he lost good friends and couldn't say goodbye or attend their funerals, I felt the pain that he felt. But the worst time in his life was when he lost his beautiful wife Barbara. He told me he spoke to her on the phone the day before she passed. I could never imagine losing a spouse and not being there with family to make preparations for our final goodby"'s. He was not there with her as she laid in the hospital bed, not holding her hand, not

**A. 84**

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 85 of 116 PageID #:
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 19 of 26 PageID #: 1997
2404

telling her how much he loved her, and not being able to say goodbye for the last time.  No, I
could never imagine this, and never would I want to.

Victor has grown children and has grandchildren.  He doesn't see them, doesn't get to
hug them and hold them dearly close to his heart.  So, I pray to God every night on my mother's
rosary beads.  I pray that he will be sent home, and I will continue to pray nightly.  He needs to
come home and have the opportunity to be with his loved ones, to have the last few years of his
life with his children.  They have suffered greatly being away from him over thirty years.  I hope
they will get to see him again, even if it is just for a little while.  I pray with all my heart.

I thank the Court in advance and I pray for consideration to let Victor walk out and be a
free man once again after all this time.  I have no doubt in my mind that he has been an
exceptional inmate.

I can be available for confirmation of this letter either by phone or e mail.  Please do not
hesitate to reach out to me if needed.


Sincerely,


Marianne D. Taras
954-288-7879
Mariannetaras107@gmail.com

**A. 85**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 86 of 116 PageID #:
2405
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 20 of 26 PageID #: 1998

Dear Judge,

I am writing this letter in support of my dear friend Vittorio Amuso in hope that my story would help you look favorably upon his request for compassionate release.

My name is Vincent Luccisano and I have been blessed to know Vic since I was a child. My earliest memories of Vic were of his warmth, humor and intelligence. He always took time to patiently listen to the nonsense that a young boy would indulge in. He also impressed me with his knowledge of history and encouraged my curiosity and my desire to learn.

When my father passed away at 45 years old I was 20 years old. My young, widowed mother, three younger sisters and I were thrown into a state of sorrow and uncertainty. The love and friendship that Vic brought us at that difficult time was a Godsend and I will never forget his kindness to my family.

Vic and I exchange letters regularly and it is apparent to me from his writing that his health has seriously diminished. While he used to write about keeping strong and active he now talks about his pain and ailments. I've never known him to complain and this makes me worry that his condition is possibly more advanced than he let's me know.

His family has suffered many losses including the loss of Vic's dear wife Barbara which I know was particularly hard for Vic. I respectfully hope that due to his advanced age and diminished health you would look favorably upon his compassionate release. It would be a blessing for his friends and family to see him return home to spend his years with his children once again.

Gratefully yours,

Vincent Luccisano

**A. 86**

Character Letter - Vittorio Amuso - Reg#38740-079

From:  Tary Gilbert (tary.gilbert@gmail.com)

To:    dipietrolaw@yahoo.com

Date:  Friday, April 28, 2023 at 10:16 AM EDT

Anthony DiPietro, Esquire
15 Chester Ave
White Plains, NY 10601

I am writing in reference to Vittorio Amuso. It is my understanding that his petition for compassionate release is due to be heard by the courts in the near future. I had the pleasure and honor of not only meeting Papa Vic but living with him for over a year at FCI Cumberland. It is my hope that my words expressed in this letter will contribute to your efforts in allowing Papa Vic to spend the remaining years with his family and loved ones.

When I first arrived at FCI Cumberland and eventually made it over to Unit C-2, I noticed an older gentleman who routinely walked laps around the unit and was very cordial to all whom he came into contact with. After a couple of days of being on the unit I had the opportunity to introduce myself to him and we exchanged pleasantries. I was intrigued at how he carried himself and at how good of shape he was in at his age. I did not know who he was or why he was in there. My impression of him was that he was very courteous and respectful. I soon ended up moving into the cell right next to him and eventually became friends with his cellmate, Ryan Randles. As I started to get to know Ryan, I also started to interact more and more with Papa Vic as I would routinely share my homemade apple pies with them. He graciously accepted my apple pies even though Ryan probably ate most of them.

While going about my daily routines I would see Papa Vic be very active by walking the unit as well as going out the recreation yard to do pull-ups and dips. I was amazed at how active he was as well as the physical shape he was in. He told me that it was very important for him to stay in good physical shape.

Ryan left to go home in December of 2021 and shortly after Papa Vic came and asked if I would move in with him. He saw how I carried myself and that I was not involved in drugs or anything of the sort. Shortly after moving in with him, we went on Covid lock-down. During the lock-down he continued to do push-ups and curls in the cell on a regular basis. After moving in with him I learned about how much he liked to read. I was amazed at the number of books that he read and also about how he remembered every book that he read and would tell me about the different stories in the books. I asked him about all the books that he read, and he told me that they can take his physical freedom, but they can never take his mind. Reading those books allowed for him to vicariously experience freedom that was so far from his reach.

While living with him I also got to learn about what type of man he is now, not what is depicted in the "Made for Hollywood" shows and articles that you may read or watch. I learned that he loves his family dearly and that he has a soft spot for birds and squirrels. While not on lockdown he would feed the animals on a daily basis even if it meant that he would go without. Not only that but he also had a heart for others. If he noticed that someone didn't have much of anything, he would give them whatever they needed. He would go without just so that someone else would have some coffee or food. He would routinely make wraps/burritos and pass them out to others. You could see that is warmed his heart to see others enjoy his cooking.

In addition to this he would often talk to me about how I need to get back home and take care of my mom. He would tell me that I didn't need to fool around with drugs and the fast women. He would preach to me about working an honest job and providing for my family. I learned how much he respected the honest and hardworking man that provides for his family. He made me promise him that I would stay away from the drugs and that I would dedicate my life to being a family man. I made that promise and I am keeping that promise.

I tell you all this because a lot changed over the last six months that he was at FCI Cumberland. In August of 2022, we both contracted the corona-virus and were sent to the SHU for quarantine. This was not the first time that Papa Vic had covid, but this is when I started to notice a big change with him. His exercise routine changed as he was not walking around as much, nor was he going to the recreation yard anymore. He would still do push-ups in the cell but he also started to cut back on those. The pain in his hip and leg started to become unbearable. He has previously gotten

**A. 87**

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 88 of 116 PageID #:
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 22 of 26 PageID #: 2000
2467

cortisone shots in his leg to help with the pain.   I believe that the last shot that he received was back in March of 2022. These shots would help with the pain that is caused from his arthritis.  He started requesting these shots again from the medical staff early in September or even sooner but never got any relief.  His requests were ignored time after time.  All the while, his pain continued to get worse and worse.  I was able to secure a couple of large zip lock bags and would fill one of them with 190-degree water and double bag it, placing it on his thigh to act as a heating pad.  We would do this pretty much every night right at lock-in.  We were trying just about everything to help him with his pain.  Remind-you, neither one of us were medical professionals.  He was desperate to get some relief from the pain as it had started to keep him up at nights.

During this whole time, he wasn't even able to walk up to the chow hall to get his own food.  The pain was starting to cripple him.  I saw him change right before my eyes from a vibrant highly active older gentlemen, to a frail decrepit man. Though, he would never complain or allow for his family to know what kind of pain he was in on a daily basis.  It broke my heart to see him suffering like this without any relief or without any of the medical staff caring that he was in so much pain.  My eyes are tearing up writing this letter.  It was heartbreaking watching him deteriorate right before my eyes.  It had gotten to a point where we needed a wheelchair to take him back and forth to his medical appointments.  Though, he continued to walk in the unit with great trouble.

I say all this to let you know that it is in-humane to continue to allow him to be locked up without any real medical care. It is my understanding that the BOP is unable to properly treat Rheumatoid Arthritis.  This man needs to be treated by medical professionals who are trained and able to treat this medical condition.  It is my sincerest hope that the courts grant this man the compassion that he needs and that he can spend his remaining years surrounded by his loving family where he will get the care that he deserves.

Sincerely,

Tary L. Gilbert
8525 Mc Cann Rd
Kensington, OH  44427
tary.gilbert@gmail.com

**A. 88**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 89 of 116 PageID #:
2468
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 23 of 26 PageID #: 2001

Jeremy Fontonez
Reg. No. 56997-066
FCI Cumberland
P.O. Box 1000
Cumberland MD 21501

Anthony Dipietro, Esq.                                    May 1, 2023
15 Chester Ave.
White Plains NY 10601

In Re:   Acknowledgement Letter For Victorrio Amuso.

Dear Mr. Anthony Dipietro, Esq.

I am writing this letter on behalf of Mr. Amuso. I was housed with Mr. Amuso at FCI Cumberland for two years, living on the same housing unit. This is my brief testimonial.

Mr. Amuso was always well respected by his peers, and he always showed respect and concern for others. He was outgoing and sociable, but always in a positive way. He spent much of his time in his cell reading books, which, in fact, was one of his favorite past-times: Trading books to read with others.

A great personality trait of Mr. Amuso was that he was always willing to extend a helping hand if he saw someone in need. His mind is still very sharp, and so, if given the chance to go home, one day, he would not be a drain on society. Besides, he has a great family support, so he would do very well in society.

I believe that Mr. Amuso has paid his debt to society. After so many years in prison, he has shown an understanding of the world he left behind, and he surely would not pose any future threat to the community.

Thank you for your consideration.
Sincerely, Jeremy Fat

**A. 89**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 90 of 116 PageID #:
2469
Case 1:90-cr-00446-FB    Document 1223-13    Filed 06/09/23    Page 24 of 26 PageID #: 2002

John C. Berkery, MA, CPL
Certified Paralegal
2115 Fairwold Lane
Fort Washington, PA 19034
(215) 380-1939
law_fed.state@yahoo.com

April 21, 2023

Re: Letter of reference for Vittorio Amuso

To Whom It May Concern:

I write on behalf of Vittorio Amuso, a prisoner at FCI Butner, Reg. No. 38740-079. Mr. Amuso is a 90-year-old man who has been imprisoned in the Federal system for 32 years. I am a retired paralegal and have been in touch with Mr. Amuso as a pen pal for the better part of twenty years.

During that time, I believe I have gotten to know Mr. Amuso very well. I have found him to be intelligent, brave, and loyal. He is a very honorable person. I've watched as he bore up under the loss of his wife, and the onset of serious medical problems. He has difficulty seeing at this point, and has been beset with crippling arthritis which is getting progressively worse; at present he is on a walker, all this in addition to having heart problems. Still, he has maintained his spirit. He has always been incarcerated outside driving distance for his children, yet still he doesn't complain.

If anyone ever deserved compassionate release it is this man. Half his adult life has been spent behind bars. And at this point, the only hope that remains for him is that in these his few remaining years (or remaining year or months as the case may be) the government will show the mercy and humanity to grant him Compassionate Release and release him into the eager hands of his children who will provide for him during the limited time he has left. Without going into the merits of the crimes of which he's been convicted or minimizing them, suffice to say they're no worse than similar inmates who have been granted this relief. I doubt if many could match Mr. Amuso's hardships. Therefore, I implore you to please rule favorably on Mr. Amuso's Petition.

Respectfully yours,


John C. Berkery, CPL

**A. 90**

Case 1:90-cr-00446-FB     Document 1236-1     Filed 04/24/26     Page 91 of 116 PageID #:
Case 1:90-cr-00446-FB     Document 1223-13   Filed 06/09/23   Page 25 of 26 PageID #: 2003
2410

Honorable Judge,

I hope this letter finds you well and thank you in advance for your time and attention to it.

My name is Steven Bisciello, I am an upstanding, contributing member of society and I have been honored and blessed to be a close friend of Vittorio Amuso and his family ,most notably, his son Robert Amuso for the past 40 years.

I am writing on behalf of both Vittorio Amuso and equally important, his loving family. Vittorio's son Robert and I grew up together from first grade to present day and I have been a first-hand witness of the difficulty and strife Robert and his family suffered throughout  (and continue to) Vittorio's incarceration.

***This letter is a humble, respectful and gentle request to you, your Honor, as you have the beautiful gift to provide "Mercy".***

Respectfully your honor, "Mercy" is attributable to the multiple parties involved in this hearing.

First, Vittorio is approaching 89 years of age. He has been blessed to remain relatively healthy and strong during the bulk of his 33 years of strict incarceration, during which, he has been a model prisoner with zero disciplinary issues with both correctional staff and inmates.  As he approaches 89, his health has deteriorated and will continue to do so do to a combination of continued incarceration, inability to obtain multiple levels of health care and his current, long-term ailments.

Vittorio's "Mercy" will be the ability to obtain the around the clock care he needs outside of the correctional system, provided directly by and at the expense of his beloved family.

His family, specifically his son Robert, Robert's siblings and Vittorio's grandchildren, will take Vittorio in and take care of him for the remainder of his life.  This "Mercy" upon Vittorio not only will positively affect his physical health, but equally important, Vittorio's emotional and mental health which I hope and pray  extends his life further and allows him to live out his remaining days a free man amidst his loved ones.  This also gives Vittorio's family the ability, to attempt to make up "for lost time" and honor one another in the remaining years of Vittorio's life.  After a serving of 33 years as a model prisoner, I respectfully believe your honor, that Vittorio has paid his debt to society and has earned the right to finish his life with and in the care he needs.

Your Honor, you also have the beautiful ability to not only provide "Mercy" to Vittorio but to grant "Mercy" to a larger group; Vittorio's family.

**A. 91**

Case 1:90-cr-00446-FB    Document 1236-1    Filed 04/24/26    Page 92 of 116 PageID #:
Case 1:90-cr-00446-FB   Document 1223-13   Filed 06/09/23   Page 26 of 26 PageID #: 2004
2411

Page 2

As I referenced earlier, I have witnessed directly the stress, anxiety and continued sadness suffered by both Vittorio's late-wife , their children and grandchildren, whom have been without the direct, tangible care and oversight/guidance of their husband and father.

Vittorio did his best to guide and support from afar and yet In spite of this large void, Vittorio's family have and continue to establish and advance themselves as professionals in their careers, community and have always given without the thought of reciprocation. This is a direct reflection of their father's guidance and the character he instilled in them in spite of his situation.   The family is a beautiful composition of business owners, health care professionals, banking and garment professionals and laborers. Upstanding, god-fearing and productive members of our society.  Statistics show that children of incarcerated parents typically tend to veer down an incorrect path and in the case of the Amuso's, nothing can be further from that narrative.  Again, this is a direct testament to Vittorio's care and tutelage to his family from afar.

Their "Mercy" your Honor, will be to have back, although for an unknown period of time, this tangible love, the closure of this deep void, and a direct healing of the pain and suffering they have endured these past 33 years. It will provide them the opportunity to return that love from afar, but in personal, close quarters that they have so longed ofr, even more so in the past 3.5 years due to the pandemic and its effect on visitation.

 A stroke of your pen your Honor, can provide second chances to not only Vittorio, but to his children and grandchildren, and deeply touch and positively affect so many while also setting a positive ripple effect from their family further into the community they serve.

Finally your Honor as I am sure you are aware, you can grant "Mercy" from a financial perspective, to the state and Dept. of Corrections.  According to publishing's by respective state's websites as well as the Dept. of Correction's website, the  range of costs to house an elderly inmate can be approximately $70,000 to over $110,000 per year and these costs will increase as health ailments and natural aging progresses. Your power and the opportunity at hand your Honor can provide a balanced, positive effect to all parties involved.

Your Honor, I will humbly close with another respectful and gentle request to please use this gift that you possess to grant "Mercy."

I thank you again for your time and consideration.

With sincerity and respect,

Steven Bisciello

A. 92

D&P

*LAW OFFICES OF*

# MURRAY RICHMAN
*and Associates*

2027 Williamsbridge Rd., Bronx, NY 10461
Tel (718) 892-8588 | Fax (718) 518-0674
mrichman_mr@outlook.com

U.S. DISTRICT COURT E.D.N.Y.
★ AUG 2 2023 ★
BROOKLYN OFFICE

July 27, 2023

Judge Frederic Block
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

CR-90-446 (FB)

Re: Vic Amuso
Endorsement For Compassionate Release

Dear Judge Block:

I write this letter in support of an application for compassionate release on behalf of Victor (Vic) Amuso. This letter is without his request, nor was it requested by his attorney.

I write because I have known Vic for over fifty years. Admittedly, I represented him in a matter in Bronx County in the 1970s. That was the basis of my knowing him. I saw him periodically; it was always in a favorable manner. He was always a gentleman and displayed his concern for me and my family on the death of my wife some 23 years ago.

While he was in jail, we wrote to each other for a while always on non-legal issues; and frankly I looked forward to enjoying a nice verbal relationship. We sometimes forget that we view the person accused/convicted of a crime at his worst moment and forget he is also a person. I do not know about his current conviction except what I read in various and sundry articles about him.

We communicated on a frequent basis for a while but that ended when I was visited by the FBI inquiring whether he was sending me messages in code because they did not understand two words in his letters which they obviously had read before I received them. The words were "gezunt and parnassus" which means health and success in Yiddish; they thought that somehow these were nefarious messages. I suggested they may benefit from hiring a few Jewish FBI agents.

///

///

A. 93

*LAW OFFICES OF*
# MURRAY RICHMAN
*and Associates*

I am distressed to hear Vic is ill and not faring well. Let me add a third Yiddish word to the menagerie, Vic Amuso is a mensch. I believe he deserves to live out his final years outside of the constraints of institutional life. He is now 88 years old, as I approach that age myself – as the court knows- getting older is not for the faint hearted. The young do not understand and the U.S. Attorneys are all quite young. I urge the court to consider and grant his application for compassionate release.

Most respectfully,

Murray Richman

**A. 94**

THE LAW OFFICES OF

# ANTHONY DIPIETRO, P.C.

**15 CHESTER AVENUE**
**WHITE PLAINS, NY 10601**

**(914) 948 3242**
**(914) 948 5372 FAX**
**DIPIETROLAW@YAHOO.COM**

November 30, 2019

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  Angelo DiPietro

Dear Judge Preska:

I respectfully submit this letter in support of my father, Angelo DiPietro. Serving as my father's lawyer and son, I most humbly ask the Court for its mercy at his resentencing.

The past sixteen years have been extremely difficult. When my father was sentenced to spend the rest of his life imprisoned, a part of me died. The idea that my father, then 47, would never return home (and that he would likely die alone in a prison cell after spending decades in prison) was devastating. There are no words that could ever express the emotional and psychological trauma that ensued. It is a tremendous, daily struggle for me to cope with that reality. Everyday that my father has been imprisoned, I have felt the pain of his absence. If he could only receive credit for every tear shed or heartache felt, he would have returned home long ago.

At the time of my father's imprisonment, I had abandoned the idea of college or any meaningful future. Then, I had never truly read a single book from cover to cover. I was not educationally motivated, nor disposed to a productive lifestyle. When my father's direct appeals were exhausted, everything seemed lost. We had no house, no more money for lawyers, and no hope that he would ever return home. My mother and I were resigned to the basement of my grandmother's home—a one-bedroom with a pullout couch—with nothing left. Our family had virtually lost everything, except our love for each other.

I recall the many nights that I heard my mother sobbing in the middle of the night. I recall the many times I felt her pain as we struggled to pay the bills, including the lowest of times when she had resorted to selling her last belongings to a pawn shop. I recall the pain of our many trips together to visit my father in prison, and the rounds of our broken holidays that came year after year.  Most of all, I recall my mother working tirelessly as a waitress at a diner (holding shifts from 6:00 a.m. to 10:00 p.m.) in order to pay my father's legal fees, and to support me through a then unpromising quest to college.

**A. 95**

Case 1:90-cr-00446-FB   Document 1236-1   Filed 04/24/26   Page 96 of 116 PageID #:
2415
Case 1:02-cr-01237-LAP   Document 459-0   Filed 12/02/19   Page 2 of 3

My journey to becoming a lawyer was fueled by these events, and an inner belief that I could somehow find a way to make all this pain subside. With my Lord, Jesus Christ, as my guide, I found light in the darkest of times. I placed a picture of the Lord and my father's expired driver's license in my sock, carrying with me my purpose from the first day of college until my graduation from law school, seven years later.

When I first attended college, I was on house arrest (hiding an ankle bracelet underneath my clothes) and the statistical prospect of my success was doubtful. Indeed, I was an outlier. I was not an efficient reader, nor tech savvy. I was so unfamiliar with my surroundings that I constructed my first in-class business presentation using a tangible poster board rather than the expected use of Microsoft Word and PowerPoint, which were computer applications that were completely foreign to me until other students had begun their presentations on that day.

Nonetheless, the love for and provided by my parents was my driving force to overcome my limitations on that day and on all the trying days that have since followed. Even on the hardest of days, I always managed to find the right words, the right answer, and the right path home. I know that result was only possible because of my parent's love and the Lord's presence carrying me to the finish line.[1]

I know that my journey as a lawyer and son (and, now as a father of my own two boys and a baby on the way) will remain carried by the same hope and faith that has been at work the last sixteen years. And, I remain faithful that whenever the final chapter is written for my family, the Lord will continue to be ever-present to help bring about a day of glory, rather than one of destruction.

The Court's consideration of my plea for mercy on behalf of both my father and family is most appreciated.

Respectfully Submitted,

/s/*Anthony DiPietro*
Anthony DiPietro

---

[1] The journey ending with graduation of college with a 4.0 GPA and of law school with honors (*Magna Cum Laude*/"Standout From the Class of 2013" (attached hereto)).



**Anthony DiPietro** *Looking back (what I learned from Law School that I did not expect)…* I've learned that the legal profession is not about one's attainment of fortune, fame, or power. Rather, it is a special opportunity for one to undertake a higher calling in life, and embark upon a journey to help correct the injustices of our time. Through this appreciation, I've also come to understand that a good lawyer will speak about unrighteousness and the struggles of oppression, while a great lawyer will seek a way to fix it. *Law school accomplishment(s) that I am most proud of:* Criminal Justice Center Research Fellow, Assistant for Professor Lissa Griffin, Pace Post-Conviction Project, Student Intern, Legal Research Assistant for Jay C. Carlisle II. Publications: Jay C. Carlisle II & Anthony DiPietro, Justice James D. Hopkins: Jurist, Dean, Scholar and Expert on New York Law, 33 Pace L. Rev. 3 (2012); Jay C. Carlisle II & Anthony DiPietro, The Life & Legacy of Lawrence H. Cooke (forthcoming 2013), winning the Carl A. Vergari Excellence in Criminal Law Award. *The most valuable aspect of my legal education was…* Working alongside many great faculty members, especially Adele Bernhard, Lissa Griffin, Jay C. Carlisle II, and Peter Widulski. During our time together, I learned many valuable lessons about the practice of law, life, and morality. It is these professors, among others, that have made Pace Law School a special and unique place, where no goal was too far to reach or obstacle too great to overcome. They are an inspiration to the upcoming generation of lawyers, and a priceless asset to the entire legal community. *Looking ahead (what I'm doing, or hope to do)…* One day, I would like to reflect upon my legal career as a fulfillment of Martin Luther King Jr.'s proclamation that "Life's most urgent question is: What are you doing for others?" Hopefully, I will find a way to serve my community as a zealous advocate of justice, and dedicate my time to helping the weak, unprotected, and embattled members of society whose voices had been unjustly shunned away. *Little-known fact about me*: I'm an antique hobbyist, and enjoy the study of "old master" religious paintings. *Thanks* to all my friends, family, precious fiancée, loving parents, and most of all, my Lord, Jesus Christ, for helping me overcome many obstacles in life, including my journey through law school.

K161dips

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                  v.                        02 Cr. 1237 (LAP)
                                            10 Civ. 199 (LAP)
ANGELO DiPIETRO,

                  Defendant.                Resentencing

------------------------------x

                                            New York, N.Y.
                                            January 6, 2020
                                            11:29 a.m.


Before:

                  HON. LORETTA A. PRESKA,

                                            District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York
BY:   ELI J. MARK
      Assistant United States Attorney

ANTHONY DiPIETRO, ESQ.
      Attorney for Defendant

JOSEPH A. BONDY, ESQ.
      Attorney for Defendant

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

**A. 98**

K161dips

(Case called)

THE COURT:  Is the government ready?

MR. MARK:  Yes, your Honor.  Eli Mark for the government.  Good morning.

THE COURT:  Good morning.

Is the defense ready?

MR. DiPIETRO:  Yes, your Honor.  Anthony DiPietro and Mr. Bondy for defendant DiPietro.

MR. BONDY:  Good morning, your Honor.

THE COURT:  Good morning.

THE DEFENDANT:  Good morning, your Honor.

THE COURT:  Good morning, sir.

Counsel, I have the supplemental presentence report.  Does anyone wish to be heard on it in addition to what's in the written materials?

MR. MARK:  No, your Honor.

MR. DiPIETRO:  Your Honor, I've conferred with Mr. DiPietro, and we are willing to waive all objections that we had preserved in our papers.  As I indicated in the filings related to the habeas, Mr. DiPietro views this day as an opportunity for closure, and hopefully that there won't be need for protracted litigation.

THE COURT:  Thank you.

With respect to the supplemental presentence report, I accept the guidelines analysis set forth at page 2 of the

A. 99

K161dips

report, which concludes that the new total offense level is 41, that the defendant's criminal history is I, and that the guidelines range is 324 to 405 months.

I have the sentencing memorandum from Mr. DiPietro dated December 2; I have the two additional letters with Mr. DiPietro's letter dated December 31st; I have the government's letter dated January 3; and I have the government's letter dated January 3 with the initial sentencing transcript attached. Are there any additional written materials I should be considering?

MR. DiPIETRO: No, your Honor.

MR. MARK: No, your Honor.

THE COURT: Thank you.

Mr. DiPietro, would you like to speak on behalf of the defendant?

MR. BONDY: Your Honor, if I might, briefly. Sorry.

THE COURT: Yes, of course.

MR. BONDY: Thank you.

THE COURT: Mr. Bondy.

MR. BONDY: Your Honor, I'm here today, almost 15 years after a case that I tried, and I tried this case and I met the DiPietro family at that time.

I wanted to stand up briefly and introduce Anthony DiPietro to you properly. When I first met Anthony DiPietro, he had not gone to college. He was a gambling defendant. He

K161dips

did a six-month sentence under house arrest.  Judge Cote imposed that sentence.  And we tried this case before Judge Kram for a lengthy period of time in the summer; very lengthy period of time.

THE COURT:  It was ten weeks, wasn't it?

MR. BONDY:  It was a long time, your Honor.  It was across the street.  I think it was one of the last cases tried in that building before they renovated it.

But after losing that case, which was extraordinarily painful to this family, I remember Anthony as maybe a 21-year-old boy saying to me that he wanted to go to college and that he wanted to go to law school and he wanted to be able to be his father's lawyer one day and see what he could do to try to reunite the family and sit down and just be able to eat dinner with his mother and his father.  And he undertook to do that.  He started his online studies when he was serving a sentence, and he graduated at the top of his class in college. He interned for me in my office as a college student, and excelled at everything he did.

He then went on to law school and tried his first case in this courthouse as my second chair in a matter before Judge Sidney Stein.

Along the way, as you may imagine, we spent a lot of time together, doing a lot of things that were really emotionally significant.  I've hiked with him through the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A. 101**

K161dips

woods; I've been and broken bread with his entire family; I've sat at his wedding, that his father couldn't attend; I've watched his children grow; and I note that his wife is pregnant with their third child today, significant to me because when I tried this case, my wife was pregnant with our third child, who is now 14. When Anthony met my first daughter, she was with baby teeth and 4 years old, and he saw her a couple days ago as she wheeled her wheeling roller into an Uber and went off to college as a sophomore.

But it's been an extraordinary course for this family's life. And I can't tell you how proud I am, and I know that today is awesome and filled with dread for both the DiPietros that are seated before you and the entire family behind us. And so I just wanted to stand up and give you that context for this family, for this lawyer, and for this man who stands before you 16 years, more or less, after the day of his trial.

I will be here to answer questions if necessary, and I am here principally to show support for this family. Thank you.

THE COURT:  Thank you.

Mr. DiPietro.

MR. DiPIETRO:  Your Honor, if I may.

THE COURT:  Yes, sir.

MR. DiPIETRO:  I apologize in advance because I

**A. 102**

K161dips

prepared a statement, because each time I thought about what I would say, I couldn't get past a couple of minutes.

So over the past 16 years, I've thought a lot about this day, the most important day of my life as a son and as a lawyer. I've questioned myself about what I would say if I was ever given the opportunity to address the Court on behalf of my father. How would I communicate the perfect words to your Honor? How would I ensure not to fail on such a day when the stakes could not get any higher?

I now realize there are no perfect words for today's reality. If only your Honor could see my heart or the hearts of those affected by today's proceeding, if you could only see the internal wounds, if you could only have witnessed my father and my family's journey to this day, then I'd know it would be perfect, because your Honor would truly understand that a sentence tempered with great mercy is sufficient but not greater than necessary.

The pressure of this day is greater than anything I've ever experienced. If we were to leave here today with the same result of 16 years ago, then I have failed as a son and as a lawyer, I've failed to communicate to your Honor what needed to be said and to explain the goodness of the man that stands before you. The idea that a failure today could mean that my father would one day die in prison is a devastating reality. That burden and call to duty is something that I hope no other

**A. 103**

K161dips

child or lawyer has to carry before this Court.

I know my father has made serious mistakes that have changed his life and our lives forever, but those mistakes do not define who he is.  I know the goodness of his heart because I have been its keeper.  He is a loving father, grandfather, and friend.  He is a man of great faith and compassion.  And without him and my mother's unwavering love, I would not be blessed to stand before this Honorable Court.

Looking beyond my own testament are the letters your Honor received from those who have been with him the last 16 years.  Numerous prison officials who have no stake in today's outcome have attested to his character.  The account of those officials speak more than a man that works hard in the prison's kitchen.  They tell a story about faith and redemption; they tell a story of a man who knew he had lost everything, a man who knew he would never leave the prison's gates 16 years ago and that his life was virtually over at the age of 47, and instead of dwelling in darkness, he found his way to light.  He achieved many positive things, even serving as a mentor, role model for other inmates who were heading home and leaving him behind.

I don't know what the perfect words are for today.  I just truly hope that in my submission and short words, that I have not failed in communicating to your Honor about the goodness of my father and the changed circumstances that exist

**A. 104**

K161dips

today.

It is now with great trust in the Court and faith in God that I leave my father, my client, and my heart in your Honor's hands.  Thank you.

THE COURT:  Thank you.

Mr. DiPietro, would you like to speak on your own behalf?

THE DEFENDANT:  Sure, your Honor.

I would like to thank my son and Mr. Bondy and my family and friends for all the support they have given me throughout my incarceration.  I would thank the Court for considering my family in connection with today's sentencing.

I know I have made mistakes in my life, and my family has paid the highest price, and for the -- for this I am forever sorry, to them and to the Court, your Honor.

I hope and pray for the Court's mercy, that I be given another chance to be with my family again.  I miss them dearly, and I thank God for them every day -- for them.

Thank you, your Honor.

THE COURT:  Yes, sir.  Thank you.

Does the government wish to be heard?

MR. MARK:  Your Honor, the government rests on its submission and as well as the statements that were made during the initial sentencing both by the assistant US attorney who handled that case and the trial and who ably described the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A. 105**

K161dips

facts and circumstances there, and set forth the recommendation at the initial sentence, as well as Judge Kram's remarks after presiding through the first trial and her assessment of that evidence.

THE COURT:  Yes, sir.  And just to be clear, the government's position is that a guidelines sentence of 324 to 405 is what is required.

MR. MARK:  Yes.  A guidelines sentence.  And that is what was calculated by the probation department in the supplemental presentence report, yes.

THE COURT:  Yes, sir.

Anything else, counsel?

MR. DiPIETRO:  No, your Honor.

MR. BONDY:  No, thank you, your Honor.  Thank you.

THE COURT:  Thank you.

Counsel, as we know, I have calculated, again, the total offense level, and in my view, it accurately reflects the nature and circumstances of the offense.

As we also know, Mr. DiPietro is in criminal history category I.

With respect to the paragraph 2 factors, I echo the words of Judge Kram in her discussion in the original sentencing about the seriousness of the offense.  She sat through the ten-week trial, and she had an opportunity to assess the witnesses and what went on.

**A. 106**

K161dips

There is always a need for general deterrence; and I will say there probably is less of a need to protect the public from further crimes of this defendant; but in my view, the seriousness of the offense is the most weighty factor.

The paragraph B factors of providing educational or vocational training are not particularly applicable here.

I have in mind the paragraph 3, 4, and 5 factors.

With respect to paragraph 6, the need to avoid unwarranted sentencing disparities, I don't think there will be any disparities perceived here.

Accordingly, counsel, taking all of the factors into account, it is my intention to impose a sentence of 324 months' incarceration, to be followed by the same period of supervised release imposed by Judge Kram, which was three years of supervised release.

It is my intention to impose the special search condition and to impose the same fine amount as Judge Kram, which was, of course, the $1,000 special assessment.

Is there any reason, counsel, why such a sentence should not be imposed?

Did I forget something, Mr. Mark?

MR. MARK:  No, your Honor.  I don't believe so.

THE COURT:  Is there any reason, counsel, why such a sentence should not be imposed?

MR. DiPIETRO:  No, your Honor.

**A. 107**

K161dips

MR. MARK:  No, your Honor.

THE COURT:  Very well then.

Mr. DiPietro, you're sentenced, sir, to a period of 324 months' incarceration.

Following that time, you'll spend a period of three years on supervised release.  During that time, you'll comply with all of the standard terms and conditions of supervised release.  Among them are:

That you not commit another federal, state, or local crime;

You not illegally possess a controlled substance; and

You not possess a firearm or other destructive device.

In addition to those and all of the other standard terms and conditions of supervised release, during that period you'll submit your person, residence, place of business, vehicle, and any other property or electronic devices under your control to a search on the ground that the probation officer has reasonable suspicion that contraband or evidence of a violation of the terms and conditions of supervised release can be found there.  Such a search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to such a search might be grounds for revoking your supervised release.  It will be your obligation to inform other residents of the premises or users of the property or electronic devices that they might be subject to a search under those conditions.

**A. 108**

K161dips

As I mentioned, I impose a $1,000 special assessment, which I assume has been paid long ago.

It is my duty to inform you, sir, that unless you've waived it, you have the right to appeal this sentence, and you might have the right to appeal *in forma pauperis*, which means as a poor person, with the waiver of certain fees and expenses.

Counsel, is there anything further?

MR. MARK:  As a formal matter, I guess it's now appropriate to request the dismissal or vacatur of the two counts at issue, since this is the true sentencing.

THE COURT:  4 and 8.

MR. MARK:  4 and 8, yes.

THE COURT:  Anything else, Mr. DiPietro?

MR. DiPIETRO:  No, your Honor.

THE COURT:  Very well.  Mr. DiPietro, you should be very proud of yourself, but I'm sure your father is very proud of you as well.

MR. DiPIETRO:  Thank you.

THE COURT:  Good morning, ladies and gentlemen.  Thank you.

THE DEFENDANT:  Thank you, your Honor.

oOo

**A. 109**

Case 1:90-cr-00446-DB110-DLC Document 1236-1 73ed 04/24/2016/21 age P10e11of167PageID
#: 2429

L6OTDIPS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                    04 CR 1110 (DLC)

ANGELO DIPIETRO,

        Defendant.

------------------------------x

                                  New York, N.Y.
                                  June 24, 2021
                                  11:00 a.m.

Before:

                   HON. DENISE L. COTE,

                            District Judge

                     APPEARANCES

AUDREY STRAUSS
    United States Attorney for the
    Southern District of New York
JONATHAN REBOLD
ANDREW JONES
    Assistant United States Attorneys

ANTHONY DiPIETRO
    Attorney for Defendant

                 SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

**A. 110**

L6OTDIPS

(Case called)

DEPUTY CLERK: Counsel for the government, please state your name for the record.

MR. REBOLD: Jonathan Rebold, joined at counsel by AUSA Andrew Jones. Good morning, Judge Cote.

DEPUTY CLERK: For the defendant.

MR. DiPIETRO: Good morning, your Honor, Anthony DiPietro for the defendant, Angelo DiPietro.

THE DEFENDANT: Good morning, your Honor, Angelo DiPietro.

THE COURT: Thank you, please be seated.

We're here for a very limited purpose. There's agreement between the parties that the sentence of 300 months imposed by me on the 924(c) conviction and imposed by me to run consecutively to the sentence I imposed on other counts and to the sentence imposed by a colleague in this Court in a 2002 case must be changed.

The 2002 case had a 924(c) conviction, and as the law operated at that time, my 924(c) sentence was required to be 300 months. Because of what has happened in the 2002 case, I must now change the sentence to be imposed on my 924(c) count.

By operation of the law, my 300-month sentence, which the law required me to impose, is now reduced to 84 months. And therefore, it's my intention today to pronounce a sentence that is substantially the same, really identical to one I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A. 111**

L6OTDIPS

previously imposed on Mr. DiPietro, except on the 924(c) count.

The parties have given me written submissions regarding these issues. I have issued orders regarding scheduling of this. So for the very limited purpose that we are gathered together today, I want to give both the government and Mr. DiPietro an opportunity to be heard.

Mr. Rebold, is there anything that the government wishes to add with respect to today's proceeding?

MR. REBOLD: Not really, your Honor. I think technically now that we are physically before your Honor it would be appropriate for the defendant to move for the resentencing pursuant to 28, United States Code, Section 2241, and the government certainly does not oppose such an application.

In terms of our position on sentencing, it's really laid out in our memorandum.

THE COURT: I think the defendant has already made that application in writing, am I right?

MR. REBOLD: I think that's, your Honor, not exactly correct. I think the application we made in writing was that when we appeared before this Court, the application would be made orally. And the reason for the distinction is that until this moment, the defendant has been housed in Brooklyn MDC in the Eastern District of New York, and our understanding is that a Court can only conduct a resentencing pursuant to 28 USC 2241

**A. 112**

L6OTDIPS

at the time that the defendant is in the custody of the district where that motion is being made. And so while the defendant was in the Eastern District, he could not technically move to be resentenced.

So the request, as I understood it, having conferred with Mr. DiPietro prior to the written submissions and prior to court today, is that we were flagging for the Court that once produced to the Southern District of New York for today's proceedings, the defendant would orally move to be resentenced pursuant to 28 USC 2241.

THE COURT: Thank you, Mr. Rebold.

Mr. Anthony DiPietro, do you have such an application?

MR. DiPIETRO: Yes, your Honor. At this time the defense respectfully requests that the Court vacate the sentence on Count 13 pursuant to 28, United States Code, 2241, and that it resentence Mr. DiPietro on that count at that time for the reasons articulated by your Honor that a prior conviction under Section 924(c) has since been vacated from the original sentence.

THE COURT: Thank you very much.

MR. DiPIETRO: Thank you, your Honor.

THE COURT: And I don't believe, since this is really just a legal matter, that your father need say anything or your client need say anything, but, of course, I want to give him the opportunity to speak at this resentencing proceeding if he

**A. 113**

L6OTDIPS

desires to say anything to me.

MR. DiPIETRO: Yes, your Honor, he has a brief statement. And we understand the limitations of today's proceeding, and therefore we're going to principally rely on our sentencing memoranda.

And I just would like to thank the Court and its staff for the time and consideration it has given to Mr. DiPietro and my family. And I would also like to thank government counsel for the exceptional professionalism that they have shown in this process, and I think it should be applauded in that sense. They have really done what was necessary to get us here today, and I appreciate that.

So Mr. DiPietro does have a short statement with the understanding that we know the limitations of today's proceeding.

THE DEFENDANT: Thank you, your Honor.

I would like to thank the Court for considering my family in connection with today's sentence. And I'm deeply sorry for my past conduct and putting myself and my family in this situation. I know I have made mistakes in my life, and my family has paid the highest price. I am forever sorry to them and the Court.

I hope and pray to God for the Court's mercy, that I be given another chance to be with my family, my wife, my kids, my grandkids, and especially my little granddaughter, Cecilia

**A. 114**

Case 1:90-cr-00446-DB110 Document 1236-1 773ed 04/24/2616/21 Page Page 61 of 67 PageID
#: 2434

L6OTDIPS

Lee.  She's very special to me and my family.  And I miss my family dearly every day and I thank God for them every day.

And I thank you very much, your Honor.

THE COURT:  Thank you, Mr. DiPietro.

Having received orally the application from the defendant for this limited resentencing, I vacate the sentence imposed by me on the 924(c) count of 300 months and impose instead on that count a sentence of 84 months.  It is to run consecutively to the sentence I imposed on the other counts of conviction in 04 CR 1110 and to run as well consecutively to the sentence imposed on the 2002 case, which as I understand it, is currently 324 months when everything is calculated together.

So let me ask you, Mr. Rebold, is there anything further that I need to do or say?

MR. REBOLD:  No, your Honor.

THE COURT:  Let me ask you, Mr. DiPietro, counsel for the defendant, is there anything else I need to do or say?

MR. DiPIETRO:  Yes, your Honor, just a minor housekeeping matter.

In regard to the judgment itself, I noticed that the 210 months was stated to run concurrently with the '02 sentence, but it notes the date of the 2006 sentence, and that has since been amended to 2020 when Judge Preska resentenced him.  So just to avoid any confusion for the BOP, if the

L6OTDIPS

amended judgment can make clear that the 210 months is running concurrent with the 324-month sentence as amended by Judge Preska I believe on January 6 of 2020.

THE COURT:  Thank you.

MR. DiPIETRO:  Thank you, your Honor.

THE COURT:  Thank you all.

(Adjourned)