UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------x
UNITED STATES OF AMERICA

-against-

VITTORIO AMUSO,

Defendant.
---------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 90-CR-446 (FB)

*Appearances:*
*For the United States:*
ELIAS LARIS
Assistant United States Attorney
Eastern District of New York
Brooklyn, New York 11201

*For the Defendant:*
ANTHONY DIPIETRO
15 Chester Avenue
White Plains, New York 10601

**BLOCK, Senior District Judge:**

Vittorio Amuso, the former head of the Luchese family of La Cosa Nostra, moves for early termination of his mandatory life sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). For the following reasons, the motion is denied.

## I

Amuso joined the Luchese family in 1978, rising through the ranks until he succeeded Anthony Corallo as boss in 1986. Under his leadership, the family grew to at least 120 “made” members, including Anthony “Gaspipe” Casso, whom Amuso appointed consigliere in 1988 and named as his underboss in 1990. Amuso and Casso continued the family’s involvement in gambling, drug distribution, and loansharking. Through kickbacks and threats, they exercised substantial influence

over the construction and trucking industries, as well as the unions ostensibly protecting workers in those industries.

One such operation involved window replacement in public-housing projects under the jurisdiction of the New York City Housing Authority ("NYCHA"). Amuso used his influence to inflate contract bids submitted to NYCHA while also extorting kickbacks from the companies he selected to win the contracts. Over a two-year period from 1987 to 1989, the Luchese family received $1,000,000 in kickbacks from the operation, 75% of which went to Amuso and Casso personally.

The replacement window scheme led to a federal indictment in 1990. Alerted to his impending arrest, Amuso fled to Scranton, Pennsylvania, where he evaded prosecution for more than a year. After finally facing trial in 1992, he was convicted of 54 crimes—including six murders and three attempted murders—and sentenced by Judge Nickerson to the mandatory minimum of life imprisonment. The convictions and sentence were affirmed on appeal. *See United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994).

Meanwhile, Casso eventually reached an agreement with the government to plead guilty to a number of the charges against him. Of the murders he admitted to, at least six were ordered or approved by Amuso. He, too, was sentenced to the mandatory minimum of life imprisonment.

Both defendants took advantage of the First Step Act's groundbreaking

amendments to § 3582(c), the federal compassionate release statute. Casso applied in 2020 based on his poor medical condition. In a brief electronic order, the Court "considered the gravity" of the situation but concluded, "in light of the nature and extent of [Casso's] criminal history," that the factors listed in 18 U.S.C. § 3553(a) "do not justify early termination of his life sentence." Elec. Order (Nov. 28, 2020).

In 2023, Amuso likewise moved to reduce his sentence to time served. He was then 88 years old, had spent 31 years in prison, and was suffering from several medical issues. The Court denied the motion, finding that the Bureau of Prisons ("BOP") was "managing Amuso's medical conditions adequately" and holding that "the other reasons listed by Amuso—his age, the time he has served, and his rehabilitation—do not tip the balance toward finding the extraordinary and compelling circumstances exist." In the alternative, the Court concluded that reconsideration of the § 3553(a) factors still required a life sentence: "[Amuso's] conduct was simply too serious, too disrespectful of the law, and too destructive of the fabric of society to warrant anything other than a life sentence." *United States v. Amuso*, 2023 WL 5153425 (E.D.N.Y. Aug. 10, 2023).

Two years later, Amuso applied to the warden of his facility for compassionate release. Although the warden approved the request, he was overruled by BOP's Office of General Counsel. That office concluded that Amuso was eligible for a sentence reduction pursuant to BOP's policy for elderly

prisoners—which differs from the criteria for a court-ordered reduction—but that early release "would minimize the severity of his offense[s] and could pose a danger to the community."

Having exhausted his administrative remedies, Amuso—now 91—has filed a second motion for compassionate release. His second motion generally relies upon the same facts as his first, with the proviso that "his medical circumstances have not improved—they have materially worsened." His BOP health classification remains "Care Level 3," which requires "complex chronic care." While he previously required assistance from staff or other inmates to pick up food trays and make his bed, he now requires assistance for dressing, shaving, and other daily activities. His underlying medical conditions remain the same and continue to cause weight loss and chronic pain. In addition, he has contracted bedsores and rashes, suffered a burn-related injury, and contracted shingles.

**II**

At this point, the criteria for compassionate release are well-established: § 3582(c) requires a district court to "determine [whether] three independent, necessary requirements have been satisfied: (1) the defendant has exhausted administrative remedies; (2) an extraordinary and compelling reason exists for sentence reduction; and (3) the § 3553(a) factors warrant reduction." *United States v. Tavarez*, 747 F. Supp. 3d 557, 559 (E.D.N.Y. 2024). There has, however, been a

change in the legal landscape since Amuso's first compassionate release motion. In November 2023, the Sentencing Commission finally updated its policy statement regarding compassionate release. The amended policy statement, U.S.S.G. §1B1.13, now lists five categories of "extraordinary and compelling reasons" for compassionate release, plus a catchall for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [enumerated] reasons . . . are similar in gravity to those [reasons]." U.S.S.G. §1B1.13(b)(5). Broadly defined, the listed reasons relate to the defendant's (1) medical circumstances, (2) age, (3) family circumstances, and (4) status as a victim of abuse. Subsection (6)—so numbered because the catchall provision is subsection (5)—deals with non-retroactive changes in the law that make the defendant's sentence, in hindsight, "unusually long."

In *Rutherford v. United States*, 146 S. Ct. 1320 (2026), the Supreme Court invalidated subsection (6) as beyond the Sentencing Commission's delegated authority to define "extraordinary and compelling reasons" for compassionate release. It reasoned that "nonretroactive amendments to criminal penalties are the norm" (and therefore not "extraordinary'), *id.* at 1330, and that "treating [a non-retroactive amendment] as a compelling reason for reducing a sentence would undermine Congress's [deliberate] choice to leave the sentence intact," *id.* at 1331.

Subsection (6) is not at issue in this case. Moreover, as discussed at oral

argument, all seem to agree that *Rutherford* does not call into question prior law holding that "a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release." *United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The Second Circuit is apparently of the same opinion. *United States v. Diaz*, 2026 WL 2293586, at *2 (2d Cir. Aug. 10, 2026) (holding, two months after *Rutherford*, that it is "beyond dispute that a district court is empowered by § 3582(c)(1)(A) to reduce a prison sentence to time served, even if the original sentence included a mandatory minimum term.").

**A. Extraordinary and Compelling Reasons**

Because it is undisputed that Amuso exhausted his administrative remedies, the Court turns to the second requirement for compassionate relief: the existence of one or more "extraordinary and compelling reasons." In that regard, Amuso relies on his age and medical conditions, in combination with evidence of his rehabilitation while incarcerated.[1]

Three of the "extraordinary and compelling reasons" listed in the Sentencing Commission's policy statement are in play here. Unlike subsection (6), these reasons remain on the books.

---

[1]Although Amuso's prison record is spotless, government argues that he continued to run the Luchese family for some period of time during his incarceration. Since Amuso disputes this, the Court does not rely on that allegation.

§1B1.13(b)(1)(B) applies to a defendant who is "experiencing deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." §1B1.13(b)(1)(C) applies to a defendant who "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Finally, §1B1.13(b)(2) applies to a defendant who "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical and mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

The first of those reasons would require the Court to find that Amuso's ability to care for himself is substantially diminished. The second would require a finding that BOP is not providing necessary medical care. Although there is ample evidence that both criteria are satisfied, they would at least require an evidentiary hearing.

The third reason, on the other hand, is straightforward. Amuso is now 91 and has served 34 years of his sentence. The government disputes that his medical condition represents a "serious" age-related deterioration in his physical or mental health because of the aging process, but the Court can easily draw that conclusion

from the existing record without the need for an evidentiary hearing.

However, although *Rutherford* is not directly relevant, the Supreme Court's statement that non-retroactive amendments to criminal penalties are the norm are not extraordinary, *see* 146 S. Ct. at 1330, gives the Court pause. Since *every* defendant serving a life sentence might be expected to experience the unpleasant effects of growing old in prison, one might argue that deteriorating health as a result of the aging process is no more "extraordinary" than a non-retroactive change in criminal law.

**B. § 3553(a) Factors**

In the end, the Court need not decide whether *any* of the reasons offered by Amuso opens the door to compassionate relief because such relief would, in light of Amuso's personal characteristics and criminal conduct, disserve the purposes of sentencing laid out in §3553(a)—especially the goal of punishment.

In the Court's view, any case in which a life sentence was imposed as a matter of the sentencing judge's discretion requires a certain degree of skepticism about the advisability of compassionate relief. While Amuso's life sentence was mandatory, it was well-deserved in any event:

> [Amuso's] reign of the Luchese Family was replete with bloodshed. At Amuso's command, more than a dozen individuals were ordered to be killed, and nine were actually slain—for the purpose of maintaining power over a criminal enterprise—all while amassing illicit wealth at the expense of New York City and its surrounding

> areas, including its legitimate business owners, taxpayers, and members of industries and unions corrupted by its influence.

*Amuso*, 2023 WL 5153425, at *4.

In denying Amuso's first motion for compassionate relief, the Court seconded Judge Korman's observation in *United States v. Orena* that "a strain of cases . . . has emerged in which the offenders' criminal history is so long, and their victims so numerous, that even serious health conditions do not suffice to merit relief." *Id.* (quoting *United States v. Orena*, Case No. 92-CR-351 (E.D.N.Y. Oct. 27, 2021)). The past being immutable, "this case [still] falls squarely in that category." *Id.*

Furthermore, it would be hard to justify granting Amuso compassionate relief after denying it to Casso. As noted, at least six of the murders Casso admitted to were ordered or approved by Amuso. Although he also pleaded to crimes that did not implicate Amuso, there comes a point when each additional crime adds little to the equation. Six murders go well past that point, especially since Amuso has continued to be non-committal about his views on organized crime and his responsibility for role he played in it.

**III**

The Court—an unapologetic supporter of the First Step Act's promise of a second chance—gives serious consideration to every motion for compassionate

release. Perhaps the most compelling fact here is that Amuso's family—who attended oral argument on their father's motion—is unable to care for and spend time with a loved one as he inevitably reaches the end of his life. Many other families, however, suffered the same tragedy—if not a greater one given the chilling circumstances—because of Amuso's criminal conduct.

In sum, while Amuso's life sentence was mandatory at the time, a plenary consideration of the § 3553(a) factors based on the current record still does not allow for anything less. Accordingly, Amuso's motion for compassionate release is denied.

**SO ORDERED.**

_/S/ Frederic Block___________
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 2, 2026